# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JEFFREY GADDY,<br><br>     Plaintiff,<br><br>v.<br><br>TEREX CORPORATION, et al.<br><br>     Defendants. | 1:14-cv-1928-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendants Terex Corporation ("Terex Corp."), Terex South Dakota, Inc. ("Terex SD"), and Terex Utilities, Inc.'s ("Terex Utilities") (collectively, "Terex" or the "Terex Defendants") Motion for Partial Summary Judgment Regarding the Non-Party Fault of Ace Tree Surgery [321] ("Motion").

## I.  BACKGROUND

### A.  Facts

This is a products liability action stemming from the failure of a 2002 Terex Hi-Ranger XT 60/70 boom, Serial No. 2021020554 (the "Subject Boom Truck"), an aerial lift device. Terex XT aerial devices are commonly utilized by tree

trimming companies. The Subject Boom Truck consisted of a lower boom, upper boom, and bucket, as depicted in the following diagram:



On April 9, 2014, Plaintiff Jeffrey Gaddy ("Plaintiff") was in the bucket of the Subject Boom Truck when the lower boom stub fractured, causing Plaintiff to fall to the ground. Plaintiff suffered spinal injuries resulting in paraplegia. Plaintiff claims Terex negligently manufactured and designed the Subject Boom Truck, and that it failed to warn him of certain dangers.

On April 30, 2003, Non-Party Ace Tree Surgery, Inc. ("Ace") purchased the Subject Boom Truck. (Defs.' Statement of Undisputed Material Facts [321.2] ("DSMF") ¶ 3; Pl.'s Resp. to DSMF [339.1] ("R-DSMF") ¶ 3). From 2003 through the date of the accident, the Subject Boom Truck was operated almost

exclusively by Plaintiff. (DSMF ¶ 4; R-DSMF ¶ 4). The Subject Boom Truck had a maximum rated load capacity of 350 lbs, which was typical in the industry. (DSMF ¶ 8; R-DSMF ¶ 8). When calculating the load placed in the bucket, a user must consider (1) the weight of the operator; (2) the weight of the liner; (3) the weight of any tools; and (4) the weight of any debris that may have gathered in the bucket. (Id.). Plaintiff weighed approximately 330 lbs during his use of the Subject Boom Truck. (DSMF ¶ 9; R-DSMF ¶ 9). Terex contends that, when considering Plaintiff's weight and the weight of the equipment in the bucket, the amount of weight or load consistently and routinely placed in the subject bucket for 11 years was 430 lbs, which exceeded the rated load capacity by approximately 80 lbs.[1] (DSMF ¶ 10). Plaintiff claims that Ace did not know that the Terex-required liner must be factored into the load capacity, which caused the load capacity consideration to be off by 50 lbs. (R-DSMF ¶ 34). Plaintiff claims that "Terex's instruction to factor in the weight of the mandatory bucket liner in the load capacity appears only on in [sic] one clause or one sentence one [sic] page of its Owner's Manual." (R-DSMF ¶ 8).

---

[1] Plaintiff claims the amount of overloading is disputed, and ranges from 57 lbs to 93 lbs. (Pl.'s Statement of Additional Material Facts [339.2] ("PSAF") ¶¶ 45-47). Plaintiff does not dispute that overloading occurred. (See id.).

The American National Standards Institute ("ANSI") sets forth the standards for the design, use and operation of vehicle-mounted elevating and rotating aerial devices, such as the Subject Boom Truck. (DSMF ¶ 11; R-DSMF ¶ 11). Specifically, Section 8 of ANSI A92.2 (2001) (the "ANSI Standard") sets forth the responsibilities of owners of this equipment and Section 9 provides the responsibilities of users. (Id.). The ANSI Standard provides that owners have a responsibility to be familiar with the use and operation of the subject aerial device, including the Operator's Manual. (DSMF ¶ 14; R-DSMF ¶ 14).

The Operator's Manual for the Subject Boom Truck contains the following warning requiring the user not to exceed the rated load capacity:

 Never exceed the rated load capacity of the Aerial Device. Structural damage or instability can result causing death or serious injury.

(DMSF ¶ 17; R-DSMF ¶ 17).[2] The Operator's Manual also provides that the operator should "[n]ever exceed the rated loaded of the platform. Know the total weight; including the operator, platform liner, tools, and equipment, and/or other items before entering platform." (DSMF ¶ 18; R-DSMF ¶ 18). The Subject Boom

---

[2] Plaintiff disputes the adequacy of this warning, but does not dispute that the Operator's Manual contains it.

Truck itself also had two decals on it warning users that death or serious injury "will" occur if the machine is used beyond its rated capacity:



(DSMF ¶¶ 19, 20; R-DSMF ¶¶ 19, 20).

Prior to the accident, Ace was aware that applicable standards required it not to exceed the rated load capacity for its equipment, and that overloading the buckets could lead to the exact problem that occurred in this case. (DSMF ¶32; R-DMSF ¶ 32). It is undisputed that, had Ace not overloaded the bucket of the Subject Boom Truck for 11 years, the boom would not have fractured on

April 9, 2014, and the accident at issue in this case would not have occurred. (DSMF ¶ 35; R-DSMF ¶ 35).[3]

B. Procedural History

On June 19, 2014, Plaintiff filed his Complaint [1]. On March 10, 2016, Plaintiff filed his Sixth Amended Complaint [215], asserting claims of negligence per se, negligent design and manufacturing, and failure to warn. Plaintiff seeks punitive damages and attorneys' fees.

On January 30, 2015, Terex filed its Notice of Apportionment of Fault to Non-Parties, listing Ace as a non-party at fault. ([57] at 2-3).

On December 21, 2016, the Terex Defendants filed their Motion. Terex argues that the undisputed evidence shows that Ace was negligent and that its negligence proximately caused or contributed to the subject incident and Plaintiff's damages. Terex thus seeks a determination, as a matter of law, that Ace is a non-party at fault, pursuant to O.C.G.A. § 51-12-33(d), and that the actual percentage of fault attributable to Ace shall be determined by a jury. Specifically, Terex states that, should its Motion be granted, "Ace would be on the verdict form and the jury

---

[3] Plaintiff does not dispute this fact, but maintains that "[i]t is likewise undisputed" that the boom would not have cracked had Terex not used lower quality steel or if Terex's design did not create a high stress area. (R-DSMF ¶ 35).

6

would be instructed that Ace has been found, as a matter of law, to be a non-party at fault and that its fault contributed to the subject incident." ([351] at 5).

Plaintiff argues that it is premature for the Court to determine what non-parties should be on the verdict form, and that that decision must be made based upon the facts presented at trial.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The nonmoving party "need not present evidence in a form

necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment. Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary

verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

B.  Analysis

In 2005, the Georgia General Assembly abolished the doctrine of joint and several liability in personal injury actions. The statute provides:

> Where an action is brought against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

O. C. G. A § 51-12-33. The statute further provides that, "in assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit." Id. § 51-12-33(c). "Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault." Id. § 51-12-33(d)(1). "The notice shall be given by filing a pleading in

the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing the nonparty to be at fault." Id. § 41-12-33(d)(2).[4]

The Georgia Supreme Court recently clarified that O.C.G.A. § 51-12-33(c) allows a jury to assess a percentage of fault to the non-party employer of a plaintiff who sues a product manufacturer and seller for negligence in failing to warn about a product danger, even though the non-party employer has immunity under Georgia's workers' compensation laws. Walker v. Tensor Machinery Ltd., 779 S.E.2d 651, 656 (Ga. 2015).

Terex seeks a determination, as a matter of law, that Ace is a non-party at fault, pursuant to O.C.G.A. § 51-12-33(d), and that the actual percentage of fault attributable to Ace shall be determined by a jury. Plaintiff argues that it is premature for the Court to determine what non-parties should be on the verdict form, and that that decision must be made based upon the facts presented at trial.

---

[4] It is uncontested that Terex's Notice of Apportionment of Fault to Non-Parties [57] constituted proper notice under subsection (d).

Rule 56 of the Federal Rules of Civil Procedure provides that a party may move for summary judgment, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Apportionment of fault under Section 51-12-33 is an affirmative defense. See Union Carbide Corp. v. Fields, 726 S.E.2d 521, 524 (Ga. Ct. App. 2012), reversed on other grounds by Georgia-Pacific, LLC v. Fields, 748 S.E.2d 407 (Ga. 2013) (citing Clay v. Oxendine, 645 S.E.2d 553 (Ga. Ct. App. 2007)); Argonaut Midwest Ins. Co. v. McNeilus Truck and Mfg., Inc., No. 1:11-CV-3495-TWT, 2013 WL 504897, at *3 (N.D. Ga. Feb. 8, 2013). Terex is entitled to move for summary judgment on any "defense," Fed. R. Civ. P. 56(a), including his apportionment defense under Section 51-12-33. The jury's role under Section 51-12-33 is to determine the percentage of fault of each person or entity "who contributed to the alleged injury or damages." O.C.G.A. § 51-12-33(c). If there is no genuine issue of material fact as to whether Ace's conduct "contributed" to Plaintiff's injuries, Terex is entitled to summary judgment on this question. The

jury may then decide the percentage of fault attributable to Ace, in accordance with O.C.G.A. § 51-12-33.

The Court finds Terex meets its burden to show that there is no genuine issue of material fact as to whether Ace's conduct contributed to Plaintiff's injuries. In determining whether a non-party contributed to a plaintiff's injury, a court looks to the causation standard under the negligence cause of action. See Union Carbide, 726 S.E.2d at 559-60 (looking to applicable standard of causation in asbestos product liability actions in determining whether a non-party contributed to injury). Under Georgia law, "in order to recover for any injuries resulting from the breach of a duty, there must be evidence that the injuries were proximately caused by the breach of the duty." Goldstein Garber & Salama, LLC v. J.B., 797 S.E.2d 87, 89 (Ga. 2017) (citation omitted).

The uncontested evidence shows at least the following:

1. The ANSI Standard requires that owners have a responsibility to be familiar with the use and operation of an aerial device, including the responsibility to be familiar with the Operator's Manual;

2. A decal on the Subject Boom Truck provided that it had a maximum rated load capacity of 350 lbs;

3. To calculate the load, a user was required to consider (1) the weight of the operator; (2) the weight of the liner; (3) the weight of any tools; (4) the weight of any debris that may have gathered in the bucket;

12

4. Terex's Owner's Manual instructed that the bucket liner was required to be used in calculating the load;

5. During the 11 years Ace owned and operated the Subject Boom Truck, the load in the bucket consistently and routinely exceeded the rate load capacity;

6. Prior to the accident, Ace was aware that applicable standards required it not to exceed the rated load capacity for its equipment, and that overloading the buckets could lead to the exact problem that occurred in this case; and

7. Had Ace not overloaded the bucket of the Subject Boom Truck for 11 years, the boom would not have fractured on April 9, 2014, and the accident at issue in this case would not have occurred.

This uncontested evidence establishes that Ace's conduct was an actual and proximate cause of Plaintiff's injuries, and thus, as a matter of law, Ace "contributed" to Plaintiff's injuries. The jury will decide, in accordance with O.C.G.A. § 51-12-33, the percentage of fault attributable to Ace. Terex's Motion is granted.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Terex Defendants' Motion for Partial Summary Judgment Regarding the Non-Party Fault of Ace Tree Surgery [321] is **GRANTED**. The Court finds that Ace's conduct "contributed" to Plaintiff's

injuries. The jury will decide, in accordance with O.C.G.A. § 51-12-33, the percentage of fault attributable to Ace.

**SO ORDERED** this 26th day of April, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE