# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JEFFREY GADDY, <br><br> Plaintiff, <br><br> v. <br><br> TEREX CORPORATION, et al. <br><br> Defendants. | 1:14-cv-1928-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendant Atlas ABC Corporation's ("Atlas") Motion for Summary Judgment [295]. Also before the Court are Defendants Terex Corporation, Terex South Dakota, Inc. ("Terex SD"), and Terex Utilities, Inc.'s (collectively, "Terex" or the "Terex Defendants") Motions for Continued Protection of Evidence [327], [335], [347].

## I.    BACKGROUND

### A.    Facts

This is a products liability action stemming from the failure of a 2002 Terex Hi-Ranger XT 60/70 boom, Serial No. 2021020554 (the "Subject Boom Truck"), an aerial lift device. Terex XT aerial devices are commonly utilized by tree

trimming companies. The Subject Boom Truck consisted of a lower boom, upper boom, and bucket, as depicted in the following diagram:



On April 9, 2014, Plaintiff Jeffrey Gaddy ("Plaintiff") was in the bucket of the Subject Boom Truck when the lower boom stub fractured, causing Plaintiff to fall to the ground. Plaintiff suffered spinal injuries resulting in paraplegia. Plaintiff claims Terex SD negligently manufactured and designed the Subject Boom Truck, and that it failed to warn him of certain dangers. Plaintiff also claims that the steel used in the lower boom stub did not meet Terex's design specifications. Plaintiff contends the steel was distributed to Terex by Atlas's predecessor, LTV Copperweld.

1. The Lower Boom Tube

One of the main components of the lower boom stub in Terex's XT-series trucks is Terex part number 444195, which is a hollow rectangular beam with dimensions of 10" x 8" x 113". (Atlas's Statement of Material Facts [295.1] ("ASMF") ¶¶ 9-10).[1] On May 4, 1999, Terex revised the material specification for its lower boom tube, requiring it be comprised of high strength, low allow ("HSLA") steel with a minimum yield strength of 70,000 psi. (ASMF ¶ 11). The lower boom tube in the Subject Boom Truck was comprised of ASTM A500 carbon steel with a minimum yield strength of 46,000 psi, and thus did not conform to Terex's materials specification. (ASMF ¶ 12). The lower boom tube is the part that failed in the Subject Boom Truck, resulting in Plaintiff's injuries.

The Subject Boom Truck was manufactured by Terex on October 4, 2002. (ASMF ¶ 5). Between May 1999, when Terex revised its specification to require HSLA steel, and the October 2002 manufacture of the Subject Boom Truck, LTV Copperweld[2] supplied Joseph T. Ryerson & Son, Inc. ("Ryerson") with, among other products, 10" x 8" hollow rectangular steel beams measuring 40 feet

---

[1] Plaintiff does not dispute any of the statements of fact presented by Atlas. (See [305]).

[2] LTV Copperweld manufactured structural steel products, including the type at issue in this case, through its Structural Division. In 2005, Atlas acquired the assets and liabilities of LTV Copperweld's Structural Division. (ASMF ¶¶ 15-16).

3

in length. (ASMF ¶ 33). The interior walls of each of these beams were die-stamped at 36-inch intervals with LTV Copperweld's logo, the date of manufacture of the beam, a mill identifier, and a heat log number, as depicted below:



(ASMF ¶¶ 19-21). From June 16, 1999 through October 4, 2002, Ryerson cut certain of these hollow steel beams to the lower boom tube's 113-inch length and shipped these parts to Terex. (ASMF ¶ 34). Ryerson also shipped to Terex a limited number of 40-foot hollow rectangular beams, which Terex occasionally cut in-house to produce lower boom tubes. (ASMF ¶¶ 35, 36).

    2.    <u>LTV Copperweld and ITC</u>

During discovery in this case, it was discovered that the interior wall of the lower boom tube in the Subject Boom Truck was stamped with the logo of Independence Tube Corporation ("ITC"), not LTV Copperweld. (ASMF ¶¶ 23-25). The stamp is depicted below:



(ASMF ¶ 25).

ITC was a direct competitor of LTV Copperweld. (ASMF ¶ 29). Each company produced structural tubular steel products by rolling and forming sheets of steel supplied to them by steel companies. (ASMF ¶¶ 17-18, 27, 28). ITC and LTV Copperweld stamped their respective logos into the interior walls of square and rectangular-shaped products. (ASMF ¶¶ 19-22, 30).

ITC admitted it manufactured the rectangular steel beam from which the lower boom tube was fashioned, and that it did so sometime in or after the end of the first quarter of 2001. (ASMF ¶ 26). ITC also admitted it neither did nor ever would supply any of its tubular steel products to LTV Copperweld. (ASMF ¶ 38). Ryerson admitted it did not receive from LTV Copperweld any products bearing an ITC marking. (ASMF ¶ 37). Terex conceded it was not shipped any tubular steel product directly from LTV Copperweld. (ASMF ¶ 39).

5

### 3. Source of the Lower Boom Tube at Issue

Plaintiff claims that Ryerson was the only possible source of the steel tube at issue, and, because LTV Copperweld was Ryerson's only supplier of steel tubes during the relevant time frame, LTV Copperweld must have been the ultimate source of the steel tube at issue. (See Pl.'s Statement of Additional Facts [307] ("PSAF") ¶ 22). Plaintiff presents certifications, drafted by LTV Copperweld, which Ryerson provided to Terex representing that the steel it sold was HSLA steel with a minimum yield strength of 70,000 psi. (PSAF ¶ 25). LTV Copperweld contends Plaintiff only offers speculation that these certifications were presented with the steel tube at issue in this case. (Response to PSAF [312] ("R-PSAF") ¶ 25).

In its Order on Ryerson's Motion for Summary Judgment, the Court reviewed the evidence regarding whether Ryerson provided the steel tube at issue as follows.[3] The evidence is as follows. Ryerson claims that, between 1999 and 2002, Ryerson provided Terex only with steel manufactured by LTV Copperweld, not ITC, and thus it could not have provided the ITC-manufactured tube that failed here. (See Ryerson's Statement of Material Facts [320.2] ("RSMF") ¶ 16).

---

[3] The Court did not reach the question whether there was a dispute of fact regarding whether Ryerson provided the steel tube to Terex, because the Court found that, even if Ryerson did, Ryerson did not owe Plaintiff a duty.

Ryerson claims that it had, by early 2000, sold to customers other than Terex all of the ITC-manufactured steel Ryerson had in its inventory. (RSMF ¶ 22). Ryerson claims that, since it did not purchase any steel tube from ITC after the second quarter of 2001, it could not have delivered any steel with the ITC stamp to Terex and thus could not be the source of the ITC steel used to manufacture the Subject Boom Truck. (See RSMF ¶¶ 23-24). It also claims it did not, during the period 1999 to 2004, supply to Terex any steel with a minimum yield strength below 56,000 psi. (RSMF ¶ 20).

Ryerson further claims that, in 2001 and 2002, Terex had at its Watertown, South Dakota facility, HSLA and A500 Grade B 8" x 10" x .25" rectangular steel tube in forty foot lengths. (RSMF ¶ 25; Pl.'s Resp. to RSMF [336.1] ¶ 25). In 2001 through 2002, Terex purchased boom tube steel from both Ryerson and a company called Earle M. Jorgensen Company ("EMJ"). (RSMF ¶ 26; Olson Dep. 46:13-20). Terex received two shipments of part number 444195 from EMJ on March 20, 2002, and April 1, 2002, and that, these parts numbered 444195 likely remained in Terex's inventory less than a month before being used in the

manufacture of an XT lower boom stub. (Terex's Statement of Additional Facts [330] ("TSAF") ¶¶ 17-18).[4]

Plaintiff, relying on Terex's assertions, claims that, between April 30, 2002, and early 2003, Ryerson was Terex's only supplier of part number 444195. (TSAF ¶ 19). Terex presents evidence that it cut its own raw material to make part number 444195, and did so only on April 5, 2002, and that this steel was 70,000 psi HSLA steel. (TSAF ¶¶ 22-23). Terex also presents evidence that Ryerson provided Terex with nonconforming ITC-stamped lower boom tubes which was used in the following XT trucks: XT Serial No. DK20635, manufacture date December 3, 2002; and XT Serial No. DK20768, manufacture date December 19, 2002. (TR-DSMF ¶ 16). Terex claims these two XT trucks were manufactured during the timeframe after Terex's inventory of part number 444195 was exhausted on October 31, 2002. (Id.).

When Ryerson receives steel from a steel manufacturer, the steel is accompanied by a certification from the manufacturer providing the yield strength and chemical composition of the steel. Ryerson provides the manufacturer's certification to customers when requested. (See DSMF ¶ 12).

---

[4] Plaintiff largely relies on Terex's assertions and evidence that Ryerson sold Terex the nonconforming steel at issue. (See R-DSMF ¶¶ 14-16, 19, 20, 22, 23-24, 26).

8

B.     Procedural History

On June 19, 2014, Plaintiff filed his Complaint [1]. On March 10, 2016, Plaintiff filed his Sixth Amended Complaint [215], asserting claims of negligence per se, negligent design and manufacturing, and failure to warn. Plaintiff seeks punitive damages and attorneys' fees. Plaintiff asserts a negligence claim against Atlas, as successor to LTV Copperweld, based on (1) LTV Copperweld's alleged representations and certifications that the steel tube was HSLA steel with a minimum yield strength of 70,000 psi; (2) its failure to test the steel tube; and (3) its failure to warn customers and users that the steel tube was not HSLA steel with a minimum yield strength of 70,000 psi.

On September 29, 2016, Atlas filed its Motion for Summary Judgment. Atlas argues that the undisputed facts show LTV Copperweld did not manufacture or place into the stream of commerce the steel tube used in the Subject Boom Truck, and thus Plaintiff's negligence claim against Atlas must be dismissed.

Plaintiff concedes that LTV Copperweld did not manufacture the steel tube used in the Subject Boom Truck. Plaintiff argues, however, that (1) Ryerson supplied Terex the steel tube used in the Subject Boom Truck; (2) during the time frame when the Subject Boom Truck was manufactured, Ryerson obtained all of the tube steel it provided to Terex from LTV Copperweld; and (3) thus, the

evidence shows LTV Copperweld negligently sold, distributed, and certified the steel.

**II. DISCUSSION**

    A.    <u>Legal Standard</u>

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1282 (11th Cir. 1999). The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." <u>Id.</u>

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). Where the record tells two

different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment. Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

    B.    <u>Analysis</u>

Atlas argues that the undisputed facts show LTV Copperweld did not manufacture or place into the stream of commerce the steel tube used in the Subject Boom Truck, and thus Plaintiff's negligence claim against Atlas must be

11

dismissed. On a motion for summary judgment, a plaintiff is required to present evidence "to make a sufficient showing on [each] essential element of h[is] case . . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Under Georgia law, 'whether proceeding under a strict liability or a negligence theory, proximate cause is a necessary element of a product liability case.'" Hoffman v. AC&S, Inc., 548 S.E.2d 379, 382 (Ga. Ct. App. 2001) (quoting Talley v. City Tank Corp., 279 S.E.2d 264 (Ga. Ct. App. 1981)) (internal quotation marks omitted, alterations adopted). Thus, to survive summary judgment, Plaintiff must present evidence sufficient to create an issue of fact as to whether the steel tube used in the Subject Boom Truck was, in fact, manufactured or supplied by LTV Copperweld. See id. (citing Davis v. Wells Aluminum Se., 323 S.E.2d 215 (Ga. Ct. App. 1984)).

Atlas presents affirmative evidence that LTV Copperweld *did not* sell the steel in question. Atlas shows that ITC admitted it manufactured the steel tube, ITC never supplied any products to LTV Copperweld, Ryerson did not receive any ITC-marked steel from LTV Copperweld, and LTV Copperweld did not directly supply Terex with any steel. Plaintiff does not contest this evidence. Plaintiff presents evidence that Terex believes, feels, or is "very sure" that Ryerson supplied the steel tube in question. (See PSAF ¶ 19). This belief appears to be based on Terex's and Plaintiff's process of elimination. Plaintiff presents evidence that

there were only three possible sources of the steel tube in the Subject Boom Truck: (1) Terex's own supplies of tubes that it could have cut down to manufacture part number 444195; (2) EMJ; and (3) Ryerson. With respect to Terex's own supplies, Plaintiff presents evidence that Terex used its own store of tubes to manufacture part number 444195 on one occasion in 2002, and that, on that occasion, the steel used was 70,000 psi HSLA steel. With respect to EMJ, Plaintiff presents evidence that Terex received only two shipments of part number 444195 from EMJ in 2002, in March and April, and that, after parts were provided to it, Terex "likely" used the parts within one month. Plaintiff thus reasons that Ryerson must have supplied the steel tube in question. Plaintiff then points to evidence that, for every piece of Terex part number 444195 that Ryerson sold to Terex, Ryerson purchased all of its steel from LTV Copperweld. Plaintiff thus concludes that, because Ryerson was the only possible supplier of the steel tube in question, and because LTV Copperweld was Ryerson's only source for part number 444195, LTV Copperweld must have been the source of the steel tube in question.

 Plaintiff's reasoning has a critical flaw: the evidence does not support that Ryerson—and thus LTV Copperweld—was the only possible source of the steel tube, because the evidence does not rule out that the steel in question may have come from EMJ. First, the evidence shows only that "it is more likely than not"

that Terex consumed its shipments of EMJ steel before Terex manufactured the Subject Boom Truck in October 2002. (PSAF ¶ 19). Terex's representative, James Olson, testified that it was possible Terex had EMJ-sourced steel in its inventory at the time the Subject Boom Truck was manufactured. (Olson Dep. at 172). He also testified that there is no way of "knowingly exactly" whether Ryerson or EMJ supplied the lower boom tube in question. (Id. at 258).[5] Viewing this evidence in the light most favorable to Plaintiff, Plaintiff shows only that it is possible that Terex received the steel in question from Ryerson and LTV Copperweld. Plaintiff thus can only speculate as to the actual source of the steel. The mere possibility that Terex received the steel tube from LTV Copperweld, in the face of uncontradicted evidence that LTV Copperweld did *not* receive or provide ITC-stamped steel, is insufficient to create a genuine issue of material fact. See Cordell Consultants, Inc. Money Purchase Plan v. Abbott, No. 11-80416-CIV, 2015 WL 11539507, at *4 (S.D. Fla. Nov. 9, 2015), aff'd sub nom. Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott, No. 15-15488, 2017 WL 1055565 (11th Cir. Mar. 21, 2017) ("If positive testimony to the contrary exists, an

---

[5] In its opposition to Ryerson's Motion for Summary Judgment, Terex also presented evidence that Ryerson supplied Terex with ITC-stamped steel *after* October 31, 2002. This evidence, however, does not support that Ryerson provided the ITC-stamped steel used in the October 4, 2002 manufacture of the Subject Boom Truck.

inference cannot be a basis for argument or for fact finding." (citing, among others, Clover v. Total Sys. Servs., 176 F.3d 1346, 1354-55 (11th Cir. 1999))).

The Georgia Court of Appeals' decision in Davis v. Wells Aluminum Se., Inc., 323 S.E.2d 215 (Ga. Ct. App. 1984) is instructive. In Davis, the plaintiff injured his back when removing a strip of aluminum that was lodged in a die cutting machine. The plaintiff alleged that the strip of aluminum was defective, and alleged that the strip was manufactured by the defendant. The evidence showed that strips of aluminum of the type in question were obtained by the plaintiff's employer from only two suppliers: the defendant and a competing supplier. The aluminum strip in question had a groove along its length that identified it as being manufactured by the competing supplier. The defendant's aluminum strips did not have a grooved identification mark. The Davis court noted that "[s]everal depositions contained in the record clearly indicate that the presence of the groove precludes any possibility of the piece of aluminum in question having been manufactured by defendant." 323 S.E.2d at 216. The plaintiff relied upon evidence that, on the day of the plaintiff's injury, his employer received from defendant a shipment of aluminum strips and "additional evidence as to the physical layout and procedure at the facility (which was the site of the injury) to show that the specific aluminum strip which caused the injury must have

been a part of that shipment from defendant." Id. The plaintiff also presented expert testimony that the defendant may have incorporated the competing supplier's identifying groove mark, but the court noted there was no direct evidence this actually occurred. In granting the defendant's motion for summary judgment, the Georgia Court of Appeals concluded that "[t]he evidence that defendant was not the manufacturer of the aluminum strip in question is uncontradicted. The speculations and conclusions upon which plaintiffs rely are not sufficient to create a genuine issue of material fact for a jury." Id.

The evidence here is strikingly similar to the evidence before the court in Davis. The defendant in Davis, like Atlas here, presented affirmative evidence that it did not supply the component part in question. Here, the evidence is that LTV Copperweld did not manufacture the steel, was not supplied steel by ITC, and that Ryerson did not receive ITC-stamped steel from LTV Copperweld. The evidence here, including from ITC, is that ITC manufactured the part that failed. In Davis, as here, the plaintiff relied upon circumstantial evidence to attempt to establish that the defendant was the only possible source of the component. In Davis, the evidence relied upon by the plaintiff was that, on the day of the plaintiff's injury, his employer received from the defendant a shipment of aluminum strips and "additional evidence as to the physical layout and procedure at the facility (which

was the site of the injury) to show that the specific aluminum strip which caused the injury must have been a part of that shipment from defendant." Id. Here, Plaintiff also presents speculative circumstantial evidence to attempt to show that LTV Copperweld was the only possible source of the steel.

Plaintiff's attempts to distinguish Davis are unconvincing. Plaintiff concedes that LTV Copperweld did not manufacture the steel in question, and argues instead that LTV Copperweld negligently filled a Ryerson order for part number 444195 and negligently sold and certified the nonconforming ITC-stamped steel to Ryerson. Plaintiff appears to argue that Davis applies only to products liability cases in which a plaintiff is required to show that a defendant manufactured the product at issue. Proximate cause, however, is a necessary element in any negligence action, including this one. See Dozier Crane & Mach., Inc. v. Gibson, 644 S.E.2d 333, 336 (Ga. Ct. App. 2007). In all negligence actions, if a plaintiff cannot establish whether a defendant's acts caused the plaintiff's injuries, the plaintiff cannot succeed on his negligence claim. Regardless whether the specific question is who manufactured a component or who supplied it, Davis applies.

The Court concludes that, like the plaintiff in Davis, "[t]he speculations and conclusions upon which [P]laintiff[] rel[ies] are not sufficient to create a genuine

issue of material fact for a jury." Id. Here, no reasonable jury could find, viewing the evidence in a light most favorable to Plaintiff, that LTV Copperweld supplied the steel tube at issue. Atlas's Motion for Summary Judgment is granted.[6]

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Atlas ABC Corporation's Motion for Summary Judgment [295] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Terex Corporation, Terex South Dakota, Inc., and Terex Utilities, Inc.'s Motions for Continued Protection of Evidence [327], [335], [347] are **GRANTED**.

**SO ORDERED** this 11th day of May, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[6] In connection with the motions for summary judgment filed in this action, the Terex Defendants filed several motions for continued protection of evidence. The Terex Defendants seek to maintain under seal certain design drawings of the XT machines and XT component part inventory and purchase history. Courts have routinely held that such sensitive data is confidential and subject to protection. See, e.g., American Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 740 (Fed. Cir. 1987). The Court, having reviewed the materials Terex seeks to protect, finds the materials are sensitive business information, and the Court grants Terex's motions for continued protection of evidence.

18