UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| JEFFREY GADDY,<br><br>           Plaintiff,<br><br>v.<br><br>AMERICAN INTERSTATE<br>INSURANCE COMPANY,<br><br>           Intervenor Plaintiff,<br><br>v.<br><br>TEREX CORPORATION, TEREX<br>SOUTH DAKOTA, INC., and TEREX<br>UTILITIES, INC.,<br><br>           Defendants. | CIVIL ACTION<br>FILE NO. 1:14-cv-01928-WSD<br><br>**CONFERENCE REQUESTED** |

## CONSOLIDATED PRETRIAL ORDER

1.

There are no motions or other matters pending for consideration by the court

except as noted:

**Plaintiff:  Mr. Gaddy has the following motions pending: Plaintiff's**

**Motion to Exclude Certain Opinion Testimony and Strike the Supplemental**

Report of Bradley Closson; Plaintiff's Motion to Exclude Certain Opinion Testimony and Strike the Supplemental Report of Donald Blair; Plaintiff's Motion to Exclude Certain Opinion Testimony of Vijay Saraf; Plaintiff's Motion to Exclude Certain Opinion Testimony of Richard Hoffelmeyer; Plaintiff's Motion to Exclude Certain Opinion Testimony of Henry Miller; Plaintiff's Motion to Exclude Certain Opinion Testimony of Jay Sturm.

The Court should also be aware of two outstanding discovery issues. First, Gaddy has requested that Terex supplement the documents that it has generated as a result of the two recalls that it issued in this case. Specifically, Terex generates an inspection sheet and photographs for every boom that it inspects as part of the recalls. It also generates internal memoranda and PowerPoint slides relating to those recalls. As of April 13, 2017, Terex reported to the National Highway Traffic Safety Administration that it had inspected 688 of the 1,332 booms subject to the recalls. Terex, however, has not produced all documents relating to those booms.

For example, Terex has produced inspection sheets relating to some of the booms it has inspected. With regard to the inspection sheets that Terex has produced, it appears that those inspection sheets are largely incomplete. Each inspection sheet contains two pages and they are labeled as such at the

bottom (*i.e.*, "Page 1 of 2"). In general, the second page is where the inspector describes in narrative detail what they find during the inspection, including cracks. For the vast majority of them, Terex has not produced the second page of the inspection sheet. Mr. Gaddy estimates that Terex has produced the second page of the inspection sheet with somewhere in the range of 5% or less of the inspection sheets.

These documents are important for Gaddy's case. Gaddy requested the documents in discovery, he requested supplementation in 2016 and 2017, and Terex has failed to supplement its production with a complete set of the requested documents. Gaddy has brought this to Terex's attention numerous times. Gaddy cannot provide this Court with a complete list of documents he intends to introduce at trial without reviewing the requested documents.

Second, Gaddy has requested that Terex supplement its responses to Interrogatory No. 9 to Plaintiff's First ROGS to Terex SD, and Interrogatory No. 2 to Plaintiff's Second ROGS to Terex SD. In sum, these request that Terex identify all cracks that it knows about in its XT booms. Given Terex's discovery of numerous additional cracks since that time, supplementation is warranted. Given the parties' previous discussions on these matters, Gaddy agreed to limit the scope of his request to the Z1290 and Z887 locations of

"Original Design" XTs (*i.e.*, pre-2004 design change XTs). Terex has not yet supplemented or informed Gaddy when it will do so.

**Intervenor/Plaintiff:**   The issue as to reimbursement of the workers' compensation lien issue should be bifurcated. Plaintiff/Intervenor requests that a hearing on the workers' compensation lien be held immediately upon release of the jury following verdict.

**Terex Defendants:**   Terex Defendants' *Daubert* Motion To Exclude Testimony of Dr. Ruston M. Hunt, *Daubert* Motion To Exclude Testimony of Nathan Morrill, P.E., and Motion To Strike Rebuttal Report Of Nathan Morrill, P.E., are being filed contemporaneously with the parties' Proposed Consolidated Pretrial Order.

Terex Defendants deny that there is an outstanding discovery dispute regarding Terex Defendants' supplementation of SN618 and SN618A recall documents ("recall documents"). Plaintiff's accusations that Terex Defendants have not fulfilled their duty to supplement and/or are withholding recall documents are completely without merit. Terex Defendants first produced recall documents on 8/16/16 and 8/26/16. Given that the recalls have been ongoing throughout this litigation and remain ongoing, Terex Defendants have provided Plaintiff with supplemental recall productions on

multiple occasions.  The need for multiple recall document supplementations was not because Terex Defendants had not fully supplemented previously, but instead reflects that recall work was and remains ongoing and that additional recall documents were being produced as they became available.  Most recently, on June 7, 2017, Terex Defendants provided Plaintiff with another supplemental production of recall documents.  As of the time of the filing of this Proposed Consolidated Pretrial Order, Terex Defendants have produced to Plaintiff all recall documents located to date.

Plaintiff's accusations that Terex Defendants have not fulfilled their duty to supplement and/or are withholding recall documents are false.  Terex Defendants have informed Plaintiff that they have produced approximately **678** recall inspection completion forms, all recall inspection completion forms created to date, and have provided Plaintiff the relevant bates ranges where Plaintiff could find the recall inspection completion forms produced to date (i.e.,  TEREX015417-015527  (produced  8/16/16);  TEREX015528-015739 (produced  8/16/16);  TEREX015788-015942  (produced  8/16/16); TEREX016090-016225 (produced 8/16/16); TEREX018100-018342 (produced 3/21/17); TEREX021293-021373 (produced 6/7/17).  As indicated by the production dates of the recall inspection completion forms, Plaintiff has

possessed and had the ability to review the vast majority of the recall inspection completion forms since March 21, 2017.

Plaintiff now bases his accusation that Terex Defendants are withholding recall inspection completion forms on the fact that Terex has on many occasions not produced the second page of the recall inspection completion forms. The second page is <u>not</u> where the inspector describes in narrative detail what they find during the inspection. Instead, the second page contains only the following language concerning labor and travel reimbursement:

- Repairs will be reimbursed at 100% of the distributors published hourly shop rate. A maximum of 1 Hours will be allowed for repair of each unit.

- A travel allowance of $1.50 per mile (one way) from the nearest dealer location or last service stop will be allowed.

- A completion form must be submitted in TWS when filing for warranty reimbursement.

The second page of the form is merely a few lines of innocuous form language concerning employee expense reimbursement, which presumably is why it was rarely submitted back to Terex Defendants and saved as recall documentation. It is irrelevant to Plaintiff's case.

Terex Defendants do not object to Plaintiff identifying as exhibits recall documents from the recent June 7, 2017 production after the Proposed Consolidated Pretrial Order deadline because that supplementation occurred shortly before the deadline.  Terex Defendants reserve the right to object to any exhibits added by Plaintiff after the submission of the Proposed Consolidated Pretrial Order.

Plaintiff's request that Terex Defendants supplement its responses to Interrogatory No. 9 to Plaintiff's First ROGS to Terex SD, and Interrogatory No. 2 to Plaintiff's Second ROGS to Terex SD was made on Friday June 9, 2017.  Terex Defendants have not yet had the opportunity to evaluate that request while they have been finalizing the Proposed Consolidated Pretrial Order, but will do so in the near future.

The parties reserve the right to file certain pre-trial and trial motions as approved by the Court, including, but not limited to, motions *in limine* and motions for directed verdict as the trial of this matter proceeds. The parties will file those motions at the Court's direction.

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B).

Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

**Plaintiff:** **There is an outstanding discovery issue that has not been resolved. Please see paragraph 1 above.**

**In response to the discovery issues raised by Terex below, Mr. Gaddy provides the following.**

**With respect to the issue about identifying claims of other similar cracking, Gaddy has explained to Terex at length that he is unable to supplement that list until he receives a complete set of recall documents (including the inspection sheets notes above) from Terex.**

**With respect to the remaining issue regarding Plaintiff's expert Nathan Morrill, Gaddy will address that in his response to the _Daubert_ motion noted below.**

**Terex Defendants:** **Terex Defendants have two discovery disputes that remain pending with Plaintiff.  First, in its Third Interrogatories, Terex SD requested Plaintiff to identify each instance of cracking that Terex SD was allegedly notified about prior to the subject accident, which Plaintiff responded to on or about August 29, 2016.  Since then, Plaintiff has informed**

- 8 -

Terex SD that it has become aware of additional alleged instances of cracking, but has refused to supplement his response to Terex SD's Third Interrogatories, despite Terex SD's repeated requests for Plaintiff to do so. Terex Defendants respectfully request that the Court compel Plaintiff to supplement his response in accordance with Fed.R.Civ.P. 26.

Second, Plaintiff's design expert, Nathan Morrill, P.E., admitted during his deposition in September 2016 that in forming his opinions, he relied on certain data that was compiled from his clients for whom Mr. Morrill had previously designed aerial devices.  However, Mr. Morrill refused to disclose the identity of his clients when asked.  In accordance with the Court's Standing Order Regarding Civil Litigation, Terex Defendants prepared a joint letter regarding the discovery dispute, which was forwarded to Plaintiff on or about November 11, 2016 to complete.  Terex Defendants followed up with Plaintiff on or about November 14, 2016, November 15, 2016, and February 22, 2017 regarding the status of Plaintiff's response, but has not received one to date.  Given Plaintiff's failure and/or refusal to abide by the Court's Standing Order regarding discovery disputes, Terex Defendants believe that portions of Mr. Morrill's testimony should now be excluded based upon his failure to disclose certain facts upon which he relied, and the issue is

**more fully addressed in Terex Defendants' *Daubert* Motion To Exclude Testimony of Nathan Morrill, P.E., which is being filed contemporaneously herewith.   However, out of an abundance of caution, and in the event the Court decides to compel the disclosure of the requested information rather than strike Mr. Morrill's testimony, Terex Defendants are disclosing the discovery dispute herein for the Court's consideration.**

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**All parties are properly designated, however, Plaintiff requests that anything this Court reads to the jury should not include American Interstate Insurance as long as it has protected its rights and agrees to this CPTO.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**There is no question as to the jurisdiction of this Court pursuant to 28 U.S.C § 1332.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties.

**Plaintiff:**

> Lance A. Cooper
> The Cooper Firm
> 531 Roselane Street
> Suite 200
> Marietta, GA 30060

**Terex Defendants:**

> Frederick N. Sager, Jr.
> Weinberg Wheeler Hudgins Gunn & Dial, LLC
> 3344 Peachtree Road NE, Suite 2400
> Atlanta, Georgia 30326

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

**Plaintiff:  Plaintiff is entitled to open and close arguments in this case.**

**Terex Defendants:   Terex Defendants do not question the right of Plaintiff to open and close to the jury.  Terex Defendants would request, however, that the Court require Plaintiff to make a full argument prior to**

**Terex Defendants' portion of the closing argument so that Plaintiff's final address to the jury is restricted to rebuttal only.**

7.

The captioned case shall be tried to **a jury of six with two alternates**.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**Plaintiff:  In the interests of efficiency, the trial should not be bifurcated because there are overlapping issues, facts, and witnesses as to liability and damages. *See, e.g., Strategic Decisions, LLC v. Martin Luther King, Jr. Ctr. For Nonviolent Soc. Change, Inc.*, No. 1:13-CV-2510-WSD, 2015 WL 4727143 at \*5 (N.D. Ga. Aug. 10, 2015) (Duffey, J.)(refusing to bifurcate because the "interest in judicial economy is not served by bifurcating the trial into separate phases when, as here, the issues sought to be bifurcated are interdependent, and separate phases of the trial will not efficiently use the jury's time.")**

**Terex Defendants:   Terex Defendants request that the trial of this matter be trifurcated in two respects.  First, Georgia's ten year statute of**

repose bars Plaintiff's negligent design claim unless Plaintiff can demonstrate that in designing the Subject Aerial Device, Terex SD manifested "a willful, reckless, or wanton disregard for life or property." O.C.G.A § 51-1-11(b)(2). Terex Defendants request that the trial be bifurcated such that during the first phase of the trial, the jury will determine whether the statute of repose exception set forth in O.C.G.A. § 51-1-11 applies to Plaintiff's negligent design claim. Terex Defendants believe that the separation of Plaintiff's negligent design claim will expedite trial and avoid undue prejudice, as the only evidence relevant to whether Terex SD exhibited the requisite intent to harm relates to its design process between 1996 and 1999. *See Ford Motor Co. v. Reese*, 300 Ga. App. 82, 85 (2009) ("a manufacturer's duty to implement alternative safer designs is limited to the time the product is manufactured, not months or years later when technology or knowledge may have changed").[1] Plaintiff should not be permitted to introduce evidence of Terex SD's design change or notices of cracking it received after 1999 during this phase of trial as it is irrelevant to the determination of Terex SD's intent. Second, Plaintiff has alleged punitive damages in this case. In order to avoid

_____

[1] Indeed, as this Court noted in its April 26, 2017 Opinion and Order, the relevant evidence relates to facts "which *it knew* [or] should have realized" at the time Terex SD designed the Subject Aerial Device. *See* Doc. 362, p. 19.

- 13 -

prejudicing the jury, Terex Defendants request a bifurcation of the trial pursuant to O.C.G.A. § 51-12-5.1(d), which provides in relevant part that "[i]f it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter …the defendant in light of the circumstances of the case."   Based on the aforementioned, Terex Defendants request that the trial of this matter be divided into three separate phases, as follows: (1) during the first phase of the trial, the jury will determine whether the statute of repose exception applies to Plaintiff's negligent design claim; (2) during the second phase of the trial, the jury will determine liability for Plaintiff's negligent design claim, whether the statute of repose exception should apply, failure to warn claims, proximate cause, and punitive damages, if any, as well as the amount of compensatory damages to be awarded, if any; and (3) during the third phase of the trial, should Terex Defendants be found liable for punitive damages, the jury will determine the amount of punitive damages to be awarded.

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as Attachment "B-1" are the jury questions, which include general questions Plaintiff wishes to be submitted to the jurors on voir dire examination.

**Plaintiff:** **If the Court believes a jury questionnaire is appropriate, Plaintiff is also submitting a jury questionnaire which is similar to the jury questionnaire this Court submitted in *Wright Medical Technology, Inc., et al. v. Robyn Christiansen*, 1:13-cv-00297-WSD.**

Attached hereto as Attachment "B-2" are the general questions which Defendants wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether

the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to Plaintiff's voir dire questions:

**Terex Defendants:** **Terex Defendants object generally to the use of a jury questionnaire in place of voir dire. Terex Defendants do not object to a jury questionnaire being submitted for the venire to fill out, in addition to voir dire, which could include Plaintiff's Proposed Jury Questionnaire question nos. 1-25, 31, 33-38, and 50-55. Further, Terex Defendants object to Plaintiff's proposed voir dire question nos. 24 through 32, and 39 as argumentative, improper, and suggestive of an answer by their phrasing which could potentially prejudice the prospective juror's ability to fairly judge this case.**

State any objections to Defendants' voir dire questions:

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be

- 16 -

allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870.

See Fed.R.Civ.P. 47(b).

**Plaintiff:** **Mr. Gaddy should be afforded three strikes pursuant to 28 U.S.C. § 1870.**

**Terex Defendants:** **Terex Defendants request that they be afforded three strikes each.**

**Plaintiff objects to the Defendants collectively receiving any more strikes than Plaintiff.**

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**Plaintiff:**

***Jeffrey Gaddy v. Ace Tree Surgery, Inc. and American Interstate Insurance Company***
**Claim No. 2014-014649**
**State Board of Workers' Compensation- Atlanta**
**Case Status: Still Pending**

***Ace Tree Surgery, Inc., and Brown's Tree Service, LLC individually and on behalf of all others similarly situated v. Terex South Dakota, Inc., Terex Utilities, Inc. and Terex Corporation***
**Civil Action File No. 1:16-CV-00775-SCJ**
**U.S. District Court, Northern District of Georgia, Atlanta Division**

- 17 -

**Case Status:  Still Pending. This is not technically a related case, but there is some overlap relating to the design issues of Terex's XT line of bucket truck booms.**

**Terex Defendants:**  A related putative class action is pending in this Court before the Honorable Steve C. Jones in the case styled *Ace Tree Surgery, Inc. and Brown's Tree Service, LLC v. Terex Corporation, Terex South Dakota, Inc., and Terex Utilities, Inc.*, United States District Court For The Northern District Of Georgia, Atlanta Division, Civil Action File No. 1:16-CV-00775-SCJ.  The Beasley Allen Firm, with whom Plaintiff's counsel in this case has formed a partnership, is one of the firms representing the plaintiffs in the class action.  In the putative class action, Plaintiffs, including Plaintiff Jeffrey Gaddy's employer, Ace Tree Surgery, Inc., seek damages allegedly arising from their purchase of certain Terex XT aerial devices.  Plaintiffs allege that such devices are defectively designed and do not comply with applicable industry-standard stress requirements and have asserted eleven causes of action against Terex Defendants, including breach of warranties, fraudulent misrepresentation, negligent misrepresentation, and violations of certain consumer-protection statutes.  Terex Defendants' Motion to Dismiss is currently pending before Judge Jones.

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statues, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

**Intervenor Plaintiff:**   Attachment "C(1)" contains the relevant rules, regulations, statues, ordinances, and illustrative case law that it believes applies to its claims in this matter.

**Terex Defendants:  Terex Defendants object to Plaintiff's outline of the case to the extent it violates this Court's Standing Order Regarding Civil Litigation.  Pursuant to same, Plaintiff is required in a multi-defendant case to identify the actionable conduct of each defendant.  Plaintiff's outline of the case refers to Terex Defendants collectively as "Terex" and fails to identify the**

actionable conduct of Terex Corporation, Terex Utilities, Inc., and Terex South Dakota, Inc. independently.  Terex Defendants request that the Court compel Plaintiff to identify the actionable conduct attributable to each defendant in compliance with this Court's Standing Order Regarding Civil Litigation and to strike any defendant for which Plaintiff fails to attribute actionable conduct.

Terex Defendants further object to Plaintiff's outline of the case to the extent it asserts claims that have not been properly plead in Plaintiff's Sixth Amended Complaint.  Specifically, Plaintiff attempts to assert a negligent recall claim, arguing that Terex "negligently performed a duty that it voluntarily undertook when it recalled the Original Design of its XT booms for cracking in the pedestal area of those booms while failing to notify its customers about cracking in the area that failed in this case and another similarly designed area of the boom."  *See* Exhibit C; *see also,* Plaintiff's legal issues to be tried, ¶ 17 (g) ("Whether [Terex], when they *voluntarily undertook a duty to recall* the Original Design…*negligently performed that duty* when they failed to warn its customers about known cracking in other areas of the boom design…") (emphasis added).  Negligent recall is an independent claim under

Georgia law[2] and the claim is not asserted in any of the seven Complaints that Plaintiff has filed in this case.  The Proposed Consolidated Pretrial Order is the first time that Plaintiff's negligent recall claim has been mentioned to Terex Defendants and the claim violates the notice pleading requirements set forth under Fed. R. Civ. P. 8(a).  *See e.g., Campbell v. Emory Clinic*, 166 F.3d 1157, 1161 (11th Cir. 1999) (Plaintiff failed to provide adequate notice of breach of fiduciary duty claim where term "fiduciary" did not appear anywhere in the complaint).  Documents relating to the November 2013 recall were produced to Plaintiff on or about October 21, 2014 during discovery and Plaintiff could have amended his complaint at any time thereafter to assert a negligent recall claim.  To allow Plaintiff to do so now would be highly prejudicial to Terex Defendants as discovery has closed and summary judgment pleadings have been filed and ruled upon.  Any claim or argument

---

[2]  Georgia law provides for two types of negligent recall claims, negligent failure to initiate a recall and negligent execution of a recall.  *See In re Stand 'n Seal, Products Liability Litigation*, 2009 WL 3150417, at *4 (N.D. Ga. Sept. 28, 2009). Plaintiff appears to be asserting a negligent execution of a recall claim here (though it is unclear as this is the first time Terex Defendants have been notified of the claim).  *See id.* (citing *Blossman Gas Co. v. Williams*, 189 Ga. App. 195, 197 (1988) ("The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which an action lies.")).

**relating to Terex Defendants' alleged negligent recall of the Subject Aerial Device should be stricken.** *See e.g., Enwonwu v. Fulton-DeKalb Hosp. Authority***, 286 Fed. Appx. 586, 598 (11th Cir. 2008) (district court did not abuse its discretion in striking the plaintiff's reckless endangerment claim when it was pled for the first time in the pretrial order).**

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statues, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the

stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

**Terex Defendants:   Attached hereto as Exhibit E is a list of Terex Defendants' proposed stipulations of undisputed facts.  Plaintiff has refused to stipulate to any of Terex Defendants' proposed stipulations at the time of submission of this Proposed Consolidated Pretrial Order.  Terex Defendants request the Court to compel Plaintiff to do so and/or grant such other and further relief as the Court deems just and proper.**

17.

The legal issues to be tried are as follows:

**Plaintiff's Response:**

a)      **Whether Terex South Dakota negligently designed its pre-2004 design ("Original Design") of its XT series of bucket truck booms, including the Subject Boom.**

b)      **Whether Terex South Dakota failed to adequately warn of hazards in the Original Design of its XT series of bucket truck booms, including the Subject Boom.**

c)      Whether Terex Utilities failed to adequately warn of hazards in the Original Design of the XT series of bucket truck booms, including the Subject Boom.

d)      Whether Terex Corporation failed to adequately warn of hazards in the Original Design of the XT series of bucket truck booms, including the Subject Boom.

e)      Whether Terex South Dakota should have known that it manufactured some of its Original Design of its XT series of bucket truck booms, including the Subject Boom, using defective steel that failed to meet its design requirements.

f)      Whether Terex South Dakota failed to adequately warn its customers that it manufactured some of its Original Design of its XT series of bucket truck booms, including the Subject Boom, using defective steel that failed to meet its design requirements.

g)      Whether Terex South Dakota, Terex Utilities, and Terex Corporation, when they voluntarily undertook a duty to recall the Original Design of its XT series of bucket truck booms for cracking in the pedestal area of those booms, negligently performed that duty when they failed to warn it customers

- 24 -

about known cracking in other areas of the boom design, including the area that catastrophically failed in this case and a similarly designed area in another part of the boom.

h)     Whether the conduct of Terex South Dakota, Terex Utilities, and Terex Corporation proximately caused Jeff Gaddy's injuries.

i)     The amount of special damages that Plaintiff is entitles to recover for his injuries, including his lost wages, and past and future medical bills, and costs of care.

j)     The amount of non-economic damages Plaintiff is entitled to recover including interference with normal living, interference with enjoyment of life, loss of capacity to labor and earn money, impairment of bodily health and vigor, fear of extent of injury, shock of impact, actual pain and suffering (past and future), mental anguish (past and future), and the extent to which the Plaintiff must limit activities.

k)     Whether punitive damages should be imposed against Terex to deter it from further wrongful conduct in the future and, if so, the amount of those damages.

l)    The percentage of comparative negligence, if any, that should be borne by Jeff Gaddy.

m)    The percentage of negligence, if any, that should be borne by Ace Tree Surgery.

**Terex Defendants' Response:**

a)    Whether Terex SD negligently designed the Subject Aerial Device.

b)    Whether Plaintiff's negligent design claim is barred by Georgia's statute of repose, O.C.G.A. § 51-1-11.

c)    Whether Terex Corporation, Terex Utilities, Inc., and/or Terex SD had a duty to warn Plaintiff of the Subject Aerial Device's purported dangers.

d)    Whether Terex Corporation, Terex Utilities, Inc., and/or Terex SD negligently failed to warn Plaintiff of the Subject Aerial Device's purported dangers.

e)    Whether Terex Corporation's, Terex Utilities, Inc.'s, and/or Terex SD's alleged negligence was a proximate cause of Plaintiff's injuries.

f)    Whether Plaintiff was negligent with regard to his use of the Subject Aerial Device prior to the accident.

g)    Whether Plaintiff's alleged negligence was the proximate cause of Plaintiff's injuries.

h)    What percentage of fault, if any, should be apportioned to Terex Corporation, Terex Utilities, Inc., and/or Terex SD pursuant to O.C.G.A. § 51-12-33.

i)    What percentage of fault, if any, should be apportioned to Plaintiff pursuant to O.C.G.A. § 51-12-33.

j)    What percentage of fault should be apportioned to Ace pursuant to O.C.G.A. § 51-12-33.

k)    Whether Plaintiff demonstrated by clear and convincing evidence that Terex Corporation's, Terex Utilities, Inc.'s, and/or Terex SD's actions showed willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care which would raise the presumption of conscious indifference to consequences under O.C.G.A. § 51-12-5.1.

Terex Defendants object to Plaintiff's legal issues to be tried to the extent they assert new claims against Terex Defendants that have not been plead in Plaintiff's Sixth Amended Complaint. Terex Defendants refer to and incorporate herein by reference its objections asserted in Paragraph 14 above

- 27 -

**as if fully set forth herein.  Terex Defendants further object to Plaintiff's legal issues to the extent they are inconsistent with the Court's previous rulings. This Court ruled on April 26, 2017 that Ace Tree Surgery, Inc. was a non-party at fault as a matter of law.  To the extent subsection (m) of Plaintiff's legal issues is inconsistent with that ruling, Terex Defendants respectfully request that it should be stricken.**

18.

Attached hereto as Attachment "F-1" for the Plaintiff and Attachment "F-2" for the Defendant is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness

list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the Plaintiff and "G-2" for the Defendant are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular

plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

**<u>Terex Defendants</u>: Terex Defendants object to Plaintiff's exhibit list to the extent it violates this Court's Standing Order Regarding Civil**

Litigation.  Pursuant to same, exhibits shall be separately numbered and should not be grouped as "hospital records" or "photographs".  Plaintiff's exhibit list includes multiple grouped exhibits in violation of the Court's Standing Order.  By way of example, Plaintiff identifies all emails regarding instances of cracking, bates labeled Terex-E 05200-07627, as one exhibit, making it impossible for Terex Defendants to identify which documents will actually be used and to assert the necessary objections.  Terex Defendants further object to Plaintiff's exhibit list for vagueness, as multiple documents identified have no reference to a bates label or document reference, making it impossible for Terex Defendants to determine what document Plaintiff is referencing to assert the necessary objections.  Terex Defendants further object to Plaintiff's exhibit list to the extent additional documents were identified for the first time in the Proposed Consolidated Pretrial Order and were not previously produced to Terex Defendants in discovery.  By way of example, Plaintiff identifies over 50 "Photographs of property where incident occurred", "Photographs of Jeff Gaddy before injuries", "Photographs of Jeff Gaddy's Family", and "Photographs of Jeff After Injury" that were never produced in discovery and were identified for the first time by Plaintiff in the Proposed Consolidated Pretrial Order.  This problem is compounded by the

fact that Plaintiff added 1,242 exhibit entries to his exhibit list at 9:56 pm on June 11, 2017, the night before the original pretrial order deadline and 9 days after the date the parties agreed in writing to exchange exhibit lists, making it virtually impossible for Terex Defendants to review all new exhibits and lodge necessary objections by the pretrial order deadline.  Terex Defendants further object to all references of "Photograph – Recall Inspection" in Plaintiff's exhibit list for vagueness as there is no way for Terex Defendants to identify the referenced photograph.  Plaintiff emailed the photographs (approximately 937) to Terex Defendants on or about June 7, 2012, but the photographs did not reference the corresponding exhibit number from Plaintiff's exhibit list, therefore making it impossible for Terex Defendants to individually object to same in accordance with the Court's instructions.  Terex Defendants respectfully request the Court to strike all the aforementioned exhibits in Plaintiff's exhibit list for violating this Court's Standing Order, the Federal Rules relating to discovery, and the instructions set forth under this Court's Pretrial Order.  In the event Plaintiff is permitted to amend his exhibit list, Terex Defendants respectfully request the right to raise any necessary objections once Plaintiff's exhibits have been properly identified and Terex Defendants have an opportunity to review them.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

Any objection to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

**<u>For Plaintiff:</u>**

**Attached hereto as Attachment "K-1" are Plaintiff's deposition testimony designations.**

**<u>For Terex Defendants:</u>**

**Attached hereto as Attachment "K-2" are Terex Defendants' deposition testimony designations. Pursuant to the Court's Standing Order Regarding Civil Litigation, the parties are also required to designate interrogatory and request to admit responses that the parties expect to or may introduce at trial.**

**Those designations are included in Attachment "K-2" as well.   Terex Defendants reserve the right to withdraw any designations or counter-designations based on the Court's rulings on Terex Defendants' motions *in limine* and/or objections to Plaintiff's designations and counter-designations. Terex Defendants further reserve the right to file their objections to Plaintiff's deposition designations and counter-designations prior to the first scheduled day of trial in accordance with the instructions set forth above.**

21.

Attached hereto as Attachments "H-1" for the Plaintiff and "H-2" for the Defendants are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

**<u>Terex Defendants:</u>  Terex Defendants object to Plaintiff's filing of trial briefs to the extent it fails to comply with the instructions set forth herein and by the Court.**

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern (Rev. 03/01/11) APP.B – 27 Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

- 35 -

**Terex Defendants:** **Given the ambiguity of the nature of Plaintiff's claims, as discussed herein above, Terex Defendants respectfully request the right to amend the verdict form to conform to the claims that will actually be tried and the evidence that will actually be presented during the trial of this matter.**

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

**Given the complex issues in the case, the parties respectfully request that each side be provided 30 minutes for opening and one hour for closing arguments.**

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on **May 25, 2017** to discuss in good

faith the possibility of settlement of this case. The court has not discussed settlement of this case with counsel. It appears at this time that there is:

**Little possibility of settlement.**

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

**The parties request a special setting. Numerous parties, witnesses, and experts must travel out-of-state to attend the trial.**

28.

The Plaintiff estimates that he will require 4 days to present his evidence. Terex Defendants estimate that they will require 4 days to present their evidence. It is estimated that the total trial time is approximately 8-10 days.

29.

**IT IS HEREBY ORDERED** that the above constitutes the pretrial order for the above captioned case (__) submitted by stipulation of the parties or (__) approved by the court after conference with the parties.

**IT IS FURTHER ORDERED** that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the

- 37 -

pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

      **IT IS SO ORDERED** this _____ day of June, 2017.

_____

**WILLIAM S. DUFFEY**
**UNITED STATES DISTRICT JUDGE**

      Each of the undersigned counsel for the parties hereby consent to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

                              **THE COOPER FIRM**

                              */s/ Lance A. Cooper*
                              Lance A. Cooper
                              Georgia Bar No. 186100
                              Andrew S. Ashby
                              Georgia Bar No. 455020
                              *Counsel for Plaintiff*

531 Roselane Street, Suite 200
Marietta, Georgia 30060
(770) 427-5588

**SAVELL & WILLIAMS, LLP**


/s/ Christian A. Pecone
Christian A. Pecone
Georgia Bar No.
*Counsel for Intervenor Plaintiff,*
*American Interstate Insurance*
*Company*

233 Peachtree Street
2700 Harris Tower
Atlanta, Georgia 30303


**WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL**

/s/ *Frederick N. Sager, Jr.*
Frederick N. Sager, Jr.
Mark R. Johnson
Frederick L. Cooper, IV
Shannon V. Barrow
*Counsel for Terex Corporation, Terex*
*South Dakota, Inc.; and Terex*
*Utilities, Inc.*

3344 Peachtree Road, NE
Suite 2400
Atlanta, GA 30326

## <u>CERTIFICATE OF COMPLIANCE WITH N.D.GA. LOCAL RULE 5.1B</u>

This is to certify that this Pleading was created in Times New Roman 14 point font in accordance with Northern District of Georgia Local Rule 5.1B.

This 13th day of June, 2017.

**THE COOPER FIRM**

*/s/ Drew Ashby*
Lance A. Cooper
Georgia Bar No. 186100
Andrew S. Ashby
Georgia Bar No. 455020
*Counsel for Plaintiff*

531 Roselane Street, Suite 200
Marietta, Georgia 30060
(770) 427-5588

# EXHIBIT A

Pursuant to Judge Duffey's Standing Order, the qualifying questions (civil cases) listed on the Northern District of Georgia's website for Judge Duffey will be propounded. They are included below:

1.   Does any member of the panel know Lance Cooper or Drew Ashby?

2.   Does any member of the panel know any employees of, or has any member of the panel or their immediate family worked for or been represented by The Cooper Firm?

3.   Does any member of the panel know Frederick "Rick" Sager, Mark Johnson, Frederick "Derick" Cooper or Shannon Barrow?

4.   Does any member of the panel know any employees of, or has any member of the panel or their immediate family worked for or been represented by Weinberg, Wheeler, Hudgins, Gunn & Dial?

5.   Does anyone of the panel know Christian A. Pecone?

6.   Does any member of the panel know any employees of, or has any member of the panel or their immediate family worked for or been represented by Savell & Williams, LLP?

7.   Does anyone know or has anyone ever met Jeff Gaddy?

8.   Does anyone know or has anyone ever heard of Terex Corporation, Terex South Dakota, Inc. or Terex Utilities, Inc.?

9.   Does anyone know any of the following individuals who may be witnesses in this case?

    1)   Burak Akyuz
    2)   Cathy Gragg-Smith

3)      David Pope
4)      Francis Rushing
5)      Nathan Morrill
6)      Dr. Ruston Hunt
7)      Elaine Garner
8)      David Gaddy, Jr.
9)      David Gaddy, Sr.
10)     Donald Morgan
11)     Jack Gaddy
12)     Joseph Sailors
13)     Kenneth Morgan
14)     Alan Goldenberg
15)     John Tassone
16)     Avi Bhavaraju, MD
17)     Douglas Lundy, MD
18)     Nicholas Boulis, MD
19)     Erik Shaw, MD
20)     William Benedict, MD
21)     Bertrude Pierre
22)     Mike Bailey
23)     Debbie Archer
24)     Brenna Blocker
25)     Juakina Cole
26)     Suzan Thrasher
27)     Marie Louis Jacques
28)     Mary Frances Coussillant
29)     Shartey Neal
30)     Sherry Ndoye
31)     Melvin Talley
32)     Greg Homiller
33)     Elroy Severson
34)     Francis Strohfus
35)     James Celentano
36)     Jim Olson
37)     Jon Promersberger
38)     Kelly Amick
39)     Lonnie Kleinsasser

40)    Luke Webber
41)    Mike Wise
42)    Rob Roche
43)    Todd Williams
44)    Brad Orterstrom
45)    John Rich
46)    Lonnie Fall
47)    Michael Johnson
48)    Cameron Smith
49)    Martin B. Jakobsen
50)    Dr. Anthony DeArdo
51)    Dr. Marc Zupan
52)    Rick Curtin
53)    Dennis Powell
54)    Paul Byer
55)    Mark Smith
56)    Paul Green
57)    Jacob Gaddy'
58)    Jeffrey Michael Gaddy
59)    Jordan Gaddy
60)    Ricky Culler
61)    Shane Gaddy
62)    Joseph Webb
63)    Cindy Webb
64)    Bernard Rung
65)    Craig Percy
66)    Josh Chard
67)    Billy Driskell
68)    Bob Phillips
69)    Greg Ramseyer
70)    Ricky Williams
71)    Fred Ross
72)    Scott Asplundh
73)    Carl Paugh
74)    Carol Asplundh
75)    Chris Rote
76)    Christina DeFulvio

77)    Deborah Wilson
78)    Angela Sessoms
79)    Tyra Wingo
80)    Amy Gaddy n/k/a Amy Rolfe
81)    Carolyn Gaddy
82)    Jeffrey Michael Gaddy
83)    Martha Reece
84)    Michael Reece
85)    Elizabeth Thrasher
86)    Mark Sharman
87)    James Loughney
88)    Jimmie Gilbert
89)    Gerald Bilsky MD
90)    Jeffrey Reilly MD
91)    Andrew Zadoff MD
92)    Christine Uqochukwu, RN
93)    Dr. Karla Walker
94)    Mark Catlin MD
95)    Laurie Nash Ph.D.
96)    Uszula Klich, Ph.D.
97)    Brenda Cohran
98)    Klara Aminova
99)    Kim Johnson
100)   Kayla Weekley
101)   Frank Wynn
102)   Don Blair
103)   Brad Closson
104)   Nathan Dorris
105)   Richard Hoffelmeyer
106)   Dr. Henry Miller
107)   Vijay Saraf
108)   Jay Sturm

10.    Is there any member of the panel who has any special disability or problem that would make serving as a member of this jury difficult or impossible?

- 44 -

11.   If you are selected to sit on this case, will you be able to render a verdict solely on the evidence presented at the trial and in the context of the law as I will give it to you in my instructions, disregarding any other ideas, notions, or beliefs about the law that you may have encountered in reaching your verdict?

12.   Does any juror hold any belief, religious or otherwise, which discourages or prevents jury service?

13.   Is there anyone who is not a citizen of the United States?

14.   Is there anyone here who is not at least eighteen years of age?

15.   Do you speak English?

16.   Can you read, write and understand English?

17.   Is there anyone here that has a charge pending against him or her for the commission of, or has been convicted in a State or Federal court of a crime punishable by imprisonment for more than one year?

18.   For anyone who answered "Yes" to the previous question, have you since sought and obtained civil rights relief concerning your criminal charges or conviction?

## EXHIBIT B-1

## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

## GENERAL JUROR QUESTIONS

1. Have you ever been a manager, supervisor, or director of any type of business or company, regardless of size?

2. Have you ever been responsible for hiring or disciplining employees?

3. Have you or an immediate family member had any legal training or studied law, including by participating in a paralegal program or through on-the-job training?

4. Have you or an immediate family member or close friend ever worked for a lawyer or in a law office?

5.  Do you, any family members or close friends have training, employment, education or experience in the following areas:

　　　　_____ Medicine

　　　　_____  Nursing

　　　　_____ Health Care

　　　　_____ Engineering

　　　　_____ Safety regulation or enforcement

- 46 -

_____ Testing of mechanical devices of any kind

_____ Manufacturing

_____ Medical devices

6.     Have you ever worked for a manufacturer of vehicles or equipment?

7.     Have you ever been responsible for the safety program for a company?

8.     Have you ever been responsible for quality control for a company?

9.     Have you ever been responsible for the maintenance and inspection of vehicles or equipment for a company?

10.    Have you or a family member ever worked for any state or federal regulatory agency?

11.    Have you served in the military?

12.    Have you or an immediate family member ever worked as a tree trimmer?

13.    Have you or an immediate family member ever worked in a profession that required the use of heavy equipment?

14.    Have you or an immediate family member ever been required to inspect machinery of any kind?

15.    Have you ever been involved as a party in a lawsuit (other than a divorce or child custody case)?

16.    Have you ever been involved in a court proceeding in any other way?

17.    Do you have any experience in product liability lawsuits?

18.    Have you ever served as a trial juror?

19.    Have you or an immediate family member or close personal friend ever had a bad experience with a product that was (or may have been) unsafe?

20.    Have you, or any member of your family, ever worked in the insurance or claims field?

21.    Have you ever made a claim for damages to your person or property?

22.    Have any claims for damages to persons or property ever been made against you or any member or your immediate family?

23.    Do you support legislative proposals to place caps or limits on the amount of money juries can award?

24.    Do you agree there are too many lawsuits?

25.    Do you agree that jury awards are too high?

26.    Do you agree people are too ready to sue?

27.    Do you agree lawsuits are costing too much money?

28.    Do you agree with the following statement – If I were on a jury, I could not award damages for things like mental anguish, or pain and suffering.

29.    Do you agree with the following statement – Sometimes lawyers file lawsuits in an attempt to take unfair advantage of wealthy corporations.

30. If you had a family member killed or injured because of the negligence of another, would you sue?

31. Do you have a belief or opinion that people take too little responsibility for their own actions these days?

32. Do you think people who file lawsuits are generally trying to blame companies for the bad things that inevitably happen in life?

33. Have you or an immediate family member ever struggled with a life altering disability?

34. Have you ever experienced chronic pain in any part of your body?

35. What radio programs and stations do you listen to?

36. Have you ever written a letter to the editor of a newspaper, called a radio or television station, or posted a comment on-line about an issue?

37. What bumper sticker(s) do you have or have you had on your car in the past five (5) years?

38. Do you have a personalized licensed plate on your car?

39. Do you have any concerns about your ability to be an impartial juror in a case where a worker who was injured when his bucket truck boom failed and collapsed is suing the corporation that manufactured the bucket truck boom?

_____

- 49 -

# JUROR QUESTIONNAIRE
### Gaddy v. Terex Corporation, et al.
### 1:14-cv-01928-WSD

You are a prospective juror for a case to be tried in this court. To make the jury selection process efficient and effective, you are required to complete this questionnaire. It is designed to seek information that will assist the parties in making important decisions regarding the people selected to serve as jurors in this action.

Do not discuss the questions or your answers with any other person. It is important that your answers be yours and yours alone. The questions are not meant to be intrusive. They simply are intended to gather background information from you to help the Court and the parties select the best jury possible to try this case.

Please write your juror number on every page of this questionnaire where indicated.

Please print your answer to each question as *legibly, completely and accurately* as you can. Please answer each question, and do not leave any question blank. If the question does not apply to you, write "N/A" for "not applicable."  If you provide information you would like to discuss privately with the judge and the lawyers, if follow-up is necessary later, please note this in your answer to such question(s).

You must sign your questionnaire and your answers will be given the same effect as if you gave them directly to the Court. We need your best, honest effort to answer all of the questions in the questionnaire.

1.      Name (first middle last): _____

2.      Name you prefer to be called: _____

3.      Maiden Name (if applicable): _____

4.      Gender: _____

5.      Age: _____

6.      City and County of Residence: _____

7.      How long have you lived at your current address? _____

8.      List other cities and states in which you have lived during the past 10 years:

        _____

        _____

9.      Are you able to read, write, and understand the English language without

        any difficulty? ___ Yes ___ No

        If not, please explain:

        _____

        _____

10.     What is your educational background?  (Answer **all** that apply to you)

        a. _____        Grade school or less

        b. _____        Some high school

        c. _____        Technical or business school _____

        d. _____        Graduated from high school at _____

        e. _____        Some college at _____

        f. _____        Graduated from college at _____

                        with a degree in _____

g. ____   Completed graduate school at _____

with a degree in _____

11.   Current (or most recent) employment status (check **all** that apply):

___   Self-employed

___   Work full-time

___   Work part-time

___   Homemaker for ___ years

___   Student for ___ years; currently at _____ (name of school)

___   Disabled and unable to work for ____ years

___   Unemployed/laid off for _____ years or _____ months

___   Retired for ____ years

___   Other:_____

12.   Please state the name and city of your current employer and describe your current job, and how long you have been employed in your current job. If you have worked at your current job for less than 5 years, for whom did you work before your current employer? _____

13.   If you are retired, please state the name and city of your prior employer and describe your prior job, and how long you worked at your prior job?

_____

_____

14. Do you supervise others in your current job or did you in previous jobs?

   ___ Yes ___ No

   If yes, how many people do you supervise? _____

15. Have you ever been a manager, supervisor, or director of any type of

   business or company, regardless of size? ___ Yes ___ No

   If yes, identify the business or company. _____

16. Have you ever been responsible for hiring or discipling employees?

   ___ Yes ___ No

17. Are you:

   _____ Single          _____ Married
   _____ Separated       _____ Divorced
   _____ Widowed         _____ Co-habitating

18. Your spouse's current occupation and employer: _____

19. Your spouse's occupation(s) in the past 5 years: _____

20. Your spouse's educational background: _____

21. Do you have children? ___ Yes ___ No

   If yes, how many? _____

22. If applicable, please complete the following for your children over 18 years

   old (for more than four children, provide the requested information on the

   back of this page):

a.   <u>First Child</u>          Gender: _____     Age: _____

      School Attending: _____

      Current Employment: _____


b.   <u>Second Child</u>        Gender: _____     Age: _____

      School Attending: _____

      Current Employment: _____


c.   <u>Third Child</u>          Gender: _____     Age: _____

      School Attending: _____

      Current Employment: _____


d.   <u>Fourth Child</u>         Gender: _____     Age: _____

      School Attending: _____

Current Employment: _____

23.     Have you or an immediate family member had any legal training or studied

         law, including by participating in a paralegal program or through on-the-job

         training? ____ Yes ____ No


         If yes, identify the relationship of the person to you and describe the training
         briefly: _____

24.     Have you or an immediate family member or close friend ever worked for a

         lawyer or in a law office? ____ Yes ____ No

         If yes, identify the relationship of the person to you and explain the
         responsibilities briefly:_____

25.     Do you, any family members or close friends have training, employment,

         education or experience in the following areas:

         ____ Medicine

         ____  Nursing

         ____ Health Care

         ____ Engineering

         ____ Safety regulation or enforcement

         ____ Testing of mechanical devices of any kind

         ____ Manufacturing

         ____ Medical devices

         ____ Law

         If yes, identify the relationship of the person to you and explain the
         experience briefly: _____

26.    Have you ever worked for a manufacturer of vehicles or equipment?

___ Yes ___ No

    If yes, identify the relationship of the person to you and the manufacturer.

_____

27.    Have you ever been responsible for the safety program for a company?

___ Yes ___ No

If yes, please explain.

_____

28.    Have you ever been responsible for quality control for a company?

___ Yes ___ No

If yes, please explain.

_____

29.    Have you ever been responsible for the maintenance and inspection of vehicles or equipment for a company? ___ Yes ___ No

If yes, please explain.

_____

30.    Have you or a family member ever worked for any state or federal regulatory agency? ___ Yes ___ No

    If yes, identify the relationship of the person to you and the agency.

_____

31.    Have you served in the military? ___ Yes ___ No

    a. If yes, which branch? _____

b. What were your dates of service? _____

c. What was your rank at discharge? _____

d. Were you honorably discharged? _____

e. Were you ever deployed to a combat zone? ___ Yes ___ No

If yes, please describe where, when, and your role:

_____

32. Has an immediate family member served in the military? *(Note: For the purposes of this questionnaire, the term "immediate family" includes a spouse,   father, mother, sister, brother, daughter or son.)*

___ Yes ___ No

If yes, who? _____

a. If yes, which branch? _____

b. Were they honorably discharged? _____

33. Have you ever been involved as a party in a lawsuit (other than a divorce or child custody case)? ___ Yes ___ No

a. How many lawsuits have you been involved in?_____

b. Were you the plaintiff?_____

c. Were you the defendant?_____

d. What was the nature of the suit(s)?_____

e. Were you satisfied with the results, and, if not, why not?_____

34.    Have you ever been involved in a court proceeding in any other way?

____ Yes  ____ No

If yes, please check **all** that apply:

       ____    A witness

       ____    Testified, but not at trial (for example, at a deposition)

       ____    Testified at trial

       ____    Other. Please explain:

35.    Do you have any experience with product liability lawsuits?

____ Yes  ____ No

If yes, briefly explain your experience.

_____

36.    Have you ever served as a trial juror?  ____ Yes  ____ No

    a.    If yes, when? _____ (If more than once, please provide the additional information on the back of this page.)

    b.    Was it criminal? ____  or civil? _____

    c.    Was it state? _____  or federal? _____

    d.    If criminal, what kind of case was it (drugs, murder, fraud, etc.)?

    e.    Did you reach a verdict?        ____ Yes  ____ No

    f.    Were you the jury foreperson? ____ Yes  ____ No

37.    Have you ever served on a grand jury?  ____ Yes  ____ No

    a.    Was it state? _____       or federal? _____

    b.    Were you the grand jury foreperson?  ____ Yes  ____ No

38.     Have you or a loved one ever struggled with a life altering disability?

___ Yes ___ No

   If yes, please explain:
   _____

39.     Have you ever experienced chronic pain in any part of your body?

   ___ Yes ___ No

40.     Have you or an immediate family member ever?

   a.     Worked as a tree trimmer?
          ___ Yes ___ No

   b.     Worked in a profession that required the use of heavy equipment?
          ___ Yes ___ No

   c.     Been required to inspect machinery of any kind?
          ___ Yes ___ No

          If yes, detail the nature of the work and what was required of
          you/them:

          _____

41.     Have you or an immediate family member or close personal friend ever had

   a bad experience with a product that was (or may have been) unsafe?

___ Yes ___ No

   If yes, please explain:
   _____

42.   Is there anything about industrial equipment (including bucket truck booms or cherry pickers) or the tree trimming business that would affect your ability to be fair and impartial juror in this action?  ___ Yes ___ No

If yes, please explain:
_____

43.   Do you have any concerns about your ability to be an impartial juror in a case where a worker who was injured when his bucket truck boom failed and collapsed is suing the corporation that manufactured the bucket truck boom?

___ Yes ___ No

If yes, please explain:

_____

44.   Do you currently take any prescription medicines?  ___ Yes ___ No

45.   On a scale of 1 to 10 (with 1 being "strongly disagree" and 10 being "strongly agree"), how much do you agree or disagree with the following statements (circle your choice):

a.   Lawsuits are a drain on the economy [ 1 2 3 4 5 6 7 8 9 10 ]

b.   People are too ready to sue [ 1 2 3 4 5 6 7 8 9 10 ]

c.   Lawsuits are costing us all too much money [ 1 2 3 4 5 6 7 8 9 10 ]

d.   If I were on a jury, I could not award damages for things like mental anguish, or pain and suffering [ 1 2 3 4 5 6 7 8 9 10 ]

- 60 -

e.      Sometimes lawyers file lawsuits in an attempt to take unfair advantage of wealthy corporations [ 1 2 3 4 5 6 7 8 9 10 ]

f.      Lawsuits just drive up the costs of things we buy like cars and medical bills [ 1 2 3 4 5 6 7 8 9 10 ]

Please explain more about your answers where additional information may be helpful:

_____

_____

_____

46.     On a scale of 1 to 10 (with 1 being "would never sue" and 10 being "would definitely sue"), how likely would you be to personally sue for each of the following (circle your choice):

a.      Family member killed because of someone else's negligence [ 1 2 3 4 5 6 7 8 9 10 ]

b.      Pain and suffering of family member because of someone else's negligence [ 1 2 3 4 5 6 7 8 9 10 ]

c.      Serious bodily injury to yourself or a family member because of someone else's negligence [ 1 2 3 4 5 6 7 8 9 10 ]

Please explain more about your answers where additional information may be helpful:

_____

_____

_____

47.    On a scale of 1 to 10 (with 1 being "very unfavorable opinion" and 10 being

"very favorable opinion"), please tell us your opinions about the following

lawyers (circle your choice):

a.     Personal injury lawyers [ 1 2 3 4 5 6 7 8 9 10 ]

b.     Lawyers that defend corporations against lawsuits [ 1 2 3 4 5 6 7 8 9

10 ]

c.     Lawyers that are employees of corporations (in-house lawyers)

[ 1 2 3 4 5 6 7 8 9 10 ]

48.    Are you inclined to believe everything that an engineer says simply because

that person is an engineer?  ____  Yes  ____  No

49.    Would you consider yourself a physically active person? ____  Yes  ____  No

Please describe the types of physical activities that you engage in:

_____

50.    Please list the newspapers, magazines, internet sites, and other news sources

that you review regularly:_____

51.    How often do you read newspaper editorials or opinion pages (including

blogs and internet news sites)?

___ Daily

___ Weekly

___ Monthly

___ I don't follow the news

52.    What types of books do you enjoy reading? _____

53.    Please list all civic, social, professional, political, or religious organizations

and clubs to which you belong. For each organization in which you hold a

leadership position, state the position you hold.

_____

54.    What radio programs and stations do you listen to?_____

55.    What television shows do you watch regularly?_____

56.    Have you ever written a letter to the editor of a newspaper, called a radio or

television station, or posted a comment on-line about an issue?

___ Yes ___ No

If yes, what was/were the issue(s)?

_____

57.    What are your favorite leisure-time activities?

_____

58.     What bumper sticker(s) do you have or have had on your car in the past five

(5) years? _____

59.     Do you have a personalized license plate on your car?  ____  Yes  ____  No

If yes, what does it say? _____

## <u>OATH</u>

I declare under penalty of perjury that the information which I have provided
in this Juror Questionnaire is true and correct.


_____

DATE                                    JUROR SIGNATURE


                                        _____

                                        PRINT NAME


                                        _____

                                        JUROR NUMBER

**EXHIBIT B-2**

**TEREX DEFENDANTS' PROPOSED *VOIR DIRE***

1.   Do any of you have any negative impressions or feelings about Terex Corporation, Terex South Dakota, Inc. or Terex Utilities, Inc., for any reason?

2.   Have any of you ever seen a product manufactured by Terex Corporation, Terex South Dakota, Inc., or Terex Utilities, Inc.?  This would include Genie products.

3.   Have any of you ever owned, operated, or otherwise had any experience with a machine designed and manufactured by a Terex company?

4.   As you know, this case involves an accident in which Mr. Gaddy sustained very serious injuries.  If you are chosen to serve on this jury, you may be asked to consider testimony or other evidence, including photographs, of those injuries.  Would your sympathy for Mr. Gaddy make it difficult for you to judge this case fairly on the evidence?  In other words, do any of you have concerns about your ability to decide this case without sympathy?

   **Plaintiff's Objection:   Improper and argumentative: The jury will be instructed on the question of sympathy for any party.**

5.   Is there anyone who finds themselves worrying about having to hear a case like this because it might be too emotional in view of Mr. Gaddy's injury?

   **Plaintiff's Objection:  Improper and argumentative:  Proposed question improperly asks about facts in the case before hearing any evidence.**

6.   Have any of you formed any strong opinions at this point about this case?

7.   Is there anyone here who feels they cannot treat each of the Terex Defendants the same as they would treat Mr. Gaddy?   In other words, because Mr. Gaddy is a human being, would any of you tend to favor him as opposed to a corporation?

8.      Are there any of you, who either through media coverage or any other source, have heard about this incident which took place on April 9, 2014?

9.      Has anyone on the panel ever been a party to a lawsuit?  In other words, has anyone here ever sued another person or entity or been sued by another person or entity?

10.     Do any of you otherwise have any experience with personal injury claims or lawsuits?

11.     Do you or any member of your family or close friend have any experience with product liability lawsuits?

12.     Have any of you, or has any close friend or relative of yours, ever filed or pursued a claim for damages, including personal injury or worker's compensation?

13.     Are there any of you who feel that someone who brings a lawsuit who has been injured automatically deserves to be compensated?

**Plaintiff's Objection:    Improper and argumentative:  The jury will be instructed on the question of damages.**

14.     Does anyone feel like it may be unfair that Mr. Gaddy as the Plaintiff has the burden to prove his case at trial, and cannot recover damages in any sum unless and until he does so?

**Plaintiff's Objection:    Improper and argumentative:  Asks the venire to consider legal issues before being instructed on the law.**

15.     Do any of you believe that at least one of the Terex Defendants must have done something wrong, or is probably at fault, because Mr. Gaddy's lawsuit against them has made it all the way to trial today?

**Plaintiff's Objection:    Improper and argumentative:  Asks the venire to consider legal issues before being instructed on the law.**

16.     Is there anyone here who feels they would be unable to withhold judgment in this case until all of the evidence is presented by both sides?

17.   Are there any of you who believe that when someone is using a product and is injured, that the manufacturer of that product should always be held responsible for that person's injury, regardless of whether that person may have misused the product?

   **Plaintiff's Objection:  Improper and argumentative: Asks the venire to consider legal issues before being instructed on the law.**

18.   Are there any of you who believe that companies, including those who manufacture products, always put profits over the safety of their customers?

19.   Are there any of you who believe that money damages awarded in lawsuits are too low?

20.   Are there any of you who believe that there are not enough lawsuits in our society?

21.   Have you or any close member of your family had education, training, or experience in the fields of law, engineering, manufacturing, pharmacy, or medicine?  If so, please describe the background that you or your family members have.

22.   Are any of you or close family members or close friends members of a union?  If so, please describe which union and locale.

23.   Are any of you or close family members or close friends members of common cause, consumers union, or any other similar consumer advocacy group?  If so, please describe the nature of the group to which you or they belong and the purpose or main activity of that group.

24.   Does anyone here have a really close family member or friend who has worked as a social worker or for any sort of social services organization?

25.   Have any of you experienced any sort of tragedy which you believe may affect your ability to be a fair and impartial juror in this case?

26.   Is there anyone here who is currently on any form of prescription medication or under the care of a physician for any sort of physical or mental condition which you think would affect your ability to hear this case?

27.     Do any of you have any circumstance that would make juror service in this case an extraordinary hardship for you?

28.     Have you or any of your close friends or relatives ever suffered a spinal cord injury, or some other injury or condition which caused temporary or permanent paralysis?

29.     Has anyone here ever cared for a person with paraplegia, or impaired motor or sensory function in the lower half of the body?

30.     Have you or any of your close friends or relatives ever suffered from phantom pain or chronic pain attributed to an injury?

        **Plaintiff's Objection:   Improper and argumentative:   There is no evidence of "phantom pain" in this case.**

31.     Have you or a loved one ever experienced a life altering disability?

32.     Has anyone here ever cared for a person with phantom pain or chronic pain?

33.     Have you or a close family member or close friend ever sought treatment from a pain management doctor?

34.     Have you, a family member, or close friend ever owned, operated, or otherwise had experience with an aerial lift or bucket truck?

35.     Have you, any member of your family, or close friend had any experience with working at heights such as someone who works for the power company, cable company, or telephone company?

36.     Have you, any member of your family, or close friend had any experience with the steel business, such as designing, manufacturing, or using steel to make other products?

37.     Do any of you, a family, or close friend have any experience in inspecting or repairing aerial lifts or bucket trucks?

38.     Do you, any member of your family, or close personal friend have any special training or experience in heavy equipment or machinery design, manufacturing, sales, repair, or service?

39.    Do you, any member of your family, or close personal friend have any experience with working as an inspector of products such as houses, aerial devices, bridges, airplanes, or any types of heavy equipment or machinery?

40.    Do you, any member of your family, or close personal friend have any specialized training, knowledge, or education to serve as an inspector with knowledge of products such as houses, bridges, airplanes, aerial devices, or any type of equipment or machinery?

41.    Are there any of you who are familiar with ANSI, also known as the American National Standards Institute, which promulgates mandatory standards for manufacturers, owners, and operators of aerial lifts, as well as for arborists and others involved in the tree-trimming business?

42.    Have any of you had tree-trimmers work on trees located on any property where you have lived?

43.    Have you, a close friend, or relative ever worked for a company or business which performs tree-trimming?

44.    Have any of you ever worked for or known someone who has worked for Ace Tree Surgery or used their services as a tree-trimming company?

45.    Do any of you have any negative feelings about companies that make bucket trucks or aerial devices which lift workers into the air?

46.    Do any of you have an opinion you hold regarding companies that manufacture heavy machinery that would affect your ability to be a fair and impartial juror in this case?

47.    Have you or any immediate family member or close personal friend ever had a bad experience with any sort of heavy equipment or machinery?

48.    Have you or any immediate family member or close personal friend ever sustained an injury while working on or around some sort of heavy machinery or equipment?

49.    Have any of you been injured by a product or machine you thought was defective?

50.   Do any of you have a close friend or relative who has been injured by a product or machine they thought was defective?

51.   Has anyone here ever owned or used a piece of heavy machinery or equipment that required routine inspection and maintenance?

52.   Does anyone here believe when it comes to heavy machinery or equipment that requires routine inspection and maintenance, that it is safe or acceptable for the purchaser to disregard those requirements?

   **Plaintiff's Objection: Improper and argumentative: Proposed question improperly asks about facts in the case before hearing any evidence**

53.   Does anyone here believe that heavy machinery should be designed and manufactured so that, even if the user disregards the inspection and maintenance requirements, no danger will result?

   **Plaintiff's Objection: Improper and argumentative: Proposed question improperly asks about facts in the case before hearing any evidence**

54.   Has anyone here ever owned or operated a piece of heavy machinery with a specific load limit or capacity?

55.   Does anyone here believe, when it comes to heavy machinery with specific load limits or capacities, that it is safe to regularly exceed the designated limit or capacity?

   **Plaintiff's Objection: Improper and argumentative: Proposed question improperly asks about facts in the case before hearing any evidence.**

56.   Does anyone here believe that heavy machinery should be designed and manufactured so that, even if the user regularly exceeds the designated load limit or capacity, no danger will result?

   **Plaintiff's Objection: Improper and argumentative: Proposed question improperly asks about facts in the case before hearing any evidence**

57.   Does anyone here believe that designers and manufacturers of products or machines have an obligation to design and manufacture so that all possibility of injury is completely eliminated when the product or machine is being used?

**Plaintiff's Objection:   Improper and argumentative:  Asks the venire to consider legal issues before being instructed on the law.**

58.   Do any of you believe that designers or manufacturers are not sufficiently concerned with preventing injuries resulting from the use of products or machines they make or sell?

59.   Does anyone here believe that it is unreasonable for manufacturers of heavy machinery to expect that the users and operators will read and follow the Operators' Manual that comes with the machine?

**Plaintiff's Objection:   Improper   and   argumentative:   Proposed question improperly asks about facts in the case before hearing any evidence.**

60.   Does anyone here believe that it is unreasonable for manufacturers of heavy machinery to expect that the users and operators will read and follow the warning decals that are placed on the machine?

**Plaintiff's Objection:   Improper   and   argumentative:   Proposed question improperly asks about facts in the case before hearing any evidence.**

61.   Does anyone here believe that it is unreasonable for manufacturers of heavy machinery to expect that the users and operators will follow instructions and warnings related to inspecting machines for cracks?

**Plaintiff's Objection:   Improper   and   argumentative:   Proposed question improperly asks about facts in the case before hearing any evidence.**

62.     Does anyone here disagree with the premise that if heavy machinery is misused and abused, and is not properly inspected or maintained, eventually it is going to fail?

        **Plaintiff's Objection:   Improper   and   argumentative:   Proposed question improperly asks about facts in the case before hearing any evidence**

63.     Are there any of you, for whatever reason, believe that you can't be fair and impartial to Mr. Gaddy and the Terex Defendants in this case?

64.     Have any of you heard or responded to a question today that you'd like to answer differently, now that you've had some time to reflect?

65.     Do any of you feel like there is something I, as counsel for the Terex Defendants, would want to know or should know about you before we ask you to serve on this jury and fairly weigh the evidence?

## EXHIBIT C
### Factual Summary of Plaintiffs' Cause of Action

### The Plaintiff and the Incident

Jeff Gaddy was a tree trimmer for most of his working life. During that time he worked for Ace Tree Surgery, a small family-run company that is owned by his father. Ace Tree Surgery was his first and only employer as a tree trimmer. He was trained there and worked his way up to a crew leader over the years. Ace Tree Surgery uses bucket trucks to assist with tree trimming and removal, and has owned several different bucket trucks over the years.

In 2003, Ace Tree Surgery bought two new bucket trucks that had bucket truck booms manufactured by Terex South Dakota. One went to Jeff Gaddy's uncle, who operates a tree trimming and removal company in North Carolina. Ace Tree Surgery kept the other bucket truck. That truck was assigned to Jeff Gaddy as his personal work truck, and he used it from that point forward (the "Subject Boom").

On April 9, 2014, Jeff was about 30-40 feet up in the bucket truck. He was trimming the tops of a series of Bradford pear trees. Suddenly and without warning, the Terex boom snapped and sent Jeff in freefall towards the ground. Jeff was attached to the bucket by his safety harness.

### Gaddy's Injuries

Mr. Gaddy was transported by ambulance to Wellstar Kennestone Hospital. He presented with decreased sensation below T12, no lower extremity active range of motion, and no rectal tone or sensation. Dr. Avi Bhavaraju was the attending physician when Mr. Gaddy arrived. Further investigation of Mr. Gaddy's injuries showed a fracture of T12-L1 with spinal cord injury, bilateral acetabular fractures, laceration of the spleen, fracture of the right sacral ala, and dislocation of the right sacroiliac joint, fractures of left ribs 10-11 and possibly right rib 11, fracture of the sternum, right hemothorax, right renal contusion grade 1, paravertebral hematoma, and a concussion.

Dr. William Benedict of Neurosurgery Service attempted an immediate spinal fusion but the surgery was aborted because Mr. Gaddy became hypotensive. Mr. Gaddy returned to the operating room on April 11, 2014 for laminectomies of T12-L1 and posterior spinal fusion T9-L4, which were performed by Dr. Benedict.

Mr. Gaddy experienced respiratory failure, requiring intubation and ventilation from April 4-17, 2014. He required cardiopulmonary resuscitation on April 20, 2014 and was re-intubated at that time. He developed ARDS, acidosis, shock liver, and thrombocytopenia.

Jeff Gaddy was transferred to Shepherd's Center on April 24, 2014 for continued medical management and comprehensive rehabilitation for his spinal cord injury. On August 12, 2014, Mr. Gaddy was transferred to the Shepherd Center Day Program for continued rehabilitation. Mr. Gaddy was discharged from the Shepherd Center Day Program on December 5, 2014.

Since the incident, Mr. Gaddy has suffered from near constant pain spasms that vacillate between uncomfortable and completely unbearable.

Mr. Gaddy requires assistance with all activities of daily living.

### Summary of Gaddy's Claims Against Terex

Mr. Gaddy's claims against Terex center around two main issues with the Original Design of its XT booms: a design issue (vis-à-vis his claims of negligent design and negligent failure to warn), and a manufacturing issue (vis-à-vis his claim of negligent failure to warn). From a larger perspective, Mr. Gaddy also claims that Terex failed to warn its customers and users of known issues of cracking in its design; a safety hazard that could result in the catastrophic failure of its boom.

In addition, Mr. Gaddy claims that Terex negligently performed a duty that it voluntarily undertook when it recalled the Original Design of its XT booms for cracking in the pedestal area of those booms while failing to notify its customers

about cracking in the area that failed in this case and another similarly designed area of the boom. Terex failed to notify its customers and users of this cracking even though it had known about it for over a decade at the time of its recall.

Design Issues

From 1996 to the Spring of 2004, Terex designed and manufactured the Original Design of its XT series of bucket truck booms that. Terex first designed and sold the XT52 boom. From there, Terex utilized the XT52 design to create the XT55, XT58, and XT60. The part that cracked and catastrophically failed in this case is identical in every one of those models, regardless of their size.

Terex under-designed the Original Design of its XT Booms, it inadequately tested them, and it manipulated the safety data so it could claim its booms "met" the federally-required safety standard: section 4.2 of ANSI A92.2. It did so with the knowledge that its booms failed to meet the safety requirements of ANSI A92.2, and they failed by a wide margin.

Moreover, these booms objectively failed to meet Terex's documented internal design standard. Terex's internal design standard prohibited its booms from having any stress levels that exceeded 50% of the yield strength of the steel that Terex manufactured them from. Terex measured the stress levels in its XT52 and XT60 booms pre-production, but it failed to test its XT55 or XT58. Both tested

booms failed to meet Terex's internal design standard. Terex knew it failed to meet its internal design standard before it ever sold the first boom. Terex failed to rectify its design and sold them anyway.

Unsurprisingly, Terex began seeing reports of cracking in the Original Design of its XT booms early on. By January 2004, Terex had received reports of XT booms cracking after only 4-5 years of use: something that should never happen. The reported cracking was occurring in the area that failed in this case, and a similarly designed area further up the boom. In response, Terex measured the stress levels in its XT55 boom for the first time and discovered dangerously high levels of stress.

Several weeks after that testing, Terex conducted another round of testing with its XT55 design. This time, it tested a "field fix" for the cracking issues, and a "production fix," which was a redesign of the two areas that were cracking. That test showed that a field fix made the stress much worse, and that a redesign was a better alternative. Although Terex's redesign also objectively failed to meet its internal design standard, Terex implemented that redesign on all XT booms from May 2004 forward. Terex redesigned its XT to reduce the likelihood of cracking in the two problem areas. Terex never warned its customers or users about the need

for the redesign or the propensity of its Original Design to crack in two specific similarly designed areas.

Over the years, Terex saw so many instances of cracking in these two similarly designed areas of its Original Design that it developed two separate fix kits to address the issue. Terex did not tell its customers about the fix kit or their potential need for it. Instead, Terex only told customers about the fix kit when those customers self-reported cracks to Terex. And even then, Terex forced its customers to buy the kits; it refused to cover them under warranty. To date, Terex has sold approximately 400 fix kits for these two similarly design areas. Terex has produced only 4,425 Original Design XT booms.

It is undisputed that a boom that met Terex's internal design standard would not have cracked and failed in this manner. Similarly, a boom that met ANSI A92.2, that contained Terex's 2004 redesign of the cracking areas, or that contained any of Plaintiff's alternative feasible designs would not have cracked and failed in this manner.

### Manufacturing Issue

Terex's design required it to manufacture the relevant part of the boom using a high quality "High Strength Low Alloy" steel that had a yield strength of 70,000 psi. Instead, Terex used a low-quality carbon steel with a yield strength of 46,000

psi. This cheaper, weaker, and lower quality steel was only 65% as strong as it should have been. Terex admits that admits that its use of this defective steel means that its quality control process failed.

Importantly, it is undisputed that Terex's use of the wrong steel means that any XT boom containing that steel, including the Subject Boom, fails to comply with ANSI A92.2.

Mr. Gaddy claims that Terex failed to warn about its use of the defective steel, and that it either knew or should have known that it was using it. With regard to the defective steel that Terex used, every piece of that steel contained stenciled letters and numbers (called "stenciling") down the entire length of one side of the steel. Among other things, that stenciling communicated both the quality and the strength of the steel. It is undisputed that anyone who read the stenciling could know what quality the steel was, and what its yield strength was. Despite this, Terex employees admittedly failed to look at this stenciling for the steel that it used.

## <u>Plaintiff's Statement of Relevant Rules, Regulations, Statutes, Ordinances and Illustrative Case Law</u>

The Court has considered and ruled upon the Defendants' various motion for summary judgment and is thus familiar with most of the legal issues likely to arise in this case. Relevant authorities include the following:

### Gaddy's Design and Warning Claims

Georgia tort law and common law negligence principles, including those codified in O.C.G.A. § 51-1-11 et. seq. and discussed in case law, apply to this action.

In order to state a cause of action for negligence under Georgia law, a Plaintiff must establish that there is: (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty. <u>Galanti v. United States of America</u>, 709 F.2d 706 (11th Cir. 1983) (citing <u>Bradley Center v. Wessner</u>, 250 Ga. 199, 200 (1982)).

The following cases also provide general principles that apply to this action: <u>Banks v. ICI Americas, Inc.</u>, 264 Ga. 732 (1994); <u>Doyle v. Volkswagenwerk</u>

Aktiengelellschaft, 114 F.3d 1134 (11th Cir. 1997); Chrysler Corp. v. Batten, 264 Ga. 723 (1994); Deshazier v. State, 155 Ga.App. 526 (1980); Duncan v. State, 202 Ga.App. 456 (1992); Louisville & Nashville R.R. Co. v. Young, 112 Ga.App. 608 (1965); Batten v. Chrysler Corp., 264 Ga. 723 (1994); Watkins v. Ford Motor Co., 190 F.3d 1213 (1999); Mack Trucks, Inc. v. Conkle, 263 Ga. 539 (1993); General Motors Corp. v. Moseley, 213 Ga.App. 875 (1994); Wilson Foods Corp. v. Turner, 218 Ga.App. 74 (1995); Thornton v. E.I. Du Pont De Nemours & Co., 22 F.3d 284 (11th Cir. 1994); Couch v. Red Roof Inns, 291 Ga. 359 (2012); Double View Ventures, LLC v. Polite, 326 Ga. App. 555 (2014); Zaldivar v. Prickett, 297 Ga. 589 (2015).

## **PLAINTIFFS' SUMMARY OF DAMAGES CLAIMED**

Plaintiffs' Special Damages (Past and Future)

| | |
|---|---|
| **Past Medical Expenses** | $1,854,270.86 |
| **Future Medical Expenses** | $6,511,182 |
| **Spinal Cord Stimulator Surgery/Replacement** | $260,000 |
| **Lost Wages** | $435,293 |
| **TOTAL** | **$9,060,745.86** |

Special damages are those which actually flow from a tortious act; they must be proved in order to be recovered. See O.C.G.A. § 51-12-2(b). In all cases, necessary expenses consequent upon an injury are a legitimate item in the estimate of damages. See O.C.G.A. § 51-12-7.

Plaintiffs' General Damages (Past and Future)

Plaintiff is also entitled to recover general damages, which includes past and future pain and suffering. See O.C.G.A. § 51-12-2(a). Recovery for pain and suffering includes compensation for (1) interference with normal living; (2) interference with enjoyment of life; (3) loss of capacity to labor and earn money; (4) impairment of bodily health and vigor; (5) fear of extent of injury; (6) shock of impact; (7) actual pain and suffering; (8) mental anguish; and the (9) the extent to which Plaintiff must limit his activities. See Food Lion v. Williams, 219 Ga.App.352 (1995). "Pain and suffering is a legal item of damages. The measure is

the enlightened conscience of fair and impartial jurors." <u>See</u> <u>Georgia Suggested</u> <u>Pattern Jury Instructions, Volume 1:  Civil Cases, Fifth Edition, July 2014</u> at Section 66.501 *citing* <u>Redd v Peters</u>, 100 Ga.App. 316 (1959); <u>Western, etc.</u> <u>Railroad Co. v. Young</u>, 83 Ga. 512, 515 (1889).

Plaintiff's counsel is aware of the Court's requirement for Plaintiff to list in this Pretrial Order the amount of each type of damage they are seeking. General damages by their nature do not lend themselves to a specific valuation especially without having the benefit of seeing how the evidence will be presented at trial. The value of general damages is determined by the enlightened conscience of a jury. Therefore, general damages are unlike special damages, which are more certain and defined. Plaintiff's counsel will not decide what specific amount of general damages they will ask for until the case is fully presented to the jury. Plaintiff's counsel will decide a specific amount to request based on how the evidence is presented and received at trial. In order to comply with the Court's requirement about listing an amount for each type of damage sought, Plaintiff anticipates requesting general damages in the range of $15,000,000 to $50,000,000 for Jeffrey Gaddy. Plaintiff objects to any disclosure to the jury of this portion of the Pretrial Order and what ranges Plaintiff anticipate requesting for general damages.

<u>Plaintiff's Attorneys' Fees and Expenses of Litigation</u>

A jury may award expenses of litigation and attorney fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." <u>See</u> O.C.G.A. § 13-6-11. A plaintiff may recover litigation expenses and attorneys' fees "if there is no bona fide controversy as to liability, even if there is a bona fide controversy as to damages." <u>See</u> <u>Eastep v. Newman</u>, No. 1:12-CV-102 WLS, 2013 WL 6498500, at *1 (M.D. Ga. Dec. 11, 2013)(rejecting defendant's motion for summary judgment on the issue of attorney fees) *quoting* <u>Daniel v. Smith</u>, 266 Ga. App. 637, 641 597 S.E.2d 432 (2004). <u>See</u> <u>also</u> <u>Kroger Co. v. Walters</u>, 319 Ga. App. 52, 735 S.E.2d 99 (2012); <u>Tura v. The White Oak Grp., Inc.</u>, 2008 WL 4280363(N.D. Ga. Sept. 15, 2008)(unpublished opinion); and <u>Delta Air Lines, Inc. v. Isaacs</u>, 141 Ga. App. 209, 233 S.E.2d 212 (1977). "A defendant without a defense may still gamble on a person's unwillingness to go to the trouble and expense of a lawsuit; but there will be, as in any true gamble, a price to pay for losing." <u>Buffalo Cab Co. v. Williams</u>, 126 Ga. App. 522, 525, 191 S.E.2d 317, 319 (1972).

Plaintiff will also seek to recover his attorneys' fees and expenses based on Defendants' stubborn litigiousness for failing to admit in this litigation that its product contains a safety related defect when it has admitted to both its customers

and the National Highway Safety Administration that its product contained a safety

related defect.

## **EXHIBIT C(1)**

Intervenor Plaintiff believes the following principles of law apply to its claims in this matter: O.C.G.A 34-9-11.1; Hammond vs. Lee, 244, Ga. App. 865, 868 (2000); and Paschall Truck Lines vs. Kirkland, 287 Ga. App. 497 (2007).

## EXHIBIT D

## Terex Defendant's Outline of the Case

**A.     Succinct Factual Summary Of Terex Defendants' Outline Of The Case:**

This is a products liability lawsuit relating to a 2002 Terex Hi-Ranger XT 60/70 (the "Subject Aerial Device"), an aerial lift device that was designed and manufactured by Terex South Dakota, Inc. ("Terex SD").   The Subject Aerial Device was part of Terex SD's XT aerial device line, which consists of XT52, XT55, XT58, and XT60 aerial lifts.   The line, beginning with the XT52, was first designed by Terex SD in 1996.   The Subject Aerial Device was an XT60/70,3 which was originally designed in 1999.   It was manufactured by Terex SD in 2002 and purchased by Plaintiff's employer, Ace Tree Surgery, Inc. ("Ace"), on or about April 30, 2003.   On or about April 9, 2014, the lower boom of the Subject Aerial Device fractured, causing the bucket, with Plaintiff inside, to fall approximately 25 to 30 feet to the ground.   Plaintiff is paralyzed from the waist down.

Following motions for summary judgment, the following claims remain pending for trial:

(1) negligent design claim against Terex SD;

─────────────

3 The Subject Aerial Device had a 10 ft. elevator at the pedestal, which permitted the 60 ft. boom to actually be raised to a height of 70 ft., thus the XT "60/70" designation.

(2) failure to warn claims against Terex SD, Terex Utilities, Inc., and Terex Corporation (collectively, "Terex Defendants") regarding the: (i) nonconforming steel; (ii) alleged cracking; (iii) high stress areas; (iv) full extent of alleged defects; (v) availability of fix kits; and (vi) adequacy of communicating the Subject Aerial Device's load capacity to Plaintiff; and

(3) punitive damage claim against Terex Defendants.

## Negligent Design

Terex SD did not negligently design the Subject Aerial Device. Terex SD's design of the Subject Aerial Device met and exceeded the applicable design standard and was reasonably safe for its intended usage. The calculated design stress of the Subject Aerial Device met and exceeded ANSI A92.2 §4, which governs the design requirements for aerial devices. Manufacturers are not required to consider measured stress to comply with ANSI A92.2 § 4. Even if Terex SD was negligent in designing the Subject Boom (it was not), Georgia's statute of repose, O.C.G.A. § 51-1-11(c), bars Plaintiff's claim. Plaintiff cannot demonstrate, and the evidence does not support, that Terex SD acted with "actual intent to harm" or "recklessness so charged with indifference as to be the equivalent in spirit of actual intent" at the time it designed the Subject Boom in

1999, as is required for Plaintiff to meet the exception to Georgia's statute of repose bar.  In the event the statute of repose does not bar Plaintiff's negligent design claim, Plaintiff's and Ace's negligence, and not Terex SD's alleged negligence, caused the accident.

## **Failure to Warn**

Terex Corporation and Terex Utilities, Inc. did not design or manufacture the Subject Aerial Device such that they had no duty to warn Plaintiff of any of its alleged dangers.

Regarding Terex Defendants' alleged failure to warn about the presence of nonconforming steel, Terex SD had no actual or constructive knowledge about the nonconforming steel such that no duty to warn arose.  Plaintiff cannot demonstrate, and the evidence does not support, that Terex SD knew or reasonably should have known about the presence of nonconforming steel in the Subject Aerial Device until after the accident occurred.  Therefore, Terex SD had no duty to warn about the nonconforming steel at the time of the subject accident.

Regarding Plaintiff's remaining failure to warn claims, Terex SD's instructions and warnings were appropriate, clear, and adequately communicated to Plaintiff such that Terex SD was not negligent.  Had Plaintiff and Ace read and followed the instructions and warnings that accompanied the Subject Aerial

Device, the accident would not have occurred.  Plaintiff's and Ace's negligence, and not Terex SD's alleged negligence, caused the accident.

## Punitive Damages

Terex Corporation and Terex Utilities, Inc. did not design or manufacture the Subject Aerial Device such that punitive damages should not be rewarded against them.  Further, Terex Defendants maintain that punitive damages are not warranted in this case.   Terex SD's actions or alleged actions in no way demonstrate willful misconduct, malice, fraud, wantonness, oppression, or entire want of care by clear and convincing evidence as to entitle Plaintiff to punitive damages.

In the event that punitive damages are awarded against any or all of Terex Defendants, the award shall not be excessive in violation of the United States Constitution and Constitution of the State of Georgia.

## Non-Party Fault of Ace Tree Surgery, Inc.

The Court has held as a matter of law that Ace's conduct in continuously overloading the Subject Aerial Device was an actual and proximate cause of Plaintiff's injuries.  In addition to this negligence, the Terex Defendants submit that the evidence will establish Ace was negligent in numerous other respects, including failing to follow applicable standards, warnings, and instructions, in

failing to adequately inspect and maintain the Subject Aerial Device, and in generally neglecting and abusing the Subject Aerial Device. These additional acts of negligence likewise were actual and proximate causes of Plaintiff's injuries. In the event that any or all of Terex Defendants are adjudged liable for Plaintiff's injuries, the vast majority of fault should be apportioned to Ace in addition to Plaintiff, and not Terex Defendants, pursuant to O.C.G.A. § 51-12-33(d).

**B.      Relevant Rules, Regulations, Statutes, Ordinances, And Illustrative Case Law:**

<u>**Negligent Design**</u>

- ANSI A92.2
- ANSI A92.5
- O.C.G.A. § 51-1-11
- *Banks v. ICI Americas, Inc.*, 264 Ga. 732 (1994)
- *Chrysler Corp. v. Batten*, 264 Ga. 723 (1994)
- *Ivy v. Ford Motor Co.,* 2010 WL 9115838 (N.D. Ga. Jan. 22, 2010), *aff'd* 646 F.3d 769 (11th Cir. 2011)
- *Ivy v. Ford Motor Co.*, 646 F.3d 769 (2011)
- *Watkins v. Ford Motor Co.,* 190 F.3d 1213 (11th Cir. 1999)
- *Woodward v. Ford Motor Co.*, 2007 WL 1858542 (N.D. Ga. June 25, 2007)

<u>**Failure To Warn**</u>

- ANSI A92.2
- ANSI Z133
- *Camden Oil Co., LLC v. Jackson*, 270 Ga. App. 837 (2004)
- *Chrysler Corp. v. Batten*, 264 Ga. 723 (1994)
- *Dozier Crane & Machinery, Inc. v. Gibson*, 284 Ga. App. 496 (2007)

- *Fletcher v. Water Applications Distribution Group, Inc.*, 333 Ga. App. 693 (2015)
- *Hunter v. Werner Co.*, 258 Ga. App. 379 (2002)
- *Swicegood v. Pliva*, *Inc.*, 543 F.Supp.2d 1351(N.D. Ga. 2008)
- *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74 (1995)

## **Punitive Damages**

- O.C.G.A. § 51-12-5.1
- *Banks v. ICI Americas, Inc.*, 264 Ga. 732 (1994)
- *BMW Of North America, Inc. v. Gore*, 517 U.S. 559 (1996)
- *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)
- *Time Warner Entertainment Co. v. Six Flags Over Georgia, LLC*, 254 Ga. App. 598 (2002)

## **Non-Party Fault**

- ANSI A92.2
- ANSI Z133
- O.C.G.A. § 51-12-33
- *Union Carbide Corp. v. Fields*, 315 Ga. App. 554 (2012), *rev'd on other grounds by Georgia-Pacific, LLC v. Fields*, 293 Ga. 499 (2013)
- *Walker v. Tensor Machinery Ltd.*, 298 Ga. 297 (2015)

## **EXHIBIT E**

**Plaintiff:** Mr. Gaddy believes that stipulating to facts should occur only after the Court has determined what will come into evidence at trial and has agreed to coordinate with Terex about this issue in the weeks before trial.

**Terex Defendants:**   Terex Defendants propose that the parties agree to stipulate to the following facts.    Terex Defendants object to Plaintiff's use of the term "agreed" as Terex Defendants requested that Plaintiff stipulate to the facts below by the time of submission of the Proposed Consolidated Pretrial Order, but Plaintiff has refused to do so.

## **Proposed Stipulated Facts By Terex Defendants**

1.        Terex South Dakota, Inc. ("Terex SD") designed the Subject Aerial Device, an XT60, in 1999.

2.        The Subject Aerial Device was part of Terex SD's XT aerial device line.

3.        The aerial device line, beginning with the XT52, was first designed by Terex SD in 1996.

4.        The American National Standards Institute ("ANSI") directs the design of the Subject Aerial Device and XT aerial device line.

5.      ANSI A92.2 § 4 (2001) provides that "[t]he calculated design stress shall be based on the combined rated load capacity and weight of the support structure.  For ductile materials, the design stress shall not be more than 50% of the minimum yield strength of the material."

6.      ANSI A92.2 § 4 requires that the steel components of aerial devices like the Subject Aerial Device have a safety factor of 2.0 on yield strength.

7.      ANSI A92.2 requires the design of aerial devices consider stress concentrations, dynamic loadings, and operation of the device on a 5 degree slope.

8.      ANSI A92.2 § 4 does not direct designers how to consider stress concentrations, dynamic loadings, or operation of the device on a 5 degree slope.

9.      For the specified minimum yield strength of 70,000 psi (pounds per square inch), the lower boom stub where the Subject Aerial Device failed had a calculated design safety factor of 4.0.

10.     The calculated design of the lower boom stub of the Subject Aerial Device complied with the 2.0 safety factor set forth in ANSI A92.2 § 4.

11.     The calculated design of the lower boom stub of the Subject Aerial Device complied with Terex SD's internal safety factor of 2.75.

12.     Jon Promersberger, the Director of Engineering at Terex SD in 1999, independently verified the calculated design measures for the Subject Aerial Device at the time the Subject Aerial Device was designed.

13.     ANSI A92.2 requires manufacturers to determine a calculated design stress and does not require a determination of measured or actual stress in order to comply with the 2.0 safety factor.

14.     Strain gauge testing is not required for compliance with ANSI A92.2.

15.     Finite element analysis is not required for compliance with ANSI A92.2.

16.     Terex SD manufactured the Subject Aerial Device in September of 2002.

17.     Terex SD's design specifications required the lower boom stub to be comprised of steel with a minimum yield strength of 70,000 psi.

18.     Every purchase order Terex SD placed specified that part number 444195 required 70,000 psi yield strength steel.

19.     Each delivery of steel to Terex SD came with a certification that the delivery conformed to Terex SD's purchase order.

20.     The Subject Aerial Device was assembled and certified compliant on or about October 4, 2002.

21.     Ace Tree Surgery, Inc. ("Ace") purchased the Subject Aerial Device from Forestry Equipment of Virginia, Inc. ("FEVA") on or about April 30, 2003.

22.     The accident occurred on April 9, 2014.

23.     At the time of the accident, Plaintiff was employed by Ace.

24.     At all times relevant to this lawsuit, Plaintiff's father, David Gaddy, Sr., was President of Ace.

25.     At all times relevant to this lawsuit, Plaintiff's brother, David Gaddy, Jr., was Vice President of Ace.

26.     David Gaddy, Jr. is a certified arborist.

27.     At the time of the accident, Plaintiff had been employed with Ace since 1996.

28.     Plaintiff has been working in the tree trimming industry since 1988.

29.     ANSI Z133 sets forth the safety requirements for arboricultural operators.

30.     ANSI Z133 provides that "[c]ombined loads shall not exceed rated lift capacities."

31.     ANSI Z133 provides that "[l]oad ratings shall be permanently posted on aerial devices in accordance with [ANSI] A92.2 … as applicable to the specific aerial device."

32.     ANSI A92.2 § 8 sets forth the responsibilities of owners of aerial devices.

33.     ANSI A92.2 § 9 sets forth the responsibilities of operators of aerial devices.

34.     ANSI A92.2 § 8 requires owners to "check for missing or illegible operational and instructional markings."

35.     ANSI provides that owners have a responsibility to be familiar with the use and operation of the aerial device, including its Operator's Manual.

36.     ANSI provides that owners have a responsibility to be familiar with the decals located on the aerial device.

37.     ANSI provides that operators have a responsibility to be familiar with the use and operation of the aerial device, including its Operator's Manual.

38.     ANSI provides that operators have a responsibility to be familiar with the decals located on the aerial device.

39.     A Certificate of Conformity was provided to Ace at the time it purchased the Subject Aerial Device.

40.     The Certificate of Conformity identifies the "Combined Platform Capacity" of the Subject Aerial Device as 350 pounds.

41.     An Operator's Manual was provided to Ace at the time it purchased the Subject Aerial Device.

42.     Regarding load capacity, the Operator's Manual provides that all weight placed in the bucket should be considered, including: (1) the weight of the operator; (2) the weight of the liner; (3) the weight of any tools; and (4) the weight of any debris that may have gathered in the bucket.

43.     The Operator's Manual contained the following warning:

 **Never exceed the rated load capacity of the Aerial Device. Structural damage or instability can result causing death or serious injury.**

44.     The Operator's Manual provides that the operator should "[n]ever exceed the rated load of the platform.  Know the total weight; including the operator, platform liner, tools, and equipment, and/or other items before entering platform."

45.     The Operator's Manual provides inspection checklists that must be used daily, 90 days, 180 days, and 12 months.

46.     The daily inspection checklist requires operators to visually inspect "all structural members for cracks and permanent deformation."

47.     The Operator's Manual provides that the failure to use the inspection checklists "could endanger the life of the operator."

48.     The Operator's Manual requires the owner of aerial devices to conduct mandatory annual inspections by a certified inspector.

49.     The Operator's Manual and Certificate of Conformity have been in Ace's possession since its purchase of the Subject Aerial Device.

50.     Ace knew the load capacity of the Subject Aerial Device was 350 pounds since its purchase of the Subject Aerial Device in 2003.

51.     Prior to the accident, Ace knew that ANSI required it not exceed the rated load capacities of its aerial devices.

52.     Prior to the accident, Ace knew that loading the bucket of an aerial device over its rated load capacity could result in failure.

53.     Ace never instructed its aerial device operators, including Plaintiff, to read the Operator's Manual.

54.     Ace never instructed its aerial device operators, including Plaintiff, to learn the rated load capacities for its aerial devices.

55.     Ace never instructed its aerial device operators, including Plaintiff, to never exceed the rated load capacities for its aerial devices.

56.     Plaintiff never read the Operator's Manual.

57.     Plaintiff never read the Certificate of Conformity.

58.     The Subject Aerial Device contained the following decals:



59.     Ace never instructed its aerial device operators, including Plaintiff, to read the decals on its aerial devices.

60.     At the time Ace purchased the Subject Aerial Device, an identification plate, containing the serial number, the model number, and the load capacity of the bucket was affixed to the Subject Aerial Device.

61.     The identification plate indicated that the maximum load capacity for the bucket of the Subject Aerial Device was 350 pounds.

62.     The identification plate was either removed or had fallen off the Subject Aerial Device prior to the accident.

63.     From the day the Subject Aerial Device was purchased in 2002 until the date of the accident, the Subject Aerial Device was operated almost exclusively by Plaintiff.

64.     Plaintiff operated the Subject Aerial Device approximately five to six days a week during its 11 years of continuous use.

65.     Plaintiff weighed approximately 330 pounds during the Subject Aerial Device's 11 years of use.

66.     During its 11 years of use, the load in the bucket of the Subject Aerial Device consistently and routinely exceeded its rated load capacity on a daily basis.

67.     Had Ace not overloaded the bucket of the Subject Aerial Device for 11 years, the accident would not have occurred on April 9, 2014.

68.      Ace's conduct in overloading the bucket of the Subject Aerial Device was an actual and proximate cause of Plaintiff's injuries.

69.      The length of the crack that caused the accident grew to a length of 18 inches at the time of failure.

70.      Ace never detected the 18 inch crack.

71.      Ace owned another XT60/70 prior to the accident, which it purchased in 2004.

72.      Ace never detected any cracks on any Aerial Device that it owned prior to the accident.

The parties will jointly amend this Order to account for any additional stipulations reached by the parties in the course of trial preparation.

## EXHIBIT F-1

## Plaintiff's Witness List

Plaintiff <u>will</u> have the following witnesses present at trial:

Jeffrey Gaddy
Burak Akyuz
Cathy Gragg-Smith
David Pope
Francis Rushing
Nathan Morrill

Plaintiff <u>may</u> have the following witnesses present at trial:

Dr. Ruston Hunt
Elaine Garner
Rhonda Gaddy
Wendy Jennings
Tyra Wingo
Jordon Gaddy
Jeffrey Michael Gaddy
Jacob Gaddy
David Gaddy, Jr.
David Gaddy, Sr.
Donald Morgan
Jack Gaddy
Joseph Sailors
Kenneth Morgan
Avi Bhavaraju, MD
Douglas Lundy, MD
Nicholas Boulis, MD
Erik Shaw, MD
William Benedict, MD
Bertrude Pierre, RN
Debbie Archer, RN
Juakina Cole
Marie Louis Jacques

Mary Frances Coussillant
Mike Bailey
Suzan Thrasher
Shartey Neal
Sherry Ndoye
Greg Homiller
Elroy Severson
Francis Strohfus
James Celentano
Jim Olson
Jon Promersberger
Luke Webber
Mike Wise
Rob Roche
Brad Orterstrom
Dr. Anthony DeArdo
Dr. Marc Zupan

Any of the providers and other expert witnesses listed below may be called in their capacity as factual witnesses as well.

Expert Witnesses

Plaintiff anticipates that the following expert, impeachment and rebuttal witnesses may be present at trial:

**Burak Akyuz** is an expert witness who is expected to testify about metallurgical testing conducted on steel from the Subject Boom and the Exemplar Boom. Mr. Akyuz's opinions and observations are articulated in his August 30, 2016 Report.

**Cathy Gragg-Smith, RN, CRRN, CCM, CLCP** is an expert witness who is expected to testify regarding Plaintiff's Rehabilitation and Life Care Plan. Ms. Smith's opinions and observations are articulated in her February 11, 2015 Report and subsequent supplement.

**David P. Pope, Ph.D** is an expert witness who is expected to testify regarding his metallurgical evaluation of the failure of the Subject Boom. Dr. Pope's opinions and observations are articulated in his August 23, 2016 report.

**Francis W. Rushing, Ph.D** is an expert witness who is expected to testify regarding his economic analysis of Jeff Gaddy's loss of earning capacity and the cost of Mr. Gaddy's Life Care Plan. Dr. Rushing's opinions and observations are articulated in his August 30, 2016 report.

**Nathan Morrill, P.E., C.S.P.** is an expert witness who is expected to testify regarding his engineering analysis of Terex's XT series of bucket truck booms, including its failure to comply with Terex's internal design standard, failure to comply with ANSI A92.2, the practical effect of Mr. Gaddy's alleged overloading of the Subject Boom, the high stress areas in the XT series created by Terex's design, alternative feasible designs that were available to Terex and that it failed to use, and Terex's knowledge of safety defects within its design. Mr. Morrill's opinions and observations are articulated in his September 1, 2016 and November

4, 2016 reports. Below is a summary of the facts and opinions to which Mr. Morrill is expected to testify:

**Ruston M. Hunt, Ph.D.** is an expert witness who may testify regarding the human-machine interface, the role of warnings, the adequacy of warning information and the behavior of the individuals involved with this case. Dr. Hunt will not testify about Terex's negligent failure to warn about the load capacity of Terex's XT booms. With that caveat, Dr. Hunt's opinions and observations are articulated in his August 31, 2016 report.

**Marc Zupan, Ph.D.** is an expert witness who may testify regarding the Original Design of Terex XT booms, their stress concentrations, and the effect of those stresses on the performance of that design. Dr. Zupan's opinions and observations are articulated in his September 30, 2016 report.

**Anthony DeArdo, Ph.D.** is an expert witness who may testify regarding the chemical composition and manufacturing requirements of the steel in the Subject Boom, as well as the effect of stresses on cracking the Original Design of Terex's XT booms. Dr. DeArdo's opinions and observations are articulated in his September 30, 2016 reports.

Plaintiff designated the videotaped deposition testimony they expect to play during trial including the testimony from the following medical providers who

discussed the observations they made and the opinions they formulated during the normal course and scope of their medical treatment of Plaintiff:

1.     Avinash Bhavaraju, MD (Wellstar Medical Group – Trauma Surgery);

2.     William Benedict (Wellstar Medical Group – Neurosurgery);

3.     Erik Shaw, DO (Shepherd Center); and

4.     Gerald Bilsky, MD (Shepherd Center).

The following medical providers may testify at trial as to the observations they made and opinions they formulated during the normal course and scope of their medical treatment of Plaintiff. The observations and opinions of Plaintiff's medical providers are contained in Plaintiff's medical records. Below is a summary of each provider's respective opinions:4

**1.     Erik Shaw, DO (Shepherd Center):**

Dr. Erik Shaw is a physician at the Shepherd Center who treated (and still treats) Jeff Gaddy. He is expected to testify as a Rule 702 witness regarding any opinions he may have formulated during the normal course and scope of his treatment of Mr. Gaddy. He is expected to

---

4  The summaries of Plaintiffs' medical providers' opinions were not prepared by Plaintiffs' medical providers. These summaries are based on Plaintiffs' medical providers anticipated opinions.

provide opinions based upon his education, training, experience and observations. He is expected to testify as to Mr. Gaddy's injuries and the treatments he required. Below is a summary of the facts and opinions to which Dr. Shaw is expected to testify:

a.     Mr. Gaddy will likely have a normal life expectancy.

**2.     Gerald Bilsky, MD (Shepherd Center):**

Dr. Gerald Bilsky is a physician at the Shepherd Center who treated Jeff Gaddy. He is expected to testify as a Rule 702 witness regarding any opinions he may have formulated during the normal course and scope of his treatment of Mr. Gaddy. He is expected to provide opinions based upon his education, training, experience and observations. He is expected to testify as to Mr. Gaddy's injuries and the treatments he required. Below is a summary of the facts and opinions to which Dr. Bilsky is expected to testify:

a.     The future needed medical treatment of Mr. Gaddy, as reflected in the Life Care Plan prepared by Cathy Gragg-Smith, RN and approved by Dr. Gerald Bilsky.

Plaintiff reserves the right to call any impeachment or rebuttal witnesses who could not reasonably have been anticipated.

<u>**EXHIBIT F-2**</u>

<u>**Terex Defendant's Witness List**</u>

**Defendant <u>will</u> have present at trial:**

**Defendant <u>may</u> have present at trial:**

      Jim Olson
      Luke Webber
      Jeffrey Gaddy
      David Gaddy
      David Gaddy, Jr.
      Mike Wise
      Francis Strohfus
      Kelly Amick
      Todd Williams
      Lonnie Kleinsasser
      Elroy Severson
      Rick Curtin
      Dennis Powell
      Jon Promersberger
      Paul Byer
      Rob Roche
      Jim Celentano
      Mark Smith
      Paul Green
      Donald Morgan
      Joseph Sailors
      Elaine Garner
      Jacob Gaddy
      Ricky Culler
      Shane Gaddy
      Kenneth Morgan
      Melvin Talley
      Joseph Webb
      Cindy Webb
      Jack Gaddy

Bernard Rung
Craig Percy
Josh Chard
Billy Driskell
Bob Phillips
Greg Ramseyer
Ricky Williams
Fred Ross
Cameron Smith
Lonnie Fall
Scott Asplundh
Carl Paugh
Carol Asplundh
Chris Rote
Christina DeFulvio
Deborah Wilson
Angela Sessoms
Tyra Wingo
Amy Gaddy n/k/a Amy Rolfe
Carolyn Gaddy
Jeffrey Michael Gaddy
Martha Reece
Michael Reece
Elizabeth Thrasher
Mark Sharman
James Loughney
Jimmie Gilbert
Gerald Bilsky, M.D
Eric Shaw, D.O.
Avinash Bhavaraju, M.D.
Jeffrey Reilly, M.D.
Andrew Zadoff, M.D.
Christine Uqochukwu, R.N.
Dr. Karla Walker
Mark Catlin, M.D.
Laurie Nash, Ph.D.
Urszula Klich, Ph.D.
Brenda Cohran

Klara Aminova
Kim Johnson
Kayla Weekley
Frank Wynn
Don Blair
Brad Closson
Nathan Dorris
Richard Hoffelmeyer
Dr. Henry Miller
Vijay Saraf
Jay Sturm

## **Summary of Expected Expert Testimony**

**Donald F. Blair**

Mr. Blair is expected to provide expert testimony on behalf of the Terex Defendants that is consistent with his expert reports and deposition testimony in this case.  Mr. Blair is expected to provide expert testimony regarding standards, regulations, training, and procedures related to the use of aerial devices in the tree trimming business and their application to Mr. Gaddy, Ace Tree Surgery and its employees, and the subject incident.  Mr. Blair is expected to testify that the subject aerial device showed obvious signs of abuse, neglect and misuse, including, but not limited to, continuous overload and use of the pvc collar as a rigging point for loads.  He is expected to testify that Mr. Gaddy, Ace Tree Surgery and its employees failed to follow applicable standards, regulations, manufacturer requirements and warnings, which contributed to the subject incident.  As indicated

by his expert report and deposition testimony, Mr. Blair may dispute and refute certain opinions raised by Plaintiff's experts that contradict or relate to his expert.

**Bradley D. Closson**

Mr. Closson is expected to provide expert testimony on behalf of the Terex Defendants that is consistent with his expert reports and deposition testimony in this case. Mr. Closson is expected to provide expert testimony regarding aerial device and crane industry standards, regulations, training, maintenance, and operations and their applicability to Mr. Gaddy, Ace Tree Surgery and its employees, and the subject incident. Mr. Closson is expected to testify that, as designed, the subject aerial device was reasonably safe and suitable for its intended use as an aerial work platform in the tree care industry. He is expected to testify that the subject aerial device's warnings, specifications and instructions were not deficient, defective or confusing when read by the reasonably anticipated users of the machine. Mr. Closson is expected to testify that the subject incident was caused by the prolonged use of the subject aerial device in overload conditions without the requisite maintenance or inspections that would identify any deficient structural conditions. He is expected to testify that the condition of the subject aerial device was grossly inadequate and unsafe at the time of the subject incident and evidences misuse and abuse of the machine by Mr. Gaddy and Ace Tree

Surgery.   As indicated by his expert report and deposition testimony, Mr. Closson may dispute and refute certain opinions raised by Plaintiff's experts that contradict or relate to his expert opinions.

**Nathan T. Dorris, Ph.D.**

Dr. Dorris is expected to provide expert testimony on behalf of the Terex Defendants that is consistent with his expert report and deposition testimony in this case.   Dr. Dorris is expected to provide expert testimony regarding warnings and human factors issues related to the Terex XT aerial devices, including the accompanying operator's and maintenance manuals, Mr. Gaddy and Ace Tree Surgery's review and compliance with same.   He is expected to testify that the subject aerial device's warnings and instructions were reasonable and appropriate in terms of location, format, and content and properly conveyed safety information related to the subject aerial device, including, but not limited to, the load capacity and inspection requirements.   He is expected to testify that the use of campaign/safety recall bulletins to alert owners and users to specific inspections to be done regarding welding and cracks in the aerial devices was a reasonable, appropriate and customary method of communicating with owners and users and was sufficient to alert readers to the risk of injury and the means of avoiding this risk.   Dr. Dorris is expected to testify that the evidence does not support a

conclusion that any different or additional warnings would have changed the behavior of Mr. Gaddy or anyone else involved such that the subject incident would not have occurred. As indicated by his expert report and deposition testimony, Dr. Dorris is expected to dispute and refute certain opinions raised by Plaintiff's experts, particularly the opinions of Dr. Hunt.

**Richard L. Hoffelmeyer**

Mr. Hoffelmeyer is expected to provide expert testimony on behalf of the Terex Defendants that is consistent with his expert report and deposition testimony in this case. Mr. Hoffelmeyer is expected to provide expert testimony regarding design, testing, compliance, engineering, manufacturing, and analyses of the Terex XT series of aerial devices. Mr. Hoffelmeyer will testify that the design of the XT lower boom met the structural requirements of ANSI A92.2. He is expected to testify regarding the duties of a manufacturer when receiving a "piece part" from an established supplier, including, but not limited to, his opinion that no special inspections or checks are expected from a manufacturer other than to verify documentation that came with the part and possibly check general dimensions for conformity. He is expected to testify regarding the crack that ultimately led to the failure of the boom on the subject aerial device, including the timing of its onset, its propagation, its visibility upon inspection, and its causation. As indicated by

his expert report and deposition testimony, Mr. Hoffelmeyer is expected to dispute and refute certain opinions raised by Plaintiff's experts, particularly the opinions of Dr. Pope and Mr. Morrill.

**Henry Miller, Ph.D.**

Dr. Miller is expected to provide expert testimony on behalf of the Terex Defendants that is consistent with his expert report and deposition testimony in this case.  Dr. Miller is expected to provide expert testimony regarding Plaintiff's life care plan and economic analysis of same in view of the reasonable costs of the health services identified in the plan and opportunities for private insurance made available under the Affordable Care Act.

**Vijay Saraf, Ph.D.**

Dr. Saraf is expected to provide expert testimony on behalf of the Terex Defendants that is consistent with his expert report and deposition testimony in this case.  Dr. Saraf is expected to provide expert testimony regarding the design, testing, compliance, engineering, manufacturing and analyses of the Terex XT series of aerial devices.  Dr. Saraf is expected to testify generally regarding the ANSI standards applicable to the design of the XT aerial device and will specifically testify that the design of the XT booms at the lower boom stub meets the structural strength requirements of ANSI A92.2.  Dr. Saraf is expected to

testify regarding causation of the subject incident from an engineering perspective. Dr. Saraf is expected to testify regarding the consistent overloading of the subject aerial device by Mr. Gaddy and Ace Tree Surgery, including its role in causing the subject incident.  Dr. Saraf is expected to testify regarding the crack that ultimately led to the failure of the boom on the subject aerial device, including the timing of its onset, its propagation, its visibility upon inspection, and its causation.    Dr. Saraf is expected to testify regarding the failure of Mr. Gaddy and Ace Tree Surgery to properly maintain and inspect the subject aerial device as required by ANSI standards and the Operator's Manual.  Dr. Saraf may testify regarding the steel that was used to manufacture the lower boom of the subject aerial device.  As indicated by his expert report and deposition testimony, Dr. Saraf is expected to dispute and refute certain opinions raised by Dr. Pope and Mr. Morrill, particularly Mr. Morrill's alternative designs, FEA modeling and interpretation of ANSI A92.2.

**Jay Sturm**

Jay Sturm is expected to provide expert testimony on behalf of the Terex Defendants that is consistent with his expert report and deposition testimony in this case.  Mr. Sturm is expected to provide expert testimony regarding aerial device and crane industry standards, regulations, training, maintenance, and operations

and their applicability to Mr. Gaddy, Ace Tree Surgery and its employees, and the subject incident.  Mr. Sturm is expected to testify that Ace Tree Surgery failed to properly train its employees or otherwise provide its with employees a safe working environment as required by applicable standards and regulations.  He is expected to testify regarding Ace Tree Surgery's failure to maintain the subject aerial device and the resulting unsafe condition of the aerial device at the time of the subject incident.  Mr. Sturm is expect to testify regarding Ace Tree Surgery and Mr. Gaddy's failure to inspect the subject aerial device, including the inspection of booms in general and his opinion that had the requisite inspections been conducted as required by applicable standards and the Operator's Manual the accident never would have occurred.  Mr. Sturm is expected to testify regarding the consistent overloading of the subject aerial device by Mr. Gaddy and Ace Tree Surgery, including the applicable standards and manufacturing instructions that warn against this activity.  Mr. Sturm may dispute and refute certain opinions raised by Plaintiff's experts that contradict or relate to his expert opinions.

## EXHIBIT G-1

Plaintiff's Exhibit List is enclosed herewith and contains a list of all documentary and physical evidence expected to be introduced at trial by Plaintiff. Plaintiff may offer any rebuttal or impeachment evidence which could not reasonably have been anticipated. Plaintiff's objections to Defendants' Exhibit Lists are attached to Defendants' Exhibit Lists.

Pursuant to Judge Duffey's Standing Order, Plaintiff anticipates introducing the following discovery responses from Defendants into evidence at trial:

- Defendant Terex South Dakota's Responses to Plaintiff's First Requests for Admission: 15, 16

**Terex Defendants:** **Terex Defendants object to these responses as legal conclusions such that they are inadmissible under FRE 401/403.**

- Defendant Terex South Dakota's Responses to Plaintiff's Second Requests for Admission: 70

**Terex Defendants:** **Terex Defendants state that there is no Request No. 70 in Plaintiff's Second Requests For Admissions such that Terex Defendants are unaware of what Plaintiff is referencing. Terex Defendants reserve the right to assert any objections if and when a proper response is identified.**

- Defendant Terex South Dakota's Responses to Plaintiff's Third Interrogatories: 2, 4, 8

**Terex Defendants:**  Terex Defendants object to these designations to the extent it is cumulative of other evidence that may be presented during the trial of this matter.

- Defendant Terex South Dakota's Responses to Plaintiff's Fourth Requests for Admission: 26, 35, 38, 44-45, 47, 53-59, 66, 112-13, 116, 124, 126, 128, 141, 151, 154

**Terex Defendants:**  Terex Defendants object to these designations as no admission of any fact was made in any response.  Accordingly, each response is deemed inadmissible pursuant to FRE 801/802.  To the extent any response is admissible, Terex Defendants object to the designations to the extent it is cumulative of other evidence that may be presented during the trial of this matter.

- Defendant Terex South Dakota's Responses to Plaintiff's Fifth Requests for Admission: 116, 124, 140-43

**Terex Defendants:**  Terex Defendants object to these designations as no admission of any fact was made in any response.  Accordingly, each response is deemed inadmissible pursuant to FRE 801/802.  Terex Defendants further object to these designations as irrelevant and inadmissible.  The Court has ruled as a matter of law that Plaintiff's manufacturing defect claim is barred against Terex SD as a matter of law.  To the extent any response is admissible, Terex Defendants object to the designations to the extent it is cumulative of other evidence that may be presented during the trial of this matter.

# **EXHIBIT G-2**

Terex Defendants' Exhibit List is enclosed herewith and contains a list of all documentary and physical evidence expected to be introduced at trial by Terex Defendants. Terex Defendants may offer any rebuttal or impeachment evidence which could not reasonably have been anticipated. Terex Defendants' objections to Plaintiff's Exhibit List are attached to Plaintiff's Exhibit Lists.

## **EXHIBIT H-1**

Mr, Gaddy believes that the parties will be in a better position to submit trial briefs once the Court has decided what will come into evidence at trial.  Mr. Gaddy will timely submit trial briefs, if necessary.

## **Exhibit H-2**

Terex Defendants' Trial Brief Regarding Allocation Of Fault Under O.C.G.A. § 51-12-33(b) is enclosed herewith for the Court's consideration.

## EXHIBIT I

### Plaintiff's Proposed Verdict Form:

### SECTION I

\_\_\_\_\_ We, the Jury, find in favor of Plaintiff Jeffrey Gaddy and against Defendant Terex South Dakota, Inc.

\_\_\_\_\_ We, the Jury, find in favor of Plaintiff Jeffrey Gaddy and against Defendant Terex Corporation.

\_\_\_\_\_ We, the Jury, find in favor of Plaintiff Jeffrey Gaddy and against Defendant Terex Utilities, Inc.

**-OR-**

\_\_\_\_\_ We, the Jury, find in favor of Defendants and against Plaintiff Jeffrey Gaddy.

### SECTION II

\_\_\_\_\_ We, the jury, find that the negligence should be apportioned, if at all, as follows:  (Must total 100%)

| | | |
|---|---|---|
| Terex South Dakota | _____ | % |
| Terex Corporation | _____ | % |
| Terex Utilities | _____ | % |
| Ace Tree Surgery | _____ | % |
| Jeffrey Gaddy | _____ | % |
| **TOTAL** | **100** | **%** |

We, the Jury, award the following damages to Jeff Gaddy:

Past medical bills/expenses/care costs:         $_____

Future medical bills/expenses/care costs:       $_____

Past lost wages:                                $_____

Future lost wages:                    $_____

Past pain and suffering:              $_____

Future pain and suffering:            $_____


Is Plaintiff Jeff Gaddy entitled to recover his attorneys' fees and expenses?

Yes or No:              _____


## SECTION III

_____ We, the Jury, find that punitive damages *should* be awarded against Defendant Terex South Dakota, Inc. in the amount of $_____.

_____ We, the Jury, find that punitive damages *should* be awarded against Defendant Terex Corporation in the amount of $_____.

_____ We, the Jury, find that punitive damages *should* be awarded against Defendant Terex Utilities, Inc. in the amount of $_____.

### -OR-

_____ We, the Jury, find that punitive damages *should not* be awarded against Defendants.


This _____ day of _____, 2017.


_____
FOREPERSON

## Terex Defendants' Proposed Verdict Form

### Phase I

1.  Has Plaintiff proven by a preponderance of the evidence that there was a design defect in the subject machine caused by negligence on the part of Terex South Dakota, Inc.?

    YES _____                           NO _____
    *If your answer to No. 1 is "NO", please stop here.*

2.  If your answer to No. 1 is "YES", has Plaintiff proven by a preponderance of the evidence that Terex South Dakota, Inc. acted with willful, reckless, or wanton disregard for property or life when it designed the subject machine?

    YES _____                           NO _____
    *If your answer to No. 2 is "NO", please stop here.*

3.  If your answer to No. 2 is "YES", has Plaintiff proven by a preponderance of the evidence that the design defect in the subject machine was a proximate cause of injury to Plaintiff?

    YES _____                           NO _____

### Phase II

4.  Has Plaintiff proven by a preponderance of the evidence that Terex Corporation breached its duty to warn about the design defect in the subject machine?

    YES _____                           NO _____
    *If your answer to No. 4 is "NO", please proceed to Question No. 6.*

5.  If your answer to No. 4 is "YES", has Plaintiff proven by a preponderance of the evidence that the breach of this duty by Terex Corporation was a proximate cause of injury to Plaintiff?

    YES _____                           NO _____

6.  Has Plaintiff proven by a preponderance of the evidence that Terex Utilities, Inc. breached its duty to warn about the design defect in the subject machine?

YES _____                                    NO _____

*If your answer to No. 6 is "NO", please proceed to Question No. 8.*

7.    If your answer to No. 6 is "YES", has Plaintiff proven by a preponderance of the evidence that the breach of this duty by Terex Utilities, Inc. was a proximate cause of injury to Plaintiff?

YES _____                                    NO _____

8.    Has Plaintiff proven by a preponderance of the evidence that Terex South Dakota, Inc. breached its duty to warn about the design defect in the subject machine?

YES _____                                    NO _____

*If your answer to No. 8 is "NO", please proceed to Question No. 10.*

9.    If your answer to No. 8 is "YES", has Plaintiff proven by a preponderance of the evidence that the breach of this duty by Terex South Dakota, Inc. was a proximate cause of injury to Plaintiff?

YES _____                                    NO _____

10.    Has Plaintiff proven by a preponderance of the evidence that Terex Corporation breached its duty to warn about the nonconforming steel in the subject machine?

YES _____                                    NO _____

*If your answer to No. 10 is "NO", please proceed to Question No. 12.*

11.    If your answer to No. 10 is "YES", has Plaintiff proven by a preponderance of the evidence that the breach of this duty by Terex Corporation was a proximate cause of injury to Plaintiff?

YES _____                                    NO _____

12.    Has Plaintiff proven by a preponderance of the evidence that Terex Utilities, Inc. breached its duty to warn about the nonconforming steel in the subject machine?

YES _____                                    NO _____

*If your answer to No. 12 is "NO", please proceed to Question No. 14.*

13.    If your answer to No. 12 is "YES", has Plaintiff proven by a preponderance of the evidence that the breach of this duty by Terex Utilities, Inc. was a proximate cause of injury to Plaintiff?

YES _____                                    NO _____

14.   Has Plaintiff proven by a preponderance of the evidence that Terex South Dakota, Inc. breached its duty to warn about the nonconforming steel in the subject machine?

YES _____                                    NO _____

*If your answer to No. 14 is "NO", please proceed to the end of Question No. 15.*

15.   If your answer to No. 14 is "YES", has Plaintiff proven by a preponderance of the evidence that the breach of this duty by Terex South Dakota, Inc. was a proximate cause of injury to Plaintiff?

YES _____                                    NO _____

If your answers to Question Nos. 1-15 are "NO", your verdict is for Terex Corporation, Terex Utilities, Inc., and Terex South Dakota, Inc., and you should not proceed further except to date and sign this verdict form and return it to the courtroom.  If your answer to any of these Questions is "YES", please answer the following questions.

16.   State the percentage of fault for Plaintiff's injury that you charge to the following persons (NOTE: You must assign some percentage of fault to Non-party Ace Tree Surgery, Inc.):

Plaintiff Jeffrey Gaddy                          _____%

Non-party Ace Tree Surgery, Inc.                _____%

Terex Corporation                               _____%

Terex Utilities, Inc.                           _____%

Terex South Dakota, Inc.

  *for negligent design                         _____%

  *for failure to warn                          _____%

  *for use of nonconforming steel               _____%

**TOTAL MUST BE 100%**

Please answer Question No. 17 regarding the amount of compensatory damages.   In determining the amount of any damages, **DO NOT** make any reduction because of the negligence, if any, of Plaintiff.  The Court in entering the judgment will make an appropriate reduction in the damages award.

17.   What is the amount of damages, if any, sustained by Plaintiff as a result of the subject accident?

TOTAL DAMAGES OF PLAINTIFF        $_____

Please answer Question Nos. 18 regarding the award, if any, of punitive damages.

18.   Under the circumstances of this case, do you find by clear and convincing evidence that any of the Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, such that you believe that punitive damages should be assessed against them?

Terex Corporation                    Yes ___          No ___

Terex South Dakota, Inc.             Yes ___          No ___

Terex Utilities, Inc.                Yes ___          No ___

## **Phase III**

What is the total amount of punitive damages, if any, which you find, by the greater weight of the evidence, should be assessed against Defendants?  (If you elect **NOT** to assess punitive damages against a defendant, you should enter a zero (0) as the amount of damages, and sign and date the verdict form).

Terex South Dakota, Inc.             $_____

Terex Utilities, Inc.                $_____

- 128 -

Terex Corporation                    $_____

                                     _____
                                     Jury Foreperson

## EXHIBIT K-1

## Plaintiff's Deposition Testimony Designations

Pursuant to Fed. R. Civ. P. 32, Plaintiff will play the following excerpts from the videotaped deposition:

| James Celentano taken on August 31, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 6:14 | 7:1 | | |
| 14:18 | 14:23 | | |
| 15:4 | 15:12 | | |
| 15:14 | 15:19 | | |
| 15:21 | 15:21 | | |
| 16:12 | 16:21 | | |
| 16:24 | 17:7 | | |
| 17:10 | 17:22 | | |
| 17:24 | 18:25 | | |
| 19:3 | 19:10 | | |
| 19:23 | 20:25 | | |
| 21:2 | 21:2 | | |
| 23:12 | 23:13 | | |
| 23:15 | 23:18 | | |
| 28:18 | 29:12 | | |
| 29:23 | 30:2 | | |
| 31:3 | 31:18 | | |
| 33:23 | 35:17 | | |
| 35:25 | 43:25 | | |
| 44:13 | 47:6 | | |
| 48:2 | 50:5 | | |
| 50:15 | 51:25 | | |
| 52:17 | 53:10 | | |
| 53:19 | 54:4 | | |
| 56:9 | 56:19 | | |

| James Celentano taken on August 31, 2016 (continued) | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 57:12 | 57:23 | | |
| 58:14 | 58:24 | | |
| 59:7 | 60:15 | | |
| 67:17 | 71:10 | | |

| Elroy Severson taken on April 29, 2015 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 5:6 | 5:23 | | 13:6-25 |
| 11:7 | 11:18 | | 14:1-25 |
| 13:3 | 13:5 | | 15:1-25 |
| 27:18 | 28:15 | | 16:1-7 |
| 28:24 | 29:5 | | 16:18-25 |
| 29:14 | 32:01 | | 17:1-7 |
| 32:21 | 33:20 | | 17:9 |
| 41:23 | 47:1 | | 17:11-14 |
| 47:22 | 48:13 | | 17:16-20 |
| | | | 17:22-24 |
| | | | 18:2-16 |
| | | | 22:5-6 |
| | | | 22:8-20 |
| | | | 22:22-24 |
| | | | 23:24-25 |
| | | | 24:1-2 |
| | | | 26:19-25 |
| | | | 27:2-8 |
| | | | 27:10 |
| | | | 29:6-7 (Only if Plaintiff's designations are allowed) |
| | | | 29:9 (Only if Plaintiff's designations are allowed) |

| Elroy Severson taken on April 29, 2015 (continued) | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| | | | 33:21-25 |
| | | | 34:2-25 |
| | | | 35:1-4 |
| | | | 35:6-13 |
| | | | 62:7-9 |
| | | | 62:11-25 |
| | | | 63:1-25 |
| | | | 64:1-2 |
| | | | 64:4-10 |
| | | | 64:12-19 |
| | | | 72:10-25 |
| | | | 73:1-19 |
| | | | 73:23-25 |
| | | | 74:1-25 |
| | | | 75:1-25 |
| | | | 76:1-16 |
| | | | 86:10-25 |
| | | | 87:1-25 |
| | | | 88:1-6 |
| | | | 88:8-17 |
| | | | 88:19 |
| | | | 90:19-25 |
| | | | 91:1-5 |
| | | | 93:23-25 |
| | | | 94:1-3 |
| | | | 94:8-24 |

| Francis Srohfus taken on April 27, 2015 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 4:25 | 5:14 | | 5:15-18 |
| 6:20 | 7:7 | | 7:8-25 |
| 9:1 | 9:9 | | 8:1-22 |
| 15:10 | 16:10 | | 9:17-25 |
| 21:8 | 21:15 | | 10:1-11 |
| 26:1 | 26:20 | | 12:9-25 |
| 27:1 | 29:4 | | 13:2-21 |
| 29:22 | 31:20 | | 22:16-25 |
| 33:5 | 34:2 | | 23:7-17 |
| 34:14 | 35:17 | | 23:19-21 |
| 36:25 | 38:13 | | 29:6-11 |
| 41:9 | 42:17 | | 29:13 |
| 45:8 | 45:21 | | 31:21-25 |
| 46:7 | 46:10 | | 32:1-7 |
| 48:15 | 49:11 | | 32:9-11 |
| 73:3 | 74:5 | | 38:14-15 |
| | | | 38:18-25 |
| | | | 39:1-25 |
| | | | 40:1-3 |
| | | | 40:5-10 |
| | | | 40:18-23 |
| | | | 82:1-17 |

| Jim Olson taken on April 27, 2015 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 4:20 | 5:3 | | 100:11-25 |
| 5:10 | 5:25 | | 101:1-25 |
| 6:2 | 10:2 | | 102:1-25 |
| 12:7 | 12:24 | | 103:1-25 |
| 13:9 | 13:23 | | 104:1-25 |
| 16:24 | 17:14 | | 105:1-4 |
| 45:18 | 45:23 | | 105:23-25 |
| 62:3 | 63:24 | | 106:1-25 |
| 78:4 | 78:11 | | 107:1-4 |
| 81:4 | 81:23 | | 109:7-25 |
| 84:13 | 84:16 | | 110:1-25 |
| 85:8 | 86:7 | | 111:1-22 |
| 94:10 | 94:22 | | 113:9-21 |
| 153:4 | 154:8 | | 116:5-15 |
| 165:10 | 165:19 | | |
| 168:4 | 168:10 | | |
| 170:23 | 171:1 | | |
| 172:6 | 172:25 | | |
| 176:20 | 177:4 | | |
| 177:17 | 178:9 | | |

| Jim Olson taken on May 13, 2015 | | | |
|---|---|:---:|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 6:20 | 8:16 | | 18:10-11 |
| 9:13 | 10:22 | | 18:14-20 |
| 11:4 | 12:3 | | 18:23 |
| 13:24 | 15:2 | | 20:3-4 |
| 15:12 | 15:15 | | 20:7 |
| 15:20 | 16:5 | | 24:19-25 |
| 16:8 | 18:9 | | 25:1-11 |
| 18:24 | 18:25 | | 25:14-25 |
| 19:4 | 19:4 "It is a defect, yet." | | 26:1-17 |
| 19:8 | 19:16 | | |
| 23:10 | 24:18 | | |

| Jim Olson taken on August 10, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 10:17 | 10:18 | | 16:23-25 |
| 16:7 | 16:22 | | 17:1-7 |
| 17:9 | 17:12 | | 17:13-22 |
| 17:25 | 19:14 | | 19:15-22 |
| 19:25 "I don't want the" | 20:9 | | 20:10-25 |
| 22:9 | 24:2 | | 21:1-9 |
| 24:14 | 25:21 | | 25:22-25 |
| 26:3 | 26:9 | | 26:1-2 |
| 27:3 | 27:10 | | 26:10-25 |
| 28:16 "I want you" | 29:25 | | 27:1-2 |
| 30:8 | 30:24 | | 27:11-25 |
| 33:10 | 34:2 | | 28:1-14 |
| 34:11 | 35:2 | | 30:1-7 |
| 35:8 | 38:13 | | 35:4-7 |
| 39:17 | 39:25 | | 38:14-17 |
| 40:19 | 40:19 | | 38:19-25 |
| 41:3 | 41:8 | | 39:1 |
| 41:23 | 42:1 | | 39:2-16 (Include only if Terex's objections are overruled) |
| 42:24 | 43:4 | | 40: 1-18 (Include only if Terex's objections are overruled) |

| Jim Olson taken on August 10, 2016 (continued) | | | |
|---|---|:---:|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 53:20 | 54:6 | | 40: 20-25 (Include only if Terex's objections are overruled) |
| 54:11 | 55:6 | | 41: 1-2 (Include only if Terex's objections are overruled) |
| 55:9 | 56:14 | | 41: 9-22 (Include only if Terex's objections are overruled) |
| 59:12 | 61:1 | | 42: 2-23 (Include only if Terex's objections are overruled) |
| 63:6 | 63:20 | | 51:3-6 |
| 65:23 | 75:9 "It should not go on the boom." | | 51:8-25 |
| 75:18 | 77:4 | | 52:4-23 |
| 77:15 "The only" | 77:22 | | 54:6-10 |
| 89:13 | 91:14 | | 56:15-25 |
| 92:4 | 92:12 | | 57:1 |
| 93:8 | 93:23 | | 58:2-19 |
| 97:3 | 97:13 | | 62:21-23 |
| 97:20 | 99:12 | | 63:2-5 |

| Jim Olson taken on August 10, 2016 (continued) | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 103:22 | 103:24 | | 63:21-25 |
| 104:8 | 104:24 | | 64:1-25 |
| 105:8 "So an FEA" | 105:17 | | 65:1-22 |
| 240:1 | 240:24 | | 75:9-14 |
| | | | 77:5-13 |
| | | | 78:12-25 |
| | | | 79:1-25 |
| | | | 80:1-2 |
| | | | 80:9-15 |
| | | | 80:18-25 |
| | | | 81:1-25 |
| | | | 82:1-3 |
| | | | 85:17-25 |
| | | | 86:1-25 |
| | | | 87:1-7 |
| | | | 93:24-25 |
| | | | 94:1-25 |
| | | | 95:1-8 |
| | | | 95:19-25 |
| | | | 96:1-24 |
| | | | 125:7-25 |
| | | | 126:1-25 |
| | | | 127:1-19 |
| | | | 127:22-25 |
| | | | 128:1-25 |
| | | | 129:1-25 |
| | | | 130:1-25 |
| | | | 131:1-3 |
| | | | 132:25 |
| | | | 133:10-25 |
| | | | 134:1-2 |
| | | | 134:21-25 |

| | | | |
|---|---|---|---|
| | | | 135:1-11 |
| | | | 242:16-21 |
| | | | 242:24-25 |
| | | | 243:1-23 |
| | | | 244:21-25 |
| | | | 245:1-25 |
| | | | 246:1-25 |
| | | | 247:1-25 |
| | | | |
| | | | |
| | | | |

| Luke Webber taken on August 18, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 6:6 | 7:21 | | 11:5-9 |
| 8:3 | 11:4 | | 11:12-14 |
| 12:4 | 14:25 | | 16:24-25 |
| 17:9 | 18:2 | | 17:4-8 |
| 21:11 | 21:21 | | 18:9-12 |
| 23:9 | 24:3 | | 18:14-23 |
| 24:16 | 27:2 | | 42:10-25 |
| 29:2 | 29:10 | | 43:1-2 |
| 31:11 | 31:23 | | 43:5-16 |
| 43:23 | 44:11 | | 43:18-22 |
| 45:1 | 45:8 | | 46:8-23 |
| 71:6 | 71:15 | | 50:4-23 |
| 73:10 | 74:4 | | 62:20-24 |
| 74:23 | 77:3 | | 63:1-23 |
| 78:18 | 79:3 | | |

| Luke Webber 30(b)(6) taken on August 18, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 4:24 | 5:6 | | 11:13-12:20 |
| 11/2 | 11/12 | | 13:5-13:22 |
| 17/7 | 17/25 | | 14:1-17:2 |
| 19/8 "Why did Terex…" | 30:9 | | 30:23 ("…Terex did not") – 31:12 |
| 31/13 | 34:24 | | 52:16-55:12 |
| 36:1 | 37:2 | | 57:19-58:10 |
| 47:15 | 48:25 | | 60:11 ("…it is Terex's) - 64:5 |
| 51:4 | 52:15 | | |
| 55:13 | 57:18 | | |

| Mike Wise taken on April 28, 2015 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 4:23 | 5:18 | | |
| 6:10 | 6:11 | | |
| 12:15 | 12:21 | | |
| 13:2 | 13:13 | | |
| 40:23 | 41:21 | | |

| Robert Roche taken on August 5, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 7:21 | 8:11 | | |
| 9:11 | 9:22 | | |
| 22:16 | 26:12 | | |
| 29:4 | 32:13 | | |
| 33:16 | 48:2 | | |
| 48:23 | 54:17 | | |

| Jon Promersberger taken on August 18, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 6:16 | 7:20 | | |
| 8:9 | 10:10 | | |
| 10:23 | 12:4 | | |
| 12:22 | 12:24 | | |
| 15:16 | 15:24 | | |
| 16:2 | 16:24 | | |
| 18:19 | 18:23 | | |
| 19:4 | 21:6 | | |
| 21:10 | 21:16 | | |
| 22:20 | 24:19 | | |
| 25:12 | 25:23 | | |
| 26:1 | 26:11 | | |
| 27:20 | 28:15 | | |
| 29:14 | 30:6 | | |
| 30:16 | 30:19 | | |
| 30:22 "Exhibit 35" | 30:22 | | |
| 30:24 | 31:4 | | |

| Avinash Bhavaraju, MD taken on November 10, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 6:20 | 13:9 | | 22:13-25 |
| 13:25 | 22:7 | | 23:1-3 |
| | | | 23:20-25 |
| | | | 24:1-17 |
| | | | 24:21-25 |
| | | | 25:1-11 |
| | | | 25:20-25 |
| | | | 26:1-6 |
| | | | 26:1-11 |
| | | | 27:1-21 |
| | | | 27:24-25 |
| | | | 28:1-3 |
| | | | 28:9-11 |
| | | | 28:13-15 |
| | | | 28:11-22 |
| | | | 28:25 |
| | | | 29:1-10 |
| | | | 29:13-15 |
| | | | 31:11-25 |
| | | | 32:1-4 |
| | | | 32:13-23 |

| Erik Shaw, MD taken on November 16, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 5:6 | 25:15 | | 26:13-25 |
| | | | 27:1-25 |
| | | | 28:1-6 |
| | | | 33:10-25 |
| | | | 34:1-20 |

| Gerald S. Bilsky, MD taken on November 17, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 5:6 | 9:7 | | 25:3-25 |
| 9:17 | 10:20 | | 26:1-2 |
| 10:24 | 24:10 | | 27:19-25 |
| | | | 28:1-25 |
| | | | 29:1-7 |

| William J. Benedict, Jr., MD taken on February 10, 2017 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 4:17 | 12:25 | | 16:19-25 |
| 13:7 | 16:16 | | 17:1-13 |

| Greg Homiller taken on August 12, 2016 | | | |
|:---:|:---:|:---:|:---:|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 5:15 | 9:7 | | 45:25-47:14 |
| 9:10 | 11:21 | | 48:9-12 |
| 11:23 | 12:3 | | 49:21-52:16 |
| 12:6 | 12:7 | | 55:13 ("And as…")-23 |
| 12:9 | 12:13 | | 58:10-59:8 |
| 12:15 | 13:4 | | 60:16-19 |
| 13:7 | 13:13 | | 61:2-62:7 |
| 13:17 | 13:25 | | 62:18-21 |
| 14:19 | 18:24 | | 63:18-22 |
| 19:6 | 20:11 | | 64:2-16 |
| 20:14 | 20:17 | | 65:3-66:7 |
| 20:19 | 21:17 | | 66:10-67:20 |
| 21:21 | 22:20 | | 69:17-21 |
| 22:23 | 22:24 | | 70:2-15 |
| 23:1 | 23:11 | | 71:18-74:5 |
| 23:15 | 23:22 | | 75:14-77:7 |
| 24:3 | 24:6 | | 77:19-78:12 |
| 24:8 | 24:8 | | 82:3-83:15 |
| 24:10 | 25:19 | | 84:14-85:16 |
| 25:1 | 25:19 | | 85:21-23 |
| 25:22 | 25:23 | | 88:4-22 |
| 26:1 | 27:11 | | 89:12-22 |
| 27:14 | 27:16 | | 89:24-95:21 |
| 27:18 | 28:10 | | 100:23-101:12 |
| 28:13 | 28:15 | | 102:8-104:9 |
| 28:17 | 30:16 | | 105:6-13 |
| 30:22 | 30:24 | | 105:21-110:13 |
| 31:1 | 32:13 | | 114:18-115:5 |
| 32:16 | 32:18 | | 115:22-117:15 |
| 32:20 | 32:23 | | 119:5-21 |
| 32:25 | 33:5 | | 120:24-124:12 |
| 33:8 | 33:9 | | 125:13-16 |

| Greg Homiller taken on August 12, 2016 (continued) | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 33:11 | 33:12 | | 126:13-19 |
| 33:14 | 34:7 | | 127:3-10 |
| 34:10 | 34:24 | | 128:4-19 |
| 35:1 | 35:16 | | 129:2-7 |
| 36:3 | 36:5 | | 134:23-137:5 |
| 36:7 | 36:12 | | 137:22-139:13 |
| 36:14 | 36:25 | | |
| 39:12 | 39:16 | | |
| 39:20 | 40:2 | | |
| 40:4 | 40:7 | | |
| 40:11 | 40:12 | | |
| 40:14 | 40:17 | | |
| 40:19 | 40:23 | | |
| 40:25 | 41:8 | | |
| 41:10 | 41:12 | | |
| 41:14 | 41:16 | | |
| 41:18 | 41:20 | | |
| 41:22 | 41:23 | | |
| 41:25 | 42:16 | | |
| 42:19 | 42:23 | | |
| 42:25 | 43:12 | | |
| 43:15 | 43:18 | | |
| 43:21 | 43:23 | | |
| 43:25 | 45:2 | | |
| 45:5 | 45:6 | | |
| 129:22 | 130:14 | | |
| 130:19 | 130:23 | | |
| 131:1 | 131:5 | | |
| 131:7 | 131:9 | | |
| 131:11 | 131:16 | | |
| 131:18 | 132:5 | | |
| 132:7 | 132:23 | | |

| Greg Homiller taken on August 12, 2016 (continued) | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Defendants' Counter Designations |
| 137:12 | 137:17 | | |

Plaintiff may change the above-stated designations for based on what portions Defendants designate.

# EXHIBIT K-2

## Terex Defendants' Deposition Testimony Designations

Terex Defendants note that some of the below designations and above counter-designations may be withdrawn or altered depending on the Court's rulings on anticipated motions *in limine* and objections to Plaintiff's designations and counter-designations.

| Lonnie Fall taken on May 6, 2015 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Plaintiff's Counter Designations |
| 6:7 | 6:10 | | 6:8 – 16:9 |
| 6:20 | 7:4 | | |
| 7:11 | 7:15 | | |
| 11:19 | 12:4 | | |
| 12:10 | 12:23 | | |
| 13:3 | 13:4 | | |
| 16:20 | 17:7 | | |
| 17:9 | 17:9 | | |
| 17:11 | 17:13 | | |
| 17:15 | 17:22 | | |
| 17:24 | 17:24 | | |
| 18:1 | 18:3 | | |
| 18:5 | 18:5 | | |
| 18:7 | 18:8 | | |
| 18:10 | 18:12 | | |
| 18:20 | 18:21 | | |
| 18:23 | 18:24 | | |
| 19:1 | 19:2 | | |
| 19:4 | 19:4 | | |
| 19:9 | 19:17 | | |
| 19:19 | 19:25 | | |
| 20:2 | 20:14 | | |

| | | | |
|---|---|---|---|
| 20:16 | 20:16 | | |
| 21:2 | 21:5 | | |
| 21:7 | 21:11 | | |
| 21:14 | 21:15 | | |
| 21:17 | 21:24 | | |
| 22:1 | 22:1 | | |
| 22:3 | 22:4 | | |
| 22:6 | 22:12 | | |
| 22:14 | 22:14 | | |
| 22:16 | 22:17 | | |
| 22:19 | 22:24 | | |
| 23:1 | 23:5 | | |
| 23:7 | 23:10 | | |
| 23:12 | 24:3 | | |
| 24:7 | 24:9 | | |
| 24:11 | 24:11 | | |
| 24:13 | 24:15 | | |
| 24:17 | 24:20 | | |
| 24:22 | 25:1 | | |
| 25:3 | 25:15 | | |
| 25:17 | 25:22 | | |
| 25:24 | 26:2 | | |
| 26:4 | 26:9 | | |
| 26:10 | 26:17 | | |
| 26:19 | 26:24 | | |
| 27:1 | 27:6 | | |
| 27:9 | 27:14 | | |
| 27:16 | 27:16 | | |
| 28:1 | 28:5 | | |
| 28:7 | 28:13 | | |
| 28:16 | 28:17 | | |
| 28:19 | 28:25 | | |
| 29:2 | 29:7 | | |
| 29:9 | 29:14 | | |
| 29:16 | 29:24 | | |
| 30:1 | 30:7 | | |

| | | |
|---|---|---|
| 30:9 | 30:13 | |
| 30:15 | 30:22 | |
| 30:24 | 31:4 | |
| 31:6 | 31:13 | |
| 31:15 | 31:19 | |
| 31:21 | 31:23 | |
| 31:25 | 31:25 | |
| 32:2 | 32:5 | |
| 32:7 | 32:12 | |
| 32:14 | 32:19 | |
| 32:21 | 33:2 | |
| 33:4 | 33:8 | |
| 33:10 | 33:15 | |
| 33:17 | 33:20 | |
| 33:22 | 34:1 | |
| 34:3 | 34:7 | |
| 34:25 | 35:4 | |
| 35:6 | 35:11 | |
| 35:13 | 35:21 | |
| 35:25 | 36:2 | |
| 36:4 | 36:17 | |
| 36:19 | 36:24 | |
| 37:2 | 37:14 | |
| 37:16 | 37:23 | |
| 37:25 | 37:25 | |
| 39:13 | 39:17 | |
| 39:19 | 39:23 | |
| 39:25 | 40:8 | |
| 40:10 | 40:16 | |
| 40:18 | 40:25 | |
| 41:2 | 41:20 | |
| 41:22 | 41:22 | |
| 41:24 | 41:25 | |

| Jack Gaddy taken on August 30, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Plaintiff's Counter Designations |
| 5:19 | 5:21 | | 7:3-7:23 |
| 6:21 | 7:2 | | 8:14-9:13 |
| 7:24 | 8:13 | | 11:1-12:3 |
| 9:14 | 9:24 | | 13:23-14:20 |
| 18:23 | 19:15 | | 19:16-21:7 |
| 23:3 | 23:20 | | 26:24-28:25 |
| 23:24 | 24:2 | | 31:22-34:6 |
| 26:4 | 26:23 | | 34:22-35:10 |
| 29:3 | 31:21 | | 42:1-44:4 |
| 34:7 | 34:21 | | 51:1-51:10 |
| 42:1 | 42:18 | | 56:5-58:12 |
| 44:5 | 44:22 (through the word "it") | | 59:1-60:1 |
| 49:14 | 50:25 | | |
| 51:11 | 51:24 | | |
| 54:18 | 55:4 | | |
| 55:10 | 56:4 | | |
| 60:17 | 60:18 | | |
| 60:23 | 62:15 | | |

Plaintiff objects to the jury hearing any portions of the Jack Gaddy deposition until the Terex Defendants have made a showing under Rule 32(a)(4) that Mr. Gaddy is an unavailable witness.

| David Gaddy, Jr. taken on August 19, 2016 | | |
|---|---|---|
| Beginning Page:Line | Ending Page:Line | Plaintiff's Counter Designations |
| 7:5 | 7:21 | 7:22-9:4 |
| 9:5 | 10:17 | 10:25-14:4 |
| 16:11 (beginning with "I just want") | 18:5 | 14:16-15:6 |
| 19:6 | 19:13 | 18:14-19:15 |
| 23:1 | 23:19 | |
| 24:21 | 25:13 | |

Plaintiff objects to the jury hearing any portions of the David Gaddy, Jr. deposition until the Terex Defendants have made a showing under Rule 32(a)(4) that Mr. Gaddy is an unavailable witness.

| David Gaddy, Sr. taken on August 19, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Plaintiff's Counter Designations |
| 8:13 | 9:8 | | 21:25-22:14 |
| 9:13 | 10:11 | | 30:14-31:23 "Did you have…" |
| 10:19 | 16:14 | | 36:10-37:8 |
| 17:23 | 18:1 | | 50:8-51:17 |
| 18:17 | 18:20 | | 54:12-55:1 |
| 20:14 | 21:24 | | 58:7-58:16 |
| 23:14 | 26:18 | | 59:19-59:22 |
| 28:5 | 29:24 | | 62:21-63:3 |
| 32:19 | 33:23 | | 65:5-68-24 |
| 34:7 | 35:2 | | |
| 37:19 | 39:16 | | |
| 39:22 | 41:14 | | |
| 42:1 | 46:21 | | |
| 46:24 | 47:6 | | |
| 47:10 | 49:9 | | |
| 51:14 | 52:14 | | |
| 52:17 | 54:11 | | |
| 55:2 | 58:6 | | |
| 58:20 | 60:18 | | |
| 60:10 | 60:24 | | |
| 61:1 | 62:20 | | |
| 63:6 | 64:20 | | |
| 69:2 | 69:19 | | |
| 70:15 | 71:1 | | |
| 71:14 | 72:21 | | |
| 75:2 | 76:8 | | |
| 77:8 | 78:2 | | |

| David Gaddy, Sr. taken on August 19, 2016 (continued) | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Plaintiff's Counter Designations |
| 78:6 | 84:3 | | |
| 31:24 | 32:18 | | |

Plaintiff objects to the jury hearing any portions of the David Gaddy, Sr. deposition until the Terex Defendants have made a showing under Rule 32(a)(4) that Mr. Gaddy is an unavailable witness.

| Donald Morgan taken on August 17, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Plaintiff's Counter Designations |
| 12:8 | 12:13 | | 14:13-14:19 |
| 15:6 | 15:11 | | 23:15-25:13 |
| 19:5 | 19:21 | | 27:15-29:5 |
| 20:7 | 20:15 | | 44:5-44:20 |
| 20:21 | 22:17 | | 50:14-51:2 |
| 23:7 | 23:14 | | 51:21-52:8 |
| 25:21 | 25:25 | | 65:15-66:17 |
| 29:14 | 30:14 | | 91:7-92:10 |
| 31:11 | 31:23 | | |
| 32:16 | 33:12 | | |
| 33:19 | 34:22 | | |
| 36:14 | 37:3 | | |
| 37:15 | 38:3 | | |
| 38:12 | 38:15 | | |
| 39:1 | 39:12 | | |
| 42:9 | 43:2 | | |
| 43:8 | 43:15 | | |
| 47:1 | 47:24 | | |
| 48:2 | 48:14 | | |
| 48:20 | 48:21 | | |
| 49:1 | 49:16 | | |
| 50:11 | 50:13 | | |
| 51:3 | 51:6 | | |
| 52:11 | 53:20 | | |
| 54:8 | 55:13 | | |
| 55:25 | 56:10 | | |
| 57:1 | 57:12 | | |
| 57:16 | 58::11 | | |
| 59:7 | 59:21 | | |
| 66:18 | 67:5 | | |
| 67:10 | 68:2 | | |
| 68:10 | 69:8 | | |

| Donald Morgan taken on August 17, 2016 (continued) | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Plaintiff's Counter Designations |
| 70:14 | 70:21 | | |
| 89:16 | 90:10 | | |

Plaintiff objects to the jury hearing any portions of the Donald Morgan deposition until the Terex Defendants have made a showing under Rule 32(a)(4) that Mr. Morgan is an unavailable witness.

| Kenneth Morgan taken on August 17, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Plaintiff's Counter Designations |
| 8:3 | 8:10 | | 15:23-16:15 |
| 11:10 | 11:16 | | 34:18-34:21 |
| 14:8 | 14:22 | | 35:4-35:14 |
| 15:15 | 15:22 | | |
| 16:16 | 16:18 | | |
| 20:8 | 20:11 | | |
| 20:24 | 21:6 | | |
| 23:25 | 24:7 | | |
| 24:11 | 25:1 | | |
| 27:18 | 27:23 | | |
| 32:4 | 32:7 | | |
| 32:17 | 32:25 | | |
| 33:18 | 33:24 | | |
| 34:5 | 34:10 | | |
| 34:15 | 34:17 | | |
| 36:19 | 36:22 | | |
| 37:1 | 37:21 | | |
| 37:24 | 38:12 | | |
| 38:22 | 39:2 | | |
| 39:16 | 39:23 | | |
| 42:3 | 43:4 | | |

Plaintiff objects to the jury hearing any portions of the Kenneth Morgan deposition until the Terex Defendants have made a showing under Rule 32(a)(4) that Mr. Gaddy is an unavailable witness.

| Joey Sailors taken on August 17, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Plaintiff's Counter Designations |
| 8:4 | 8:6 | | 19:22-20:9 |
| 12:5 | 12:10 | | 32:9-32:19 |
| 17:3 | 17:8 | | 35:13-35:23 |
| 17:23 | 17:24 | | 38:7-39:18 |
| 23:23 | 24:20 | | 49:15-57-1 |
| 27:14 | 28:1 | | 62:22-64:3 |
| 31:21 | 32:8 | | |
| 32:20 | 32:24 | | |
| 33:9 | 33:23 | | |
| 34:10 | 35:12 | | |
| 36:4 | 36:13 | | |
| 39:19 | 40:6 | | |
| 40:16 | 40:19 | | |
| 41:10 | 41:19 | | |
| 42:2 | 42:4 | | |
| 42:7 | 42:13 | | |
| 43:5 | 43:7 | | |
| 62:1 | 62:7 | | |

Plaintiff objects to the jury hearing any portions of the Joey Sailor deposition until the Terex Defendants have made a showing under Rule 32(a)(4) that Mr. Sailor is an unavailable witness.

| Cameron Smith taken on May 6, 2015 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Plaintiff's Counter Designations |
| 5:18 | 6:2 | | 6:3-10:6 |
| 10:21 | 11:7 | | |
| 11:10 | 11:15 | | |
| 11:17 | 11:24 | | |
| 12:18 | 13:2 | | |
| 12:4 | 12:7 | | |
| 12:9 | 12:13 | | |
| 12:15 | 12:23 | | |
| 13:24 | 14:8 | | |
| 14:10 | 14:16 | | |
| 14:18 | 14:21 | | |
| 14:23 | 15:2 | | |
| 15:6 | 15:7 | | |
| 15:9 | 15:13 | | |
| 15:15 | 15:21 | | |
| 16:6 | 16:10 | | |
| 16:12 | 16:13 | | |
| 16:18 | 16:19 | | |
| 16:21 | 17:1 | | |
| 17:3 | 17:7 | | |
| 17:9 | 17:14 | | |
| 17:16 | 17:18 | | |
| 17:20 | 18:9 | | |
| 18:11 | 18:13 | | |
| 18:15 | 18:18 | | |
| 18:20 | 18:23 | | |
| 18:25 | 19:4 | | |
| 19:9 | 19:14 | | |
| 19:16 | 19:19 | | |
| 19:21 | 20:6 | | |
| 20:8 | 20:10 | | |
| 20:12 | 20:15 | | |
| 20:17 | 20:20 | | |

| | | | |
|---|---|---|---|
| 20:22 | 21:1 | | |
| 21:3 | 21:7 | | |
| 21:9 | 21:12 | | |
| 21:14 | 21:17 | | |
| 21:19 | 21:21 | | |
| 21:23 | 22:2 | | |
| 22:4 | 22:12 | | |
| 22:14 | 22:17 | | |
| 22:19 | 22:25 | | |
| 23:4 | 23:4 | | |
| 23:6 | 24:16 | | |
| 24:25 | 25:2 | | |
| 25:4 | 25:6 | | |
| 25:8 | 25:11 | | |
| 25:13 | 25:13 | | |

| Ace Tree Surgery 30(b)(6) taken on August 16, 2016 | | | |
|---|---|---|---|
| Beginning Page:Line | Ending Page:Line | | Plaintiff's Counter Designations |
| 10:11 | 11:3 | | 19:3-20:1 |
| 11:9 | 11:10 | | 22:23-24:4 |
| 20:24 | 22:22 | | 41:3-41:13 |
| 24:6 | 27:22 | | 50:22-52:2 |
| 29:6 | 33:17 | | 90:18-90:22 |
| 34:10 | 38:4 | | 91-10-93:18 |
| 38:9 | 41:24 | | 105:12-108:17 |
| 42:1 | 46:2 | | 110:9-110:19 |
| 46:14 | 47:14 | | 115:1-116:2 |
| 48:10 | 48:22 | | 129:15-130:1 |
| 50:6 | 50:21 | | 147:12-147:25 |
| 52:3 | 52:8 | | 153:11-154:10 |
| 52:19 | 53:11 | | 158:8-159:8 |
| 53:13 | 56:3 | | 169:17-171:3 |
| 56:17 | 56:24 | | 174:24-175:16 |
| 57:5 | 58:22 | | 186:2-187:24 |
| 60:11 | 61:13 | | 201:9-202:13 |
| 61:18 | 66:22 | | 203:14-203:17 |
| 68:13 | 73:19 | | 203:22-205:24 |
| 74:9 | 75:24 | | 206:7-207:22 |
| 76:25 | 79:19 | | 208:16-208:23 |
| 80:4 | 81:23 | | 215:14-216:2 |
| 82:10 | 83:16 | | 216:22-217:25 |
| 83:23 | 84:15 | | |
| 84:20 | 85:13 | | |
| 86:3 | 90:13 | | |
| 94:23 | 96:2 | | |
| 96:10 | 97:7 | | |
| 97:16 | 99:13 | | |
| 99:24 | 101:19 | | |
| 104:7 | 105:6 | | |
| 105:7 | 107:11 | | |
| 108:18 | 109:2 | | |

| | | | |
|---|---|---|---|
| 112:6 | 112:15 | | |
| 113:7 | 113:22 | | |
| 120:16 | 121:1 | | |
| 122:13 | 122:16 | | |
| 125:18 | 129:6 | | |
| 132:18 | 133:1 | | |
| 133:18 | 134:1 | | |
| 138:4 | 139:12 | | |
| 148:7 | 149:10 | | |
| 149:21 | 150:5 | | |
| 150:15 | 152:1 | | |
| 154:11 | 154:22 | | |
| 155:23 | 156:23 | | |
| 157:19 | 158:7 | | |
| 159:10 | 160:2 | | |
| 160:5 | 160:18 | | |
| 163:9 | 164:7 | | |
| 171:23 | 172:7 | | |
| 174:2 | 174:23 | | |
| 180:22 | 181:24 | | |
| 184:17 | 185:24 | | |
| 190:19 | 192:9 | | |
| 193:11 | 194:10 | | |
| 196:11 | 196:20 | | |
| 199:21 | 200:21 | | |
| 208:3 | 208:15 | | |
| 210:7 | 210:11 | | |
| 211:1 | 211:12 | | |
| 211:24 | 212:16 | | |
| 213:14 | 214:15 | | |
| 216:3 | 216:21 | | |
| 20:3 | 20:6 | | |
| 90:23 | 90:25 | | |
| 91:3 | 91:9 | | |
| 93:19 | 94:5 | | |
| 110:20 | 110:24 | | |

| | | | |
|---|---|---|---|
| 199:21 | 201:8 | | |
| 202:14 | 203:13 | | |
| 203:18 | 203:21 | | |
| 205:25 | 206:6 | | |
| 208:3 | 208:18 | | |

Plaintiff objects to the jury hearing any portions of the Ace Tree Surgery 30(b)(6) deposition until the Terex Defendants have made a showing under Rule 32(a)(4) that the witness is a unavailable.

**Interrogatory and Requests For Admission Designations:**

- Plaintiff's Response To Terex South Dakota, Inc.'s First Interrogatories, No. 2;

- Plaintiff's First Supplemental Response To Terex Utilities, Inc.'s First Interrogatories, Nos. 1, 2, and 4;

- Plaintiff's First Supplemental Response To Terex South Dakota, Inc.'s First Interrogatories, Nos. 3, 5, and 12;

  **Plaintiff objects to No 3 – Relevance and Unfairly Prejudicial, Rule 609**

- Plaintiff's Second Supplemental Response To Terex South Dakota, Inc.'s First Interrogatories, No. 4;

  **Plaintiff objects– Relevance and Unfairly Prejudicial, Rule 609**

- Joseph T. Ryerson & Son, Inc.'s Response To Terex South Dakota, Inc.'s First Interrogatories, Nos. 2 and 3; and

  **Plaintiff objects to No 3 – Relevance**

- Joseph T. Ryerson & Son, Inc.'s Response To Plaintiff's Second Request For Admissions, Nos. 1-3 and 11-13.

  **Plaintiff objects – Relevance**