# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JEFFREY GADDY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION FILE |
| | ) NO. 1:14-cv-01928-WSD |
| AMERICAN INTERSTATE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Intervenor Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TEREX CORPORATION, TEREX | ) |
| SOUTH DAKOTA, INC., and | ) |
| TEREX UTILITIES, INC., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## TEREX DEFENDANTS' BRIEF IN SUPPORT
## OF THEIR MOTION TO TRIFURCATE TRIAL

COME NOW, Defendants Terex Corporation, Terex Utilities, Inc., and Terex South Dakota, Inc. ("Terex SD") (collectively, the "Terex Defendants"), and hereby file their Brief In Support Of Their Motion To Trifurcate Trial, showing as follows:

### Introduction

This is a products liability action stemming from the failure of a 2002 Terex

Hi-Ranger XT 60/70 boom, an aerial lift device (the "Subject Aerial Device"). The Subject Aerial Device was part of Terex SD's XT aerial device line, which consisted of XT52, XT55, XT58, and XT60 aerial lifts. The line, beginning with the XT52, was first designed by Terex SD in 1996. The Subject Aerial Device, an XT60, was originally designed in 1999 and manufactured on or about October 4, 2002. Following summary judgment motions, three claims remain pending for trial: (1) whether Terex SD negligently designed the Subject Aerial Device; (2) whether Terex Defendants negligently failed to warn Plaintiff about the Subject Aerial Device's redesign, alleged propensity to crack, and use of nonconforming steel; and (3) whether punitive damages should be awarded against Terex Defendants. *See* Proposed Consolidated Pretrial Order [Doc. 382], Exhibit C.

Terex Defendants seek to divide the trial of this matter into three separate phases: (1) during the first phase of the trial, the jury would consider whether Georgia's statute of repose exception applies to Plaintiff's negligent design claim against Terex SD, irrespective of any proximate cause or other liability issues; (2) during the second phase of the trial, the jury would consider: (a) Plaintiff's failure to warn claims and negligent design claim (should the negligent design claim survive phase I); (b) the amount of compensatory damages to be awarded, if any; and (c) Terex Defendants' liability, if any, on Plaintiff's punitive damages claim;

and (3) during the third phase of trial, should Terex Defendants be found liable for punitive damages, the jury would consider the amount of punitive damages to be awarded. As shown herein, trifurcating trial in this manner would promote convenience and judicial economy and avoid undue prejudice and confusion such that Terex Defendants' motion should be GRANTED.

## Argument and Citation to Authority

### I. LEGAL STANDARD

Fed. R. Civ. P. 42 provides that the Court, "in furtherance of convenience, to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim … or of any separate issue …" The decision to bifurcate pursuant to Rule 42 is one committed to the sound discretion of the Court. *Kimberly-Clark Corp. v. James River Corp. of Virginia*, 131 F.R.D. 607, 608 (N.D. Ga. 1989). In determining whether to separate trials, the Court should consider factors such as the convenience of the parties, any prejudice that may result, and the potential for jury bias or confusion. *Id.* In weighing such factors, the "paramount consideration" is "a fair and impartial trial to all litigants through a balance of benefit and prejudice". *Id.* at 609.

### II. THE ISSUE OF WHETHER GEORGIA'S STATUTE OF REPOSE BARS PLAINTIFF'S NEGLIGENT DESIGN CLAIM SHOULD BE CONSIDERED DURING THE FIRST PHASE OF TRIAL TO PREVENT UNDUE PREJUDICE, JURY CONFUSION, AND TO

**PROMOTE THE PUBLIC POLICY CONSIDERATIONS SET FORTH UNDER O.C.G.A. § 51-1-11.**

As this Court has noted, "[i]t is undisputed that more than ten years have passed from the date of the first sale for use of the Subject Boom Truck." 4.26.2017 Opinion and Order [Doc. 362], p. 15.  Therefore, Georgia's statute of repose bars Plaintiff's negligent design claim against Terex SD *unless* Plaintiff can demonstrate by a preponderance of the evidence that, in designing the Subject Aerial Device, Terex SD manifested "a willful, reckless, or wanton disregard for life or property."  O.C.G.A. § 51-1-11(b)(2).  For design defect claims, it is well established that under Georgia law, "a manufacturer's duty to implement alternative safer designs is limited to *the time the product is manufactured*, not months or years later when technology or knowledge may have changed". *Ford Motor Co. v. Reese*, 300 Ga. App. 82, 85 (2009) (emphasis added).  "Any other rule would render a manufacturer a perpetual insurer of the safety of its products, contrary to established Georgia law." *Id.*

Terex Defendants anticipate that during the trial of this matter, Plaintiff will attempt to introduce into evidence certain notices of cracking that Terex Defendants received from its customers prior to the subject accident.  However, while these notices may be relevant to Plaintiff's failure to warn claims, they are completely irrelevant to Plaintiff's negligent design claim and highly prejudicial to

- 4 -

Terex Defendants should the jury be allowed to consider the same. Under *Reese*, the only evidence relevant to whether Terex SD exhibited the requisite intent to harm relates to the knowledge of and technology available to Terex SD at the time the Subject Aerial Device was designed and manufactured, between 1996 and October 2002. Terex Defendants anticipate that Plaintiff will attempt to inundate the jury with the number of notices of cracking that Terex Defendants received ***post-manufacture*** in an attempt to divert attention from the relevant design factors that Terex SD considered during the relevant ***manufacturing*** time period. Indeed, if the only claim in this lawsuit was a negligent design claim against Terex SD, it would move *in limine* to completely exclude evidence of cracking following the manufacture of the Subject Aerial Device as irrelevant and highly prejudicial. For the same reasons, the Court should limit the evidence during the first phase of trial to Terex SD's design considerations between 1996 and October 2002.[1]

Further, separating out the trial of this issue would prevent jury confusion. The causation issues at trial will be complicated. Both sides have hired numerous experts to opine regarding the cause of the subject accident, including Terex SD's alleged negligent design, Terex Defendants' alleged failure to warn, the presence

---

[1] Plaintiff would not be prejudiced by this separation as he would still be able to introduce evidence of cracking that are relevant to his failure to warn claims during the second phase of trial.

of nonconforming steel, and/or Plaintiff and Ace Tree Surgery's conduct, including eleven years of overloading the Subject Aerial Device. The design issues, including whether the subject accident would have occurred had Terex SD considered a feasible alternative design, are the most complex. In the event the jury finds that the statute of repose bars Plaintiff's negligent design claim during the first phase of trial, such issues will not have to be considered during the remainder of trial, thereby making the information actually presented (which shall be abundant) easier to digest by the jury.

Finally, trying the statute of repose issue during the first phase of trial would promote the public policy considerations set forth under the pertinent Georgia statute of repose, O.C.G.A. § 51-1-11. As the Georgia Supreme Court has noted, the statute was enacted in order to grant manufacturers repose from claims arising from a product ten years after sale by providing a definite time beyond which a manufacturer is no longer subject to liability. *Pafford v. Biomet*, 264 Ga. 540, 545 (1994). Such limitations are "based upon reasonable expectations about the useful life of … a manufactured product." *Id.*; *see also, Craven v. Lowndes County Hosp. Authority*, 263 Ga. 657, 660 (1993) (through statues of repose, the legislature has concluded "that the time may arrive when past transgressions are no longer actionable"). The statute was also intended to "eliminate stale claims brought after

records have been lost or disposed of, witnesses have died or moved away, and when ***proof of causation is more difficult due to the possibility of third-party neglect or abuse, mishandling, or poor maintenance of the product***." *Id.* (emphasis added). The Georgia Supreme Court noted that, in this regard:

> statutes of repose are similar to statutes of limitation in that ***they are designed to promote justice*** by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim, ***it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them***.

*Id.* (citing *Allrid v. Emory University,* 249 Ga. 35, 39 (1982)) (emphasis added).

Here, it is undisputed that the subject accident occurred eleven years after the first sale for use of the product. To allow Plaintiff to present post-manufacture evidence of cracking will taint the jury's view of Terex SD's design process, make it more likely that the jury will find that Terex SD acted with willful, reckless, or wanton disregard for life or property (despite the irrelevance of the evidence), and defeat the public policy considerations, including the promotion of justice, that the Georgia legislature intended when enacting the statute. Plaintiff should not be allowed to do so. Therefore, the first phase of the trial should be limited to the issue of whether the Subject Aerial Device contained a design defect and whether Terex SD acted with willful, reckless, or wanton disregard for life or property at

the time it designed and manufactured the product, between 1996 and October 2002. Any evidence regarding post-manufacture knowledge and conduct should be reserved for the second phase of trial.

### III. THE AMOUNT OF PUNITIVE DAMAGES TO BE AWARDED AGAINST TEREX DEFENDANTS, IF ANY, SHOULD BE CONSIDERED DURING THE THIRD PHASE OF TRIAL PURSUANT TO O.C.G.A. § 51-12-5.1.

Georgia's punitive damages statute, O.C.G.A. § 51-12-5.1, provides, in relevant part:

> (1) … In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made…
>
> (2) If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case. It shall then be the duty of the trier of fact to set the amount to be awarded …

O.C.G.A. § 51-12-5.1(d). The Georgia Supreme Court has observed that the statute "expressly requires a bifurcation of the punitive damages issues; the trier of fact first decides whether to award punitive damages and then reconvenes to decide the amount to be awarded." *Webster v. Boyett*, 269 Ga. 191, 192-193 (1998). Therefore, evidence relating to Terex Defendants' financial status and attorneys' fees and costs should be reserved for the third phase of trial, should the jury

determine that punitive damages should be awarded against Terex Defendants. *See e.g.*, *Galack v. PTS of America, LLC*, 2015 WL 11578452, at *3 (N.D. Ga. Sept. 9, 2015) (excluding evidence of the defendant's financial status and attorney's fees and costs until the final phase of trial in accordance with O.C.G.A. § 51-12-5.1 and *Webster*).

WHEREFORE, Terex Defendants respectfully request that the Court GRANT Terex Defendants' Motion and trifurcate the trial of this matter as set forth herein.

Respectfully submitted this 7th day of July, 2017.

        WEINBERG, WHEELER, HUDGINS,
           GUNN & DIAL, LLC

By: */s/ Frederick N. Sager, Jr.*
    Frederick N. Sager, Jr.
    Georgia Bar No. 622070
    Mark R. Johnson
    Georgia Bar No. 395042
    Frederick L. Cooper, IV
    Georgia Bar No. 785392
    *Attorneys for Defendants Terex Corporation, Terex South Dakota, Inc., and Terex Utilities, Inc.*

3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
404.876.2700 Office
404.875.9433 Facsimile
rsager@wwhgd.com
mjohnson@wwhgd.com
dcooper@wwhgd.com

## **RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

This 7th day of July, 2017.

> By: */s/ Frederick N. Sager, Jr.*
> Frederick N. Sager, Jr.
> Georgia Bar No. 622070
> rsager@wwhgd.com
> *Attorneys for Defendants Terex Corporation, Terex South Dakota, Inc., and Terex Utilities, Inc.*

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the within and foregoing on all parties in the foregoing matter via CM/ECF e-filing, to wit:

Christian A. Pecone, Esq.
SAVELL & WILLIAMS, LLP
2700 Harris Tower
233 Peachtree Street
Atlanta, GA  30303
*Counsel for Intervenor/Plaintiff*

Lance A. Cooper, Esq.
Andrew S. Ashby, Esq.
THE COOPER FIRM
531 Roselane Street, Suite 200
Marietta, GA  30060
*Counsel for Plaintiff*

Darren Summerville, Esq.
The Summerville Firm, LLC
400 Colony Square, Suite 2000
1201 Peachtree Street NE
Atlanta, GA  30361
*Co-Counsel for Plaintiff*

This 7th day of July, 2017.

By: */s/ Frederick N. Sager, Jr.*
Frederick N. Sager, Jr.
Georgia Bar No. 622070
rsager@wwhgd.com
*Attorneys for Defendants Terex Corporation, Terex South Dakota, Inc., and Terex Utilities, Inc.*