UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEFFREY GADDY,

      Plaintiff,

v.

AMERICAN INTERSTATE
INSURANCE COMPANY,

      Intervenor Plaintiff,

v.

TEREX CORPORATION, TEREX
SOUTH DAKOTA, INC., and TEREX
UTILITIES, INC.,

      Defendants.

CIVIL ACTION
FILE NO. 1:14-cv-01928-WSD

**PLAINTIFF'S RESPONSE TO TEREX'S
<u>MOTION TO TRIFURCATE TRIAL</u>**

In Georgia, trifurcation is appropriate only in "rare" circumstances, and never where the effectual result is to try the same case twice. *See Webster v. Boyett*, 269 Ga. 191, 196 (1998); *Lincoln Land Co. v. Palfery*, 130 Ga. App. 407, 415 (1973).  Terex's proposal would achieve precisely that impermissible result: it would have Mr. Gaddy use an identical set of witnesses and evidence to prove: (1) in Phase One, that Terex wantonly incorporated a design defect into its aerial

device to defeat the affirmative defense of a statute of repose; and (2) in Phase Two, that Terex wantonly incorporated a design defect into its aerial device to establish liability and entitlement to punitive damages. This approach is almost by definition inefficient, would confuse and frustrate the jury, and would prejudice Mr. Gaddy.

Although Terex attempts to delineate several justifications for its motion, it really has just one. It believes it will be prejudiced when Mr. Gaddy admits into evidence the relevant facts that Terex's aerial devices repeatedly cracked in real world application and that Terex was serially put on notice of those cracks. Relevant evidence cannot form the basis of a motion to trifurcate. *See Bolden v. Ruppenthal*, 286 Ga. App. 800, 807 (2007). But even if Terex could establish that it would be prejudiced, that risk is outweighed by every other factor relevant to the analysis: the process will be inefficient and inconvenient; it will confuse and frustrate the jury; and it will prejudice Mr. Gaddy as much or more than a bifurcated trial could harm Terex. For those reasons, this Court should deny Terex's motion.

## LEGAL STANDARD

Terex cites to a Northern District of Georgia case for the proposition that, in determining separate trials, the Court should consider factors "such as" the

convenience of the parties, any prejudice that may result, and the potential for jury

confusion. Doc. 398-1 at 3 (citing *Kimberly-Clark Corp. v. James River Corp. of*

*Virginia*, 131 F.R.D. 607 (N.D. Ga. 1989). Terex's use of the phrase "such as" is a

bit of sleight of hand; the opinion in fact lists *eleven* factors courts may consider,

and Terex has chosen not to mention eight factors that could not possibly support

its motion. The full list is:

1.  Convenience;
2.  Prejudice;
3.  Expedition;
4.  Economy;
5.  Whether the issues sought to be tried separately are significantly different;
6.  Whether they are triable by jury or the court;
7.  Whether discovery has been directed to a single trial of all issues;
8.  Whether the evidence required for each issue is substantially different;
9.  Whether one party would gain some unfair advantage from separate trials;
10. Whether a single trial on all issues would create the potential for jury bias or confusion; and
11. Whether bifurcation would enhance or reduce the possibility of a pretrial settlement.

*Id.* at 608-09. Ultimately, the "paramount consideration" is whether separate trials

would be "fair and impartial . . . to **all** litigants," not just defendants. *Id.* at 609

(emphasis added).

There is a strong presumption against splitting a trial. In *Webster v. Boyett,*

the Georgia Supreme Court addressed the issue of trifurcating a trial involving

claims for punitive damages and held "[i]t is the **rare** case" where a trial court should allow one trial to proceed in three separate phases. 269 Ga. at 196 (emphasis added).[1] The Supreme Court reasoned that a trifurcated trial "expends limited judicial resources by requiring the judge and jury to hear evidence and render a verdict in three separate proceedings." *Id.* at 196. A three-phase trial is also unnecessary because there is usually substantial overlap of the evidence and because a court's limiting instructions and evidentiary rulings make additional separation unnecessary. *Id.* "Separate trials cannot be justified where the effectual result is . . . to try the same case twice." *Lincoln Land Co.,* 130 Ga. App. at 415. Trifurcation is also inappropriate where it could prevent Plaintiffs from presenting relevant and admissible evidence. *See Bolden*, 286 Ga. App. at 807.[2]

---

[1]    The Eleventh Circuit appears to have assumed, but not decided, that motions for separate trial are procedural, rather than substantive, and thus governed by Federal law. *See, e.g. Circle Y. Contr., Inc. v. WRH Realty Servs.,* 427 Fed. Appx. 772, 777 (11th Cir. 2011) (assuming, without discussion, that Rule 42(b) applies in a diversity case). Nonetheless, Georgia law appears particularly relevant here because Georgia, by statute, has created a substantive right to bifurcation in cases involving punitive damages. O.C.G.A. § 51-12-5.1(d)(2). Since any attempt to divide claims will therefore necessitate at least three separate trials, the Georgia Supreme Court's admonition that further division remain rare seems especially well-taken.

[2]    Even in *Kimberly Clark,* Judge Forrester reiterated the general disfavor for dividing a trial in to multiple phases:

> In considering such a course, the court should remain mindful of the
> traditional rule of the factfinder; i.e., to make an ultimate determination on

Georgia's approach represents a national consensus. Professor Moore's federal practice treatise emphasizes that single trials are presumed to be less burdensome and not prejudicial, noting that "since a single trial will generally lessen the delay, expense, and inconvenience to the parties and the courts, separate trials should not be ordered unless that procedure is clearly necessary." 5 Moore's Federal Practice ¶ 42.03[1] at 42-43. Moore notes that "[s]eparate trials are generally denied if the matters to be tried separately are related and involve the same evidence." Id. at 42-61 and 62.

**ARGUMENT**

Because courts adopt a strong presumption against trifurcated trials, Terex bears the burden of proving the necessity of such an extraordinary approach. Yet Terex ignores virtually all of the factors that Federal courts consider when adjudicating a motion for separate trials, focusing only on its conclusory allegation of prejudice. Terex tries to package its prejudice claim in a variety of ways, framing it variously as an issue of public policy or one of jury confusion. But at

---

the basis of a case presented in its entirety. Because bifurcation works an infringement on such an important aspect of the judicial process, courts are cautioned that it is not the usual course that should be followed.

131 F.R.D. at 608 (internal punctuation omitted; citing *Response to Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1323-24 (5th Cir. 1976). Trifurucation is even more unwieldy, and less favored.

bottom, Terex has only one point to make: it wishes to delay as long as possible a jury from hearing the highly salient fact that its aerial device failed repeatedly, and that Terex had notice of those failures. This concern cannot justify the remedy sought, particularly where trifurcating would introduce massive inefficiencies and prejudice Mr. Gaddy.

Terex spills no ink on the majority of the eleven factors the Northern District of Georgia has considered in resolving motions for separate trial. *See supra* at 3. This approach seems less of an oversight than a candid admission that none of those factors support its motion, and most cut strongly against granting it. For example: (1) the issues sought to be tried separately are not significantly different (literally the same issue, defective design, would be tried in all three phases); (2) all of the issues must be tried by jury; (3) discovery has proceeded in its entirety on the assumption that there will be a single trial on all issues other than the amount of punitive damages; (4) the evidence required for each issue is largely identical; and (5) Terex would gain an unfair advantage because Gaddy would effectively bear the burden of proof on Terex's defense before being entitled to a trial on liability. *See Kimberly-Clark Corp.*, 131 F.R.D. at 608-09.

Rather than beat a dead horse, this response will address the three factors Terex does purport to base its motion on: (1) convenience and judicial economy; (2) prejudice; and (3) jury confusion. None support Terex's motion.

## I.     The Court Should Deny Terex's Motion Because Trifurcation Would Be So Inconvenient as to be Prejudicial to Mr. Gaddy.

Terex promises to "show[] herein" that trifurcating trial would "promote convenience and judicial economy," and then fails to use the terms "convenience" or "judicial economy" again on any subsequent page in its brief. Doc. 398-1 at 3. Terex cannot deliver on what it promises, because its proposed trifurcation would be anything but convenient.

Terex's additional phase of litigation quite literally could not be more inefficient, because every single fact Terex would demand Mr. Gaddy prove during Phase One he would have to re-prove during Phase Two. Under Terex's proposal, during the first phase, "the jury would consider whether Georgia's statute of repose exception applies to Plaintiff's negligent design claim." Doc. 398-1 at 2. During the second phase, the jury would consider Mr. Gaddy's negligent design claim and Terex's liability on his punitive damages claim. *Id.*

As Terex itself points out, to determine the applicability of the statute of repose, the jury will need to determine whether Terex negligently designed its aerial device with "a willful, reckless, or wanton disregard for life or property."

Doc. 398-1 at 4. That language is notably similar to the standard for punitive

damages under Georgia tort law. Punitive damages may be awarded where the

defendant's actions "showed willful misconduct, malice, fraud, wantonness,

oppression, or that entire want of care which would raise the presumption of

conscious indifference to consequences." O.C.G.A. § 51-12-5.1.

Thus, the jury will have to decide in Phase One whether Terex negligently

designed its aerial device in a willful or wanton manner, and the decide in Phase

Two . . . whether Terex negligently designed its aerial device in a willful or wanton

manner. Every bit of evidence that Mr. Gaddy puts on in Phase One will be

relevant and admissible again in Phase Two, when the jury is asked to decide

virtually the same question a second time.

This approach will waste the court's time and frustrate and confuse the jury.

Terex's preferred approach seems almost intended to tire the jury, prejudicing Mr.

Gaddy. Having three opening statements, three closing statements, three separate

trials, and three charges—all based on the same common core of facts and

witnesses—seems calibrated to get the jury as exhausted as possible just about the

time it gets to the portion of the case Terex fears most—the amount of punitive

damages that would be appropriate. This approach is not convenient to the jury or

respectful of the Court's time, and it is downright prejudicial to Mr. Gaddy.

## II.  Terex's Claim of Prejudice Cuts the Other Way; Trifurcation Would Prejudice Mr. Gaddy, Requiring the Court to Reject this Approach.

### A.  *Trifurcating the trial would prejudice Mr. Gaddy because it would effectively place the burden of proof on him to disprove one of Terex's defenses before conducting a trial on liability.*

Terex's trifurcation motion would require Mr. Gaddy to disprove Terex's statute of repose defense before obtaining a trial on liability. This approach is prejudicial to Mr. Gaddy in two senses: First, it effectively places the burden of proof on Mr. Gaddy to disprove a defense, because the jury will reasonably expect Mr. Gaddy to prove his case (in phase one, the sole issue being whether a defense applies). Second, it grants Terex two consecutive chances to attempt to escape liability; it will argue it did not engage in negligent design and its conduct was not willful or wanton in Phase One, and then, if it loses, have a second shot at making the same argument in Phase Two. This structure is unfair to Mr. Gaddy, because "the bifurcation incur[s] solely to the benefit of" Terex, who is allowed "to limit the entire trial to their defense." *Bolden*, 286 Ga. App. at 805. It also violates the admonition that separate trials must be fair and impartial to all litigants. *Kimberly-Clark Corp*, 131 F.R.D. at 609.

B.       *Trifurcating the trial would prejudice Mr. Gaddy because it would prevent him from presenting relevant evidence to the jury.*

The driving impetus behind Terex's motion is its fear that once the jury hears that its aerial devices repeatedly cracked and that Terex had notice of this fact, the jury will find the company liable and impose substantial punitive damages. This concern may well be warranted, but is a product of Terex's own bad acts, and not the proper basis for a motion to trifurcate. If the evidence is relevant and admissible, trifurcating would necessarily prejudice Mr. Gaddy. *See Bolden*, 286 Ga. App. at 807.

Terex mentions, almost as an aside, that if the only claim in this lawsuit were the negligent design claim, Terex would move *in limine* to exclude evidence of cracking following the manufacture of its aerial devices. Doc. 398-1 at 5. Though framed as a cherry-on-the-top point, this assertion that Terex would be entitled to exclude such evidence is in fact critical to Terex's motion. As the Georgia Court of Appeals explained in *Bolden*, if trifurcation would delay a plaintiff from presenting relevant and admissible evidence, splitting the trial is impermissible. *Bolden*, 286 Ga. App. at 807.

Terex has not filed a motion *in limine*, and instead relies on its one sentence assertion that the fact that Terex's device frequently cracks is irrelevant to whether

it was negligently designed. Terex is wrong that this evidence is not relevant to a

negligent design claim.[3]

First, Terex blithely assumes that evidence that its aerial device routinely

cracks under real-world conditions could be relevant to Mr. Gaddy's claims only if

it were admissible to show that Terex "exhibited the requisite intent to harm." 398-

1 at 5.  But there is a far more basic reason this evidence is admissible on a

negligent design claim; it suggests that the device was, in fact, negligently

designed. Mr. Gaddy will present expert testimony that Terex's design decisions

were unreasonable at the time they were made. In weighing the credibility of Mr.

Gaddy's experts, the jury will surely wonder whether their predictions proved

---

[3]     Terex's favored case on this point, *Ford Motor Co. v. Reese*, 300 Ga. App.
82 (2009), Docket No. 398-1, is no trifurcation case, contains no ruling on the
admissibility of post-manufacture events, or anything else relevant. *Reese* merely
recites the substantive differences between a duty to warn claim, and a design
defect claim.  Terex's claim that "[u]nder *Reese*, the only evidence relevant to
[intent to harm was from the manufacturing period,]" Docket No. 398-1 at 5, finds
no support in that decision.  The *Reese* jury considered negligent and strict liability
theories of defective design, failure to warn, and failure to recall.  Apparently all of
those claims were heard in a single phase of trial; the jury awarded compensatory
damages but not punitive damages.  300 Ga. App. at 83.  There is no indication
whatsoever that the liability phase – which would have included both failure to
warn and design defect claims – was split, or that any of the parties or Court took
issue with that concept. *Id.*  And the only evidentiary holding in the *Reese* decision
affirms the trial court's ruling that evidence of other product failures was
admissible.  300 Ga. App. at 89-91.

prescient. Mr. Gaddy will show at trial that its experts' models work in the real world.

Consider, for a moment, the converse: Suppose Mr. Gaddy's expert testified that any reasonable engineer would expect the aerial device to routinely break under real world conditions, and in fact, in the decade since the product was introduced, there was no evidence that it had ever broken. Is there any serious doubt that, under those circumstances, Terex would put the complete absence of any cracking front-and-center in its closing argument?

To not allow Mr. Gaddy to pursue the same line of argument would be deeply prejudicial. After the jury hears Mr. Gaddy's evidence, they will be left wondering whether the proof is in the pudding. That doubt, in turn, will influence whether they find that Terex designed its device with willfulness, recklessness, or wantoness, an issue that will be at the heart of Terex's proposed Phase One.

Second, it is far from clear that the evidence of subsequent cracks would be inadmissible to show that Terex's employees had knowledge of those cracks and how they responded to that knowledge. Terex points out that Terex's design duty was limited to the time the product was manufactured. Doc. 398-1 at 4. Fair enough. But even in Terex's limited Phase One, Mr. Gaddy will have to show that Terex exhibited willfulness, reckless, and wantonness regarding design defects.

Evidence of how Terex's employees responded to notice of the other cracks would be admissible to show such things as purpose, motive, intent, knowledge, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). And if any of the relevant employees testify at trial, evidence of how they addressed subsequent cracking will likely be admissible under Federal Rules of Evidence 607 and 608 because the jury's assessment of those witnesses' credibility will be of utmost importance to Plaintiff's showing of willfulness. Because trifurcating the trial would likely lead to the exclusion of relevant and admissible evidence, trifurcation is impermissible.

C.      *Even if the Court were to find that such evidence were inadmissible, it would not justify trifurcating the trial.*

Even if such evidence were inadmissible as to the negligent design claim, that fact alone would not justify severance. Juries are routinely asked to adjudicate multiple claims at once, and there is invariably some evidence presented as to each claim that is not relevant to other claims in the case. The very nature of trial by jury depends on the assumption that the jury, with guidance from limiting instructions and jury charges, will address each claim on its own merits. *See Webster*, 269 Ga. at 196 (explaining that trifurcation should be "rare" and that limiting instructions are often a preferable solution). Terex presents no argument that it faces a risk of prejudice that is in any way unique from the vast majority of trials.

If Terex could establish prejudice, it would nonetheless need to grapple with

two additional facts: First, even more certainly than Terex would be prejudiced by

a two phase trial, Mr. Gaddy would be prejudiced by a three phase trial in which he

must twice prove the essential elements of his claim in front of a jury that is

growing increasingly exhausted before even presenting his claim for punitive

damages. Second, every other factor relevant in determining whether severance is

appropriate, most importantly convenience and judicial economy, cut sharply

against trifurcation.

> D.      *Terex's "public policy" argument is just window dressing on its*
> *prejudice argument.*

Terex tries to put a new gloss on its prejudice argument by including a

paragraph explaining the public policy purposes behind the statute of repose,

which include providing a time past which point transgressions are no longer

actionable. Doc. 398-1 at 6-7.  Yet in the very next paragraph, Terex returns to

complaining that it will be prejudiced if the jury hears about post-manufacture

evidence of cracking. *Id.* at 7.

There is no logical connection between the purpose behind the statute of

repose and Terex's prejudice claim. The statute of repose provides a defense to a

negligent design claim if Terex can show that its conduct was not willful, reckless,

or wanton, and it will have the opportunity to do so at trial. It provides no defense

to a duty to warn action, expressly carving out such claims. O.C.G.A. § 51-1-11(c).

Nothing in the language of the statute remotely hints at the notion that the Georgia

General Assembly was concerned about the prejudicial effect of trying duty to

warn claims along side other claims. If Georgia wanted to provide for a bifurcated

trial, they clearly knew how to do so. In fact, they did, segregating out the amount

of punitive damages for separate trial. *See* O.C.G.A. § 51-12-5.1(d)(2). If anything,

arguments from legislative intent suggest that trifurcation would be inappropriate

in this case; the General Assembly apparently considered under what

circumstances to separate trials under its tort statute and decided not to do so here.

Terex is not asking the Court to effectuate the statute's public purpose; it is asking

the Court to add a trifurcation right where the legislature chose otherwise.

### III.   Terex's Proposed Trifurcation is More Likely to Produce Jury Confusion And Exhaustion Than to Redress It.

To bolster its prejudice claim, Terex asserts that there is a risk of jury

confusion because the causation issues at trial will be complicated and involve

expert testimony. Doc. 398-1 at 5. Conceivably so, but trifurcation in no way

addresses that risk. The jury will inevitably have to grapple with difficult causation

issues regardless of how the trial is divided, and the parties will have to rely on the

jury's competence (and their attorneys' skilled advocacy) to obtain the outcome

they desire. The sole effect of adding a third phase of the trial would be greater

redundancy. The jury will be inundated with more and duplicative evidence, making their job harder, not easier. If Terex's concern about jury confusion is sincere, it should seek a streamlined and efficient trial, not a longer and more complex one.

## CONCLUSION

Terex has not shown it is entitled to the "rare" relief of trifurcation. Virtually every factor relevant to ordering separate trials cuts sharply against such relief. Terex's claim of prejudice—that the jury might consider evidence plainly relevant to one of Mr. Gaddy's claims in considering his other claim—is a concern shared by every defendant with more than one claim asserted against them, and can be better addressed with a limiting instruction, rather than trifurcation. Separating the claims, meanwhile, will prejudice Mr. Gaddy, waste the Court's time, and frustrate the jury. For these reasons, Mr. Gaddy respectfully requests the Court deny Terex's Motion to Trifurcate Trial.

Respectfully submitted, this 21st day of July, 2017.

/s/ Darren Summerville
Darren Summerville
Georgia Bar No. 691978

The Summerville Firm, LLC
400 Colony Square, Suite 2000
1201 Peachtree Street NE
Atlanta, GA 30361

17

T: (770) 635-0030
E: darren@summervillefirm.com

Co-Counsel for Plaintiff Jeffrey Gaddy

## **CERTIFICATION**

The undersigned counsel hereby certifies that this filing complies with the

Local Rules of this Court, including Local Rules 5.1.C and 7.1.D (N.D. Ga.), in

that it has been prepared in Times New Roman font, 14 point.

/s/ Darren Summerville
Darren Summerville
Georgia Bar No. 691978

The Summerville Firm, LLC
400 Colony Square, Suite 2000
1201 Peachtree Street NE
Atlanta, GA 30361
T: (770) 635-0030
F: (770) 635-0029
E: darren@summervillefirm.com

Co-Counsel for Plaintiff Jeffrey Gaddy

18

## CERTIFICATE OF SERVICE

I certify that I have served each of the parties listed below with a copy of this document by filing it with this Court via the CM/ECF system, which will automatically provide a copy to the following attorneys of record:

| | |
|---|---|
| Frederick N. Sager, Jr. <br> Mark R. Johnson <br> Frederick L. Cooper, IV <br> Shannon V. Barrow <br> Weinberg, Wheeler, Hudgins, <br> Gunn & Dial <br> 3344 Peachtree Road, NE, Suite 2400 <br> Atlanta, GA 30326 <br> *Counsel for the Terex Defendants* | Christian A. Pecone <br> Savell & Williams, LLP <br> 233 Peachtree Street <br> 2700 Harris Tower <br> Atlanta, Georgia 30303 <br> *Counsel for Intervenor American Interstate* |

This 21st day of July, 2017.

/s/ Darren Summerville
Darren Summerville
Georgia Bar No. 691978

The Summerville Firm, LLC
400 Colony Square, Suite 2000
1201 Peachtree Street NE
Atlanta, GA 30361
T: (770) 635-0030
F: (770) 635-0029
E: darren@summervillefirm.com

Co-Counsel for Plaintiff Jeffrey Gaddy

19