# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JEFFREY GADDY, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN INTERSTATE INSURANCE COMPANY, <br><br> Intervenor Plaintiff, <br><br> v. <br><br> TEREX CORPORATION, TEREX SOUTH DAKOTA, INC., and TEREX UTILITIES, INC., <br><br> Defendants. | 1:14-cv-1928-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendants Terex Corporation, Terex Utilities, Inc., and Terex South Dakota, Inc.'s (collectively, "Defendants" or "Terex") Motion to Trifurcate Trial [398] (the "Motion").

## I. BACKGROUND

This is a products liability action arising from the failure of a 2002 Terex Hi-Ranger XT 60/70 boom, an aerial lift device (the "Subject Boom"). Terex XT aerial devices are commonly utilized by tree trimming companies. The Subject Boom was part of Terex SD's XT aerial device line, which consisted of XT52,

XT55, XT58, and XT60 aerial lifts. The line, beginning with the XT52, was first designed by Terex SD in 1996. The Subject Boom, an XT60, was originally designed in 1999, manufactured on or about October 4, 2002, and purchased by Ace Tree Surgery, Plaintiff's employer, in 2003. On April 9, 2014, Plaintiff was in the truck when the Subject Boom collapsed—resulting in severe injuries to Plaintiff. On June 19, 2014, Plaintiff commenced this action. ([1]). Following summary judgment motions, three claims remain pending for trial: (1) whether Terex SD negligently designed the Subject Boom; (2) whether Terex failed to adequately communicate warnings; and (3) whether punitive damages should be awarded against Terex. ([362] at 29).

Terex seeks this Court to divide the impending trial in this matter into three separate phases. ([398.1] at 2). The first phase would require the jury to consider whether Georgia's statute of repose exception applies to Plaintiff's negligent design claim against Terex SD, irrespective of any proximate cause or other liability issues. (Id.). The second phase would require the jury to consider Plaintiff's failure to warn and negligent design claims, the amount of compensatory damages to be awarded, if any, and Terex Defendants' liability, if any, for punitive damages. (Id.). If the jury finds Defendants liable for punitive damages, then a third phase of the trial would commence and the jury would

determine how much Plaintiff should be awarded in punitive damages. (Id. at 3). Terex contends that trifurcating the trial in this manner "would promote convenience and judicial economy and avoid undue prejudice and confusion." (Id.).

Plaintiff, in his Response to Terex's Motion to Trifurcate Trial [407] ("Response"), argues that Defendants' Motion should be denied on the grounds that it is "inefficient, would confuse and frustrate the jury, and would prejudice [Plaintiff]." ([407] at 2). Plaintiff contends that he would have to use an "identical set of witnesses and evidence" to prove those issues presented in the proposed first and second phases of the trial. (Id. at 1-2). That is, "Terex's additional phase of litigation quite literally" would require "every single fact Terex would demand Mr. Gaddy prove during Phase One he would have to re-prove during Phase Two." (Id. at 7). Plaintiff concedes, however, that the trial should be separated to allow for a separate phase to determine, pursuant to O.C.G.A. § 51-12-5, the amount of punitive damages, if any, that should be awarded to Plaintiff. ([407] at 4).

## II. DISCUSSION

### A. Legal Standard

Rule 42(b) of the Federal Rules of Civil Procedure provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order

3

a separate trial of one or more issues, claims, crossclaims, counterclaims, or third-party claims." See Fed. R. Civ. P. 42(b). The decision to separate a trial is committed to the sound discretion of the Court. See, e.g., Home Elevators, Inc. v. Millar Elevator Serv. Co., 933 F. Supp. 1090, 1091 (N.D. Ga. 1996); Kimberly-Clark Corp. v. James River Corp., 131 F.R.D. 607, 608 (N.D. Ga. 1989). Bifurcating, or in this case, trifurcating, a trial "works an infringement on such an important aspect of the judicial process," and therefore "courts are 'cautioned that [it] is not the usual course that should be followed.'" Kimberly-Clark Corp., 131 F.R.D. at 608 (quoting Response to Carolina, Inc. v. Leasco Response, Inc., 537 F.2d 1307, 1323-24 (5th Cir.1976)).

A district court should consider the following factors in determining whether to order separate trials:

> whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Allstate Insurance Co. v. Vizcay, 825 F.3d 1326, 1333 (11th Cir. 2016) (quoting Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1495 (11th Cir. 1985). "[T]he paramount consideration must remain a fair and impartial trial to all litigants

4

through a balance of benefit and prejudice." Kimberly-Clark Corp., 131 F.R.D. at 609. A district court "properly exercises its discretion" not to separate a trial where it is apparent a joint trial will "'save[] the [parties] from wasteful relitigation, avoid[] duplication of judicial effort, and . . . not materially prejudice [the parties'] rights.'" Allstate Insurance Co., 825 F.3d at 1333 (quoting Hendrix, 776 F.2d at 1495.

B. Analysis

The Court determines that trifurcation is not appropriate. Separating the trial into three phases where the issues in each phase are interrelated would result in inefficiency and waste of time and expense. For example, the proposed first phase would require the jury to consider whether Plaintiff demonstrated by a preponderance of the evidence that, in designing the Subject Boom, Defendants manifested "a willful, reckless, or wanton disregard for life or property." O.C.G.A. § 51-1-11(b)(2). The proposed second phase would, in part, require the jury to consider whether Defendants "showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1. Plaintiff contends that, in effect, this will require him to use nearly identical relevant and admissible evidence to prove substantially similar issues. The Court

5

agrees. Indeed, it appears that similar evidence and witnesses would be required if the cases is conducted in the phases suggested by the Defendants. The Court specifically concludes that the proposed first and second phases of the trial will not efficiently use the jury's time. The Court further determines that combining the issues presented in the proposed first and second phases is unlikely to lead to prejudice or confusion of the jury. Prejudice or confusion, in the Court's view, is more likely if the Court separates the trial into the phases requested by Defendants.

The Court agrees with the parties that the determination of the amount of punitive damages, if the jury finds an award of them appropriate, should be decided in a second trial phrase. Under Georgia law, trial courts are required to separate the trial on the issue of punitive damages liability from the jury's determination of the amount of punitive damages. O.C.G.A. § 51-12-5.1(d) provides:

> (1) . . . In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict, along with the other required findings.
>
> (2) If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case.

6

Cooper v. Marten Transp., Ltd., No. 1:10-CV-3044-AT, 2014 WL 11517830, at *7, n.11 (N.D. Ga. May 23, 2014) (quoting O.C.G.A. § 51-12-5.1(d)). Because this is a diversity case and Plaintiff has asserted a claim for punitive damages, the Court finds that, should the jury in the first phase determine that Plaintiff is entitled to punitive damages, the Court must bifurcate the trial to allow for separate consideration of the amount of punitive damages that Plaintiff should be awarded.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Terex Corporation, Terex Utilities, Inc., and Terex South Dakota, Inc.'s Motion to Trifurcate Trial [398] is **GRANTED IN PART AND DENIED IN PART**. The trial will be divided into two phases. In the first phase, the jury will consider whether (1) Georgia's statute of repose exception applies to Plaintiff's negligent design claim and (2) Plaintiff's failure to warn and negligent design claims, the amount of compensatory damages to be awarded, if any, and Defendants' liability, if any, on Plaintiff's punitive damages claim. (Id.). If the jury determines that Defendants are liable for punitive damages, the jury, in a second phase, will consider the amount of punitive damages, if any, to be awarded to Plaintiff.

**SO ORDERED** this 27th day of March, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE